Paul J. Zidlicky (*pro hac vice* pending)
pzidlicky@sidley.com
Eric D. McArthur (*pro hac vice* pending)
emcarthur@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711

Sean A. Commons, SBN 217603
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Tel: (213) 896-6000
Fax: (213) 896-6600

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORTH AMERICAN MEAT INSTITUTE, <br><br> Plaintiff, <br><br> v. <br><br> XAVIER BECERRA, in his official capacity as Attorney General of California, KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and SUSAN FANELLI, in her official capacity as Acting Director of the California Department of Public Health, <br><br> Defendants. | Case No. 2:19-cv-8569 <br><br> **COMPLAINT FOR DECLARATORY AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** |

Comes now Plaintiff North American Meat Institute ("Plaintiff" or the "Meat Institute"), by and through its attorneys, and states as follows:

## INTRODUCTION AND SUMMARY

1. This is an action for declaratory, injunctive and other relief brought by Plaintiff against California's Attorney General, Xavier Becerra, the Secretary of the California Department of Food and Agriculture, Karen Ross, and the Acting Director of the California Department of Public Health, Susan Fanelli, in their official capacities. This case is about whether California can insulate its farmers from out-of-state competition and project its agricultural regulations beyond its borders in an effort to transform the interstate and international market for pork and veal by banning the sale of wholesome meats imported from other States and countries unless farmers in those States and countries comply with burdensome animal-confinement requirements that California voters adopted in Proposition 12. Under longstanding Supreme Court precedent, the answer to that question is no.

2. Plaintiff challenges Proposition 12's sales ban, California Health & Safety Code § 25990(b), as applied to pork and veal imported into California from other States and countries. Plaintiff seeks preliminary and permanent injunctive enjoining the implementation and enforcement of the sales ban, and a declaration that the sales ban is unlawful under federal law. Absent preliminary and permanent injunctive relief, Plaintiff's members will suffer irreparable harm.

3. Proposition 12 is a ballot initiative adopted by California voters in late 2018 that imposes unprecedented regulations dictating the conditions of confinement for breeding sows and veal calves produced throughout the country.

4. Proposition 12's sales ban violates the United States Constitution.

5. First, Proposition 12's sales ban violates the Commerce Clause by erecting a protectionist trade barrier whose purpose and effect are to shield California producers from out-of-state competition. The purpose of the sales ban is to "level the playing field" between California producers and out-of-state producers, and it does so by stripping away the competitive advantage out-of-state producers would have if they could sell their products in

1

California without complying with costly confinement requirements that apply directly to California producers. Moreover, as described below, Proposition 12 tilts the playing field markedly in favor of in-state producers and against out-of-state competitors.

6. Second, Proposition 12's sales ban violates the Commerce Clause and the federal structure of the United States Constitution by directly regulating interstate and foreign commerce and extraterritorial conduct, including the confinement conditions of animals located on farms outside of California. California lacks authority to regulate farming practices outside California, and it cannot condition access to its market as a means to control how farm animals are confined in other States and countries. That is precisely what Proposition 12's sales ban does—it projects California law worldwide by banning the in-state sale of wholesome veal and pork imported from other States and countries unless out-of-state producers comply with California's farm animal-confinement requirements outside of California.

7. Third, Proposition 12's sales ban violates the Commerce Clause by imposing substantial burdens on interstate commerce that are clearly excessive in relation to any legitimate local benefits. Because Proposition 12's confinement requirements for veal calves and breeding sows go well beyond current industry standards, the sales ban requires producers to spend millions of dollars building California-compliant facilities and/or slash output, or to abandon the California market. The resulting harms, which will be borne primarily by out-of-state businesses, are not justified by any legitimate local interest.

## THE PARTIES

## PLAINTIFF

8. The North American Meat Institute is the nation's oldest and largest trade association representing packers and processors of beef, pork, lamb, veal, turkey, and processed meat products. Meat Institute member companies account for more than 95% of the United States output of these products. The Meat Institute's purposes include, *inter alia*, advocacy on behalf of its members in connection with legislation and regulation affecting the meat industry. The Meat Institute's members sell pork and veal throughout California

and one or members has operations in Los Angeles, California.

9. The Meat Institute brings this suit on behalf of itself and its members. One or more of its members possesses standing to sue in its own right. Many of the Meat Institute's members own and raise hogs and veal calves in various States across the country and sell pork and veal to customers in California. Meat Institute members are regulated and harmed by Proposition 12's sales ban with respect to sales of pork and veal in California.

10. Proposition 12's regulation of the confinement of animals outside of California is of vital concern to the Meat Institute's members.

11. Neither the claims asserted nor the relief sought in the Complaint requires the participation of any individual member of the Meat Institute.

## DEFENDANTS

12. Defendant Xavier Becerra is the Attorney General of the State of California. Defendant Becerra is responsible for the enforcement of Proposition 12 and is sued in his official capacity only.

13. Defendant Karen Ross is the Secretary of the California Department of Food and Agriculture, which is responsible for implementation of Proposition 12. Defendant Ross is sued in her official capacity only.

14. Defendant Susan Fanelli is the Acting Director of the California Department of Public Health, which is responsible for implementation of Proposition 12. Defendant Fanelli is sued in her official capacity only.

## JURISDICTION AND VENUE

15. Subject matter jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 because this case arises under the Constitution and laws of the United States.

16. The Court has authority to enjoin enforcement of Proposition 12's sales ban under 42 U.S.C. § 1983, and to grant preliminary and permanent injunctive relief and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

17. Venue is proper in this Court under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to the claims herein occurred within this judicial district because the

Meat Institute's members import pork and veal subject to Proposition 12 into this judicial district. Further, Defendants maintain their offices within this judicial district.

## LEGAL AND FACTUAL BACKGROUND

### A. Proposition 2 and Assembly Bill 1437

18. In November 2008, California voters enacted Proposition 2, a ballot initiative entitled the Prevention of Farm Animal Cruelty Act, to "prohibit the cruel confinement of farm animals."

19. Effective January 1, 2015, Proposition 2 prohibited California farmers from confining pregnant pigs, calves raised for veal, and egg-laying hens in a manner that prevented them from lying down, standing up, and fully extending their limbs, or from turning around freely. *See* Cal. Health & Safety Code § 25990 *et seq*.

20. California farmers were given six years to restructure their farming practices to come into compliance with the confinement standards of Proposition 2. *See* Prop. 2, Official Voter's Information Guide (reproducing proponents' argument that farmers would have "ample time" to comply).

21. In 2010, the California legislature enacted Assembly Bill 1437 ("AB 1437"), which extended Proposition 2's confinement requirements for egg-laying hens to out-of-state farmers by prohibiting the sale in California of a shelled egg for human consumption if it was the product of an egg-laying hen confined on a farm or place that was not in compliance with Proposition 2's confinement requirements. Cal. Health & Safety Code § 25996.

22. AB 1437's legislative history explained that "the intent of this legislation [was] to level the playing field so that in-state producers [we]re not disadvantaged" by competition from out-of-state farmers not subject to the same costly confinement requirements. *See* Cal. Assembly Comm. on Agriculture, Bill Analysis of AB 1437, at 1 (May 13, 2009).

### B. Proposition 12

23. In November 2018, California voters enacted Proposition 12, a ballot initiative promoted by animal welfare groups.

24. Proposition 12's stated purpose is "to prevent animal cruelty by phasing out

extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." Proposition 12, § 2.

25. Proposition 12 was not accompanied by any legislative findings and does not cite any evidence that meat from veal calves or breeding sows—or meat from the offspring of such sows—housed in a way that does not comply with Proposition 12 poses any increased risk of foodborne illness or other harms to California consumers.

26. Proposition 12's central prohibition applies only to California farmers. It provides that "[a] farm owner or operator within the state shall not knowingly cause any covered animal to be confined in a cruel manner." Health & Safety Code § 25990(a).

27. "Covered animal" means "any calf raised for veal, breeding pig, or egg-laying hen who is kept on a farm." *Id.* § 25991(f).

28. "Farm" means "the land, building, support facilities, and other equipment that are wholly or partially used for the commercial production of animals or animal products used for food or fiber." *Id.* § 25991(i).

29. The definition of "farm" excludes "live animal markets" and "establishments at which mandatory inspection is provided under the Federal Meat Inspection Act (21 U.S.C. Sec. 601 *et seq.*)." *Id.*

30. Under Proposition 12, "Confined in a cruel manner" means:

  (1) Confining a covered animal in a manner that prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely.

  (2) After December 31, 2019, confining a calf raised for veal with less than 43 square feet of usable floorspace per calf.

  (3) After December 31, 2021, confining a breeding pig with less than 24 square feet of usable floorspace per pig.

*Id.* § 25991(e)(1)–(3).

31. These confinement requirements are subject to a number of exceptions. They

do not apply during medical research, veterinary care, transportation, exhibitions, slaughter, or during temporary periods for animal husbandry. *Id.* § 25992(a)–(e), (g). And they do not apply to a breeding pig during the five-day period prior to its expected date of giving birth and during any day that it is nursing piglets. *Id.* § 25992(f).

32. Proposition 12 also includes a sales ban designed to extend the statute's housing requirements to out-of-state producers who sell products in California. As relevant here, the sales ban provides that "[a] business owner or operator shall not knowingly engage in the sale within the state" of any "(1) Whole veal meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner," or (2) "Whole pork meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of immediate offspring of a covered animal who was confined in a cruel manner." *Id.* § 25990(b)(1)–(2).

33. The term "sale" means "a commercial sale by a business that sells any item covered by this chapter, but does not include any sale undertaken at an establishment at which mandatory inspection is provided under the Federal Meat Inspection Act." *Id.* § 25991(o).

34. A "sale" is "deemed to occur at the location where the buyer takes physical possession of [a covered] item." *Id.* The sales ban applies to most uncooked pork and veal, but does not apply to "combination food products, including soups, sandwiches, pizzas, hotdogs, or similar processed or prepared food products." *Id.* § 25991(u)–(v).

35. Violation of the sales ban is a misdemeanor punishable by a fine of up to $1000 and up to 180 days' imprisonment in the county jail. *Id.* § 25993(b).

36. An action to enforce the sales ban is subject to a good-faith defense if the "business owner or operator relied in good faith upon a written certification by the supplier that the whole veal meat [or] whole pork meat … at issue was not derived from a covered animal who was confined in a cruel manner, or from the immediate offspring of a breeding pig who was confined in a cruel manner." *Id.* § 25993.1.

### C. Legislative Analyst's Office Report For Proposition 12.

37. The Legislative Analyst's Office ("LAO") prepared a report on Proposition 12. *See* https://lao.ca.gov/BallotAnalysis/Proposition?number=12&year=2018.

38. The LAO observed that "agriculture is a major industry in California," (emphasis and capitalization omitted)," with "California farms produc[ing] more food—such as fruit, vegetables, nuts, meat, and eggs—than in any other state."

39. The LAO further observed that "Californians also buy food produced in other states, including most of the eggs and pork they eat." The LAO noted that the "sales ban applies to products from animals raised in California or out-of-state."

40. With regard to Proposition 12's fiscal impacts, the LAO concluded that "[t]his measure would likely result in an increase in prices for eggs, pork, and veal for two reasons." First, it "would result in many farmers having to remodel or build new housing for animals—such as by installing cage-free housing for hens. In some cases, this housing also could be more expensive to run on an ongoing basis. Much of these increased costs are likely to be passed through to consumers who purchase the products."

41. "Second, it could take several years for enough farmers in California and other states to change their housing systems to meet the measure's requirements. If in the future farmers cannot produce enough eggs, pork, and veal to meet the demand in California, these shortfalls would lead to an increase in prices until farmers can meet demand."

### D. Implementing Regulations

42. Proposition 12 requires the California Department of Food and Agriculture ("CDFA") and the State Department of Public Health to promulgate implementing rules and regulations by September 1, 2019. Health & Safety Code § 25993. The Meat Institute submitted comments explaining, among other things, the sales ban's constitutional infirmity and the many harms it will cause to pork and veal producers and consumers.

43. On September 23, 2019, CDFA informed the Meat Institute that it planned to issue a Notice of Proposed Action by the end of 2019, and that regulations implementing Proposition 12 would be finalized between 6 to 12 months thereafter.

# CLAIMS FOR RELIEF

# FIRST CLAIM

### (Discrimination in Violation of the Commerce Clause)

44. The prior paragraphs of the Complaint are incorporated by reference.

45. Proposition 12's sales ban violates the Commerce Clause of the United States Constitution by discriminating against out-of-state producers, distributers and sellers of pork and veal.

46. Proposition 12's sales ban violates the Commerce Clause because its purpose and effect are to protect in-state California producers from out-of-state competitors.

47. Proposition 12's sales ban confers a benefit on in-state producers by seeking to level the playing field. It imposes regulatory burdens on out-of-state producers so that in-state producers are not disadvantaged by competition from out-of-state producers who are not subject to Proposition 2's confinement requirements. Cal. Assembly Comm. on Agriculture, Bill Analysis of AB 1437, at 1 (May 13, 2009).

48. The intended and inevitable effect of Proposition 12's sales ban is to protect in-state California producers from bearing costs not borne by out-of-state competitors. It does so by subjecting those out-of-state competitors to Proposition 12's confinement standards as a condition of selling pork and veal in California.

49. Proposition 12's sales ban operates as an impermissible protectionist trade barrier, blocking the flow of goods in interstate commerce unless out-of-state producers comply with California's regulations. The sales ban neutralizes the cost advantage out-of-state producers would have if they could sell their products in California without complying with the confinement requirements that California imposes on its own producers.

50. Proposition 12's sales ban imposes significant burdens on the Meat Institute's members in connection with their conduct of interstate commerce.

51. Proposition 12's sales ban is discriminatory in two other respects because it tilts the playing field markedly in favor of in-state producers.

52. First, if Proposition 12's prohibition on confinement that prevents an animal

from "turning around freely" (the "turnaround" standard) is construed to take immediate effect, then the sales ban would disadvantage out-of-state producers, who were given no lead time to change their operations to come into compliance. In contrast, in-state producers were given more than six years' lead time to come into compliance with the "turnaround" standard when it was first imposed on California farmers by Proposition 2. Specifically, Proposition 2 was adopted in November 2008 but did not become effective until January 2015. *See* Prop. 2, Official Voter's Information Guide (reproducing proponents' argument that farmers would have "ample time" to comply).

53. Second, if Proposition 12's confinement restrictions do not apply to calves that are "culled" from California dairy farms for slaughter and marketed as "bob" veal (on the ground that such calves are not "raised for veal" by California dairy farmers), then the sales ban would give California bob veal producers a competitive advantage over out-of-state milk-fed veal producers.

54. Proposition 12's sales ban violates the Commerce Clause because California cannot carry its burden of demonstrating, under rigorous scrutiny, that it has no other means to advance a legitimate local interest.

55. California cannot justify the sales ban as a means of ensuring regulatory parity for in-state and out-of-state producers whose products are sold in California.

56. Nor does California have a valid interest in protecting its producers from the competitive disadvantage its confinement requirements create by subjecting out-of-state competitors to those same standards.

57. Further, California has no legitimate local interest in how farm animals are housed in other States and countries. California has no authority to regulate the conditions under which farm animals are housed outside its borders.

58. California also cannot justify the sales ban as a consumer health and safety measure. No scientific evidence establishes a causal link between Proposition 12's confinement requirements and a diminished risk of foodborne illness from pork or veal. This is

especially true regarding Proposition 12's ban on the sale of "the meat of immediate offspring of a covered animal who was confined in a cruel manner." Health & Safety Code § 25990(b)(2). There is no connection between a sow's confinement conditions and any risk of foodborne illness from the meat of her offspring. Piglets spend only a few weeks with the sow while nursing, during which time Proposition 12's confinement requirements do not apply. *Id* § 25992(f) (providing that Proposition 12's requirements do not apply "[t]o a breeding pig during the five-day period prior to the breeding pig's expected date of giving birth, and any day that the breeding pig is nursing piglets").

59. Moreover, there is already an extensive scheme of federal regulation in place to ensure meat safety. The Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 601 *et seq.*, requires the Department of Agriculture to inspect all cattle and swine slaughtered and processed for human consumption, and "establishes an elaborate system of inspecting live animals and carcasses in order to prevent the shipment of impure, unwholesome, and unfit meat and meat-food products." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455–56 (2012) (internal quotation marks and alterations omitted).

60. Attempts to justify Proposition 12's sales ban as a health and safety measure are further undermined by the exceptions to the ban. The sales ban applies to "whole pork meat" and "whole veal meat," Health & Safety Code § 25990(b)(1)–(2), which are defined to exclude "combination food products, including soups, sandwiches, pizzas, hotdogs, or similar processed or prepared food products," id. § 25991(u)–(v). In addition, the sales ban exempts "any sale undertaken at an establishment at which mandatory inspection is provided under the Federal Meat Inspection Act." *Id*. § 25991(o); *see also id*. § 25991(i) (defining "farm" to exclude such establishments). The confinement requirements also do not apply to live animal markets, *id*. § 25991(i); during medical research, veterinary care, transportation, exhibition, or slaughter, *id*. § 25992(a)–(e); during temporary periods for animal husbandry purposes, subject to specified caps, *id*. § 25992(g); or to a breeding pig during the five-day period prior to its expected date of giving birth and any day it is nursing piglets, *id*. § 25992(f). These numerous exceptions belie any notion that the prohibited sales pose a

genuine danger to public health or safety.

61.  California also has nondiscriminatory alternatives to Proposition 12's sales ban. If it is concerned that the prohibited sales pose a health and safety risk not already adequately addressed by the federal inspection scheme, it can subject whole pork and veal meat imported into the State to additional inspection at the point of sale to consumers. *See, e.g.*, Health & Safety Code § 114035. And it can promote consumer education to help ensure the safe handling and cooking of raw meats. What it cannot do is ban interstate trade in pork and veal based on unfounded assertions that farming practices in other States and countries pose speculative risks to California consumers' health and safety.

62.  Defendants are purporting to act within the scope of their authority under State law in enforcing and implementing Proposition 12.

63.  Defendants are liable to the Meat Institute for proper redress under 42 U.S.C. § 1983 because Proposition 12's sales ban deprives the Meat Institute's members of the rights, privileges, and immunities secured by the United States Constitution.

64.  The Meat Institute has no adequate remedy at law.

## SECOND CLAIM

### (Impermissible Extraterritorial Regulation)

65.  The prior paragraphs of the Complaint are incorporated by reference.

66.  Proposition 12's sales ban violates the constitutional prohibition on extraterritorial state regulation.

67.  The prohibition on extraterritorial regulation stems from both the Commerce Clause and the federal structure of the Constitution. Under the Commerce Clause and the federal structure of the Constitution, States and localities may not attach restrictions to imports in order to control commerce in other States and countries because doing so would extend their police power beyond their jurisdictional bounds.

68.  Proposition 12 violates that restriction because it bans the sale of imported products based on the conditions under which those products were produced in other states and countries. Proposition 12 dictates farming practices in other States by conditioning the

sale of imported pork and veal in California on adherence to California's confinement requirements upon pain of criminal or civil penalty.

69. California may not regulate out-of-state farming practices by banning the sale in California of wholesome meats imported from other States unless the producer complied with California's confinement regulations.

70. California cannot use the in-state sale of a product as a jurisdictional "hook" to regulate upstream commercial practices that occur in other States simply because California finds those practices objectionable.

71. The unconstitutionality of Proposition 12's sales ban is further confirmed because if every State enacted a similar sales ban, producers would be forced to choose between complying with the most restrictive confinement regulation, segregating their operations to serve different States, or abandoning certain markets altogether.

72. Proposition 12's sales ban, on its face and in its practical effect, regulates the channels of interstate and foreign commerce and the use of these channels of interstate and foreign commerce.

73. By regulating interstate and foreign commerce that occurs wholly outside of California, Proposition 12's sales ban violates the Commerce Clause of the United States Constitution and the principles of interstate federalism embodied in the federal structure of the United States Constitution.

74. Defendants are purporting to act within the scope of their authority under State law in enforcing and implementing Proposition 12.

75. Defendants are liable to the Meat Institute for proper redress under 42 U.S.C. § 1983 because Proposition 12's sales ban deprives the Meat Institute's members of the rights, privileges, and immunities secured by the United States Constitution.

76. The Meat Institute has no adequate remedy at law.

## THIRD CLAIM

### (Excessive Burden in Violation of the Commerce Clause)

77. The prior paragraphs of the Complaint are incorporated by reference.

78. Proposition 12's sales ban violates the Commerce Clause by imposing unreasonable burdens on interstate and foreign commerce that are clearly excessive when measured against any legitimate local benefits.

79. Proposition 12's sales ban substantially burdens the interstate and international market for veal and pork. Compliance with Proposition 12's confinement requirements would require extensive and costly changes to current industry practices regarding the production, processing and distribution of veal and pork.

80. Plaintiff's members will be required to restructure their facilities to comply with Proposition 12's confinement standards at great cost. Further, Plaintiff's members will be required to modify their own farms and to ensure that the facilities of the farmers upon whom they rely for pork and veal comply with Proposition 12's confinement standards.

81. The sales ban will cost the veal and pork industries hundreds of millions of dollars, and compliance would require independent farmers, packers, and distributors to restructure operations from coast to coast.

82. To compensate producers for their increased costs, processors and distributors will have to pay a premium for Proposition 12-compliant animals, and those that do not wish to follow Proposition 12 on a nationwide basis will have to reorganize slaughter, packing, and distribution operations to segregate animals and products that comply with the law from those that do not.

83. Proposition 12's sales ban imposes a substantial barrier to interstate commerce and may close off the California market to a large swath of integrated producers and the independent farmers upon which they rely to provide whole pork to their customers in California.

84. Proposition 12's sales ban presents out-of-state veal and pork producers with

1  a Hobson's choice: either comply with Proposition 12's confinement requirements by mak-
2  ing costly alterations to their facilities or slashing output, or be forced from the California
3  market. Either way, the result will be less veal and pork, produced, processed, and distrib-
4  uted less efficiently, to fewer customers, at higher prices.

5    85.   The burdens impose by Proposition 12's sales ban clearly exceed any legiti-
6  mate local benefit as the sales ban is not justified by any valid public welfare, consumer
7  protection or pro-competitive purpose.

8    86.   First, California has no legitimate local interest in regulating farming condi-
9  tions in other States and countries, or in preventing California consumers from buying im-
10 ported products that are produced under conditions California disfavors.

11   87.   Second, the sales ban's purported role in preventing foodborne illness is illu-
12 sory as there is no scientific causal link between Proposition 12's confinement requirements
13 and the risk of foodborne illness from whole pork or veal meat imported into California

14   88.   Defendants are purporting to act within the scope of their authority under State
15 law in enforcing and implementing Proposition 12's sales ban.

16   89.   Defendants are liable to the Meat Institute for proper redress under 42 U.S.C.
17 § 1983 because Proposition 12's sales ban deprives Plaintiff's members of the rights, priv-
18 ileges, and immunities secured by the United States Constitution.

19   90.   The Meat Institute has no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests the following relief:

A.  A declaratory judgment, pursuant to 28 U.S.C. § 2201, that Proposition 12's sales ban, as applied to veal and pork from outside California, violates the United States Constitution and is unenforceable;

B.  A preliminary and permanent injunction enjoining the Defendants from implementing or enforcing the sales ban as applied to veal or pork from outside of California;

C.  An order awarding Plaintiff its costs and attorneys' fees pursuant to 42 U.S.C.

§ 1988; and

D. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: October 4, 2019      SIDLEY AUSTIN LLP

*/s/ Sean A. Commons*
Paul J. Zidlicky (*pro hac vice* pending)
Eric D. McArthur (*pro hac vice* pending)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711

Sean A. Commons, SBN 217603
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Tel: (213) 896-6000
Fax: (213) 896-6600

*Attorneys for Plaintiff*