XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
R. MATTHEW WISE
Deputy Attorney General
State Bar No. 238485
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-6046
  Fax:  (916) 324-8835
  E-mail:  Matthew.Wise@doj.ca.gov
*Attorneys for Defendants Attorney General Xavier
Becerra, Secretary Karen Ross, and Director Sonia
Angell*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NORTH AMERICAN MEAT INSTITUTE,**<br><br>                                   Plaintiff,<br><br>     **v.**<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of California; KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture; and SUSAN FANELLI, in her official capacity as Acting Director of the California Department of Public Health,**<br><br>                                   Defendants. | Case No. 2:19-cv-08569 CAS (FFMx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:              November 18, 2019<br>Time:             10:00 a.m.<br>Courtroom:    8D<br>Judge:           Hon. Christina A. Snyder<br>Trial Date:     None set<br>Action Filed:  October 4, 2019 |

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................ 1

Background ......................................................................................... 2

    I.    Proposition 2 .......................................................... 2

    II.   Assembly Bill 1437 ............................................... 2

    III.  Proposition 12 ........................................................ 3

    IV.  This Lawsuit ........................................................... 4

Legal Standard .................................................................................. 4

Argument ........................................................................................... 5

    I.    Plaintiff Has Not Shown a Strong Likelihood of Prevailing on the Merits ........................................................................... 5

         A.   The Complaint Fails to Allege Facts Sufficient to Establish that Plaintiff Has Standing ........................... 5

         B.   Plaintiff's Dormant Commerce Clause Claims Are Not Likely to Succeed ........................................... 6

              1.   Proposition 12 does not discriminate against out-of-state veal and pork producers ......................... 8

              2.   Proposition 12 does not regulate extraterritorially ......... 13

              3.   Proposition 12 does not substantially burden interstate commerce—and even if it did, such burden would not clearly exceed the benefits to California ........................................ 17

    II.   Plaintiff Will Not Suffer Irreparable Harm Without a Preliminary Injunction ....................................................... 18

    III.  The Balance of the Equities and the Public Interest Favor Denying a Preliminary Injunction ...................................... 20

Conclusion ........................................................................................ 20

i

1

**TABLE OF AUTHORITIES**

2

3

**Page**

4

CASES

5

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ..............................................................5

6

7

*Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*
    903 F.3d 903 (9th Cir. 2018) .............................................7, 11, 14, 16

8

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
    729 F.3d 937 (9th Cir. 2013) ........................................................*passim*

9

10

*Associated Gen. Contractors of Am., San Diego Chapter v. Cal. Dep't of Transp.*
    713 F.3d 1187 (9th Cir. 2013) ..............................................................6

11

12

*Baldwin v. G.A.F. Seelig, Inc.*
    294 U.S. 511 (1935) ...............................................................10, 11, 13

13

14

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
    476 U.S. 573 (1986) ...................................................................7, 13, 17

15

16

*C & A Carbone, Inc. v. Town of Clarkstown*
    511 U.S. 383 (1994) .........................................................................11, 13

17

18

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*
    596 F.3d 1098 (9th Cir. 2010) ............................................................19

19

20

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*
    563 F.3d 847 (9th Cir. 2009) ...............................................................19

21

22

*Caribbean Marine Servs. Co., Inc. v. Baldrige*
    844 F.2d 668 (9th Cir. 1988) ...............................................................18

23

24

*Chalk v. U.S. Dist. Court Cent. Dist. Cal.*
    840 F.2d 701 (9th Cir. 1988) ...............................................................20

25

26

*Chinatown Neighborhood Ass'n v. Harris*
    794 F.3d 1136 (2015) ...............................................................13, 14, 17, 18

27

28

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*
    508 U.S. 520 (1993) ...............................................................................18

ii

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3
4

*Daniels Sharpsmart, Inc. v. Smith*
    889 F.3d 608 (9th Cir. 2018) ....................................................................... 15, 16

5
6

*Dep't of Revenue of Ky. v. Davis*
    553 U.S. 328 (2008) ........................................................................................ 7

7
8

*FOAGLA, Inc. v. 7-Eleven, Inc.*
    EDCV 14-1432 JGB (SPx), 2014 WL 12601505 (C.D. Cal. Dec. 18, 2014) ....... 6

9

*Goldie's Bookstore, Inc. v. Super. Ct.*
    739 F.2d 466 (9th Cir. 1984) ........................................................................... 20

10
11

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) ........................................................................................ 5

12
13

*Healy v. Beer Inst.*
    491 U.S. 324 (1989) ....................................................................................... 7, 13

14
15

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*
    736 F.3d 1239 (9th Cir. 2013) .......................................................................... 19

16
17

*Hunt v. Wash. State Apple Adver. Comm'n*
    432 U.S. 333 (1977) ....................................................................................... 11, 12

18
19

*Int'l Franchise Ass'n, Inc. v. City of Seattle*
    803 F.3d 389 (9th Cir. 2015) ............................................................................ 9

20
21

*Klein v. City of San Clemente*
    584 F.3d 1196 (9th Cir. 2014) .......................................................................... 19

22

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) .......................................................................... 5

23
24

*Legato Vapors, LLC v. Cook*
    847 F.3d 825 (7th Cir. 2017) .......................................................................... 14, 15

25
26

*Luke v. City of Los Angeles*
    EDCV 17-00495 CJC (SPx), 2017 WL 9486152 (C.D. Cal. July 27, 2017) ........ 6

27
28

*Maryland v. King*
    567 U.S. 1301 (2012) ...................................................................................... 20

**TABLE OF AUTHORITIES**
(continued)

Page

*Minnesota v. Clover Leaf Creamery Co.*
    449 U.S. 456 (1981) ................................................................ 11

*Missouri ex. rel. Koster v. Harris*
    847 F.3d 646 (9th Cir. 2017) ............................................. 3, 10

*Missouri v. California*
    No. 22O148 (U.S. Jan. 7, 2019) .............................................. 3

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
    567 F.3d 521 (9th Cir. 2009) ...................................... 7, 12, 13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012) .................................... *passim*

*Nat'l Council of La Raza v. Cegavske*
    800 F.3d 1032 (9th Cir. 2015) ............................................... 6

*NCAA v. Miller*
    10 F.3d 633 (9th Cir. 1993) ................................................. 16

*Nken v. Holder*
    556 U.S. 418 (2009) ............................................................ 20

*Or. Waste Sys., Inc. v. Dep't of Envt'l Quality of State of Oregon*
    511 U.S. 93 (1994) .......................................................... 8, 10

*Pac. Nw. Venison Producers v. Smitch*
    20 F.3d 1008 (9th Cir. 1994) ............................................... 10

*Pharm. Research & Mfrs. of Am. v. Walsh*
    538 U.S. 644 (2003) ............................................................ 15

*Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*
    768 F.3d 1037 (2014) .......................................................... 10

*Pike v. Bruce Church, Inc.*
    397 U.S. 137 (1970) ......................................................*passim*

*Rocky Mountain Farmers Union v. Corey*
    730 F.3d 1070 (9th Cir. 2013) .......................................*passim*

iv

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

*Sam Francis Found. v. Christies*
   784 F.3d 1320 (9th Cir. 2015) (en banc) ............................................. 15

*Summers v. Earth Island Inst.*
   555 U.S. 488 (2009) ............................................................................. 5, 6

*United States v. Stevens*
   559 U.S. 460 (2010) ................................................................................ 18

*W. Lynn Creamery, Inc. v. Healy*
   512 U.S. 186 (1994) ............................................................................. 9, 11

*Winter v. Natural Res. Def. Council, Inc.*
   555 U.S. 7 (2008) ......................................................................... 4, 5, 18, 19

STATUTES

Health & Safety Code
   § 25990 .................................................................................................... 2
   §§ 25990 - 25993 ................................................................................... 3
   §§ 25990 - 25994 ................................................................................... 2
   § 25990(a) ............................................................................................... 3
   § 25990(b)(1) .......................................................................................... 4
   § 25990(b)(2) .......................................................................................... 4
   § 25991(b) ............................................................................................... 2
   § 25991(e)(1) .......................................................................................... 12
   § 25992 .................................................................................................... 3
   § 25993(b) ............................................................................................... 4
   § 25993.1 ................................................................................................. 3
   § 25995 .................................................................................................... 9
   §§ 25995 - 25997.1 ............................................................................... 2
   § 25995(a) ............................................................................................... 3
   § 25996 .................................................................................................... 2

CONSTITUTIONAL PROVISIONS

United States Constitution, Article I, § 8, cl. 3 ........................................ 6

# TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

Assembly Bill No. 376 (2011-2012) ............................................................... 1

Assembly Bill No. 1437 (2009-2010) ................................................. *passim*

California Statutes 2010, c. 51, § 1 ................................................................ 2

Senate Bill No. 1520 (2003-2004) ................................................................. 1

**INTRODUCTION**

Last fall, California voters approved Proposition 12 "to prevent animal cruelty by phasing out extreme methods of farm animal confinement."  Prop. 12, § 2, as approved by voters, Gen. Elec. (Nov. 6, 2018).  This initiative statute requires California farmers to house veal calves, breeding pigs, and egg-laying hens in confinement systems that comply with specific standards for freedom of movement, minimum floorspace, and cage-free design.  It also prohibits the sale in California of meat from an animal that is not housed in compliance with these standards. Proposition 12 is the latest in a series of California laws that have been enacted in recent years to prevent animal cruelty and promote food safety.  *See*, *e.g.*, Proposition 2 (2008) (requiring California farmers to house veal calves, pregnant pigs, and egg-laying hens in confinement systems that comply with specific standards for freedom of movement); Assembly Bill No. 1437 (2009-2010) (prohibiting the sale in California of eggs produced by egg-laying hens that were not confined in compliance with Proposition 2's animal care standards); Senate Bill No. 1520 (2003-2004) (prohibiting the sale in California of foie gras produced by force feeding a bird); Assembly Bill No. 376 (2011-2012) (prohibiting the sale in California of shark fins).

Plaintiff North American Meat Institute, a trade association representing meat packers and processors, seeks to enjoin Defendants[1] from enforcing Proposition 12 on grounds that it violates the dormant Commerce Clause.  But Plaintiff lacks standing and, in any event, is unlikely to prevail on the merits of its claims because Proposition 12 regulates evenhandedly, regardless of the origin of the product, and only applies to sales within California.  The law permits California to exercise its police powers over its own local markets.  Nor has Plaintiff shown that Proposition

---

[1] Defendants are California Attorney General Xavier Becerra, Department of Food and Agriculture Secretary Karen Ross, and Department of Public Health Director Sonia Angell.  Susan Fanelli is no longer acting director of the California Department of Public Health.

12 inflicts irreparable harm on Plaintiff's members.  Plaintiff's mere speculation that its members will lose revenue and goodwill does not outweigh California's established interest in preventing animal cruelty.  Plaintiff's preliminary injunction motion should be denied.

## BACKGROUND

### I.   PROPOSITION 2

In the November 2008 election, California voters enacted Proposition 2, the Prevention of Farm Animal Cruelty Act, "to prohibit the cruel confinement of farm animals in a manner that does not allow them to turn around freely, lie down, stand up, and fully extend their limbs."  Prop. 2, § 2, as approved by voters, Gen. Elec. (Nov. 4, 2008).  Proposition 2 added sections 25990 through 25994 to the California Health and Safety Code, effective January 1, 2015.[2]  *Id.* § 5.  These provisions prohibited California farmers from "tether[ing] or confin[ing]" pregnant pigs, calves raised for veal, or egg-laying hens "on a farm, for all or the majority of any day, in a manner that prevents such animal from:  (a) Lying down, standing up, and fully extending his or her limbs; and (b) Turning around freely."  §§ 25990, 25991(b).

### II.   ASSEMBLY BILL 1437

In 2010, the California Legislature enacted Assembly Bill No. 1437 (AB 1437), adding sections 25995 through 25997.1 to the California Health and Safety Code.  Cal. Stats. 2010, c. 51, § 1.  Beginning on January 1, 2015, AB 1437 prohibited the sale in California of eggs produced by egg-laying hens that were not confined in compliance with Proposition 2's animal care standards.  § 25996.  Among the findings cited in support of this law is a Pew Commission on Industrial Farm Production report concluding that "food animals that are treated well and provided with at least minimum accommodation of their natural behaviors and

---

[2] All statutory references are to the California Health and Safety Code, unless otherwise noted.

physical needs are healthier and safer for human consumption." § 25995(a). A challenge to AB 1437 brought by six states under the dormant Commerce Clause was dismissed for lack of standing. *Missouri ex. rel. Koster v. Harris*, 847 F.3d 646, 650 (9th Cir. 2017). A larger group of states unsuccessfully sought to initiate an original jurisdiction action against California in the Supreme Court. *Missouri v. California*, No. 22O148 (U.S. Jan. 7, 2019).

## III. PROPOSITION 12

In the November 2018 election, California voters enacted Proposition 12, the Farm Animal Confinement Initiative, "to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." Prop. 12, § 2, as approved by voters, Gen. Elec. (Nov. 6, 2018). Proposition 12 amends sections 25990 through 25993 of the California Health and Safety Code and adds section 25993.1. *Id.* §§ 3-7.

Proposition 12 prohibits "[a] farm owner or operator within the state" from confining a covered animal in a "cruel manner"—specifically, as relevant here, (1) confining a calf raised for veal, a breeding pig, or an egg-laying hen "in a manner that prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," (2) after December 31, 2019, confining a calf raised for veal with less than 43 square feet of usable floorspace, and (3) after December 31, 2021, confining a breeding pig with less than 24 square feet of usable floorspace. §§ 25990(a); 25991(e)(1)-(3).[3] Proposition 12 also prohibits the sale in California of "(1) Whole veal meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner,"

---

[3] Section 25992 includes exceptions to these confinement requirements for medical research, veterinary care, transportation, exhibitions, slaughter, periods before a breeding pig is expected to give birth or when a breeding pig is nursing, and temporary periods for animal husbandry.

and "(2) Whole pork meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of immediate offspring of a covered animal who was confined in a cruel manner." § 25990(b)(1), (b)(2).  Proposition 12 maintains the same penalties as Proposition 2 and AB 1437; any person who violates these provisions is guilty of a misdemeanor, and upon conviction is subject to a fine not greater than $1,000, or imprisonment in the county jail for 180 days or less, or both.  § 25993(b).

## IV.  THIS LAWSUIT

On October 4, 2019, Plaintiff North American Meat Institute filed this lawsuit challenging Proposition 12's standards for veal and pork products that are sold in California.  Plaintiff brings three claims under the dormant Commerce Clause:  that Proposition 12 (1) "discriminat[es] against out-of-state producers, distributers and sellers of pork and veal," Compl. ¶ 45, (2) "violates the constitutional prohibition against extraterritorial state regulation," *id.* ¶ 66, and (3) "impos[es] unreasonable burdens on interstate and foreign commerce that are clearly excessive when measured against any legitimate local benefits," *id.* ¶ 78.  Plaintiff seeks a declaration "that Proposition 12's sales ban, as applied to veal and pork from outside California, violates the United States Constitution and is unenforceable," and a preliminary and permanent injunction enjoining Defendants from enforcing this prohibition.  Compl. 14.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To prevail, "a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) that an injunction is in the public interest."  *Id*. at 7, 20.  Alternatively, "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits

were raised and the balance of hardships tips sharply in the plaintiff's favor."
*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)
(internal citation omitted).  Plaintiff must make a showing of all four *Winter* factors
even under the alternative sliding scale test.  *Id*. at 1132, 1135.

## ARGUMENT

### I. PLAINTIFF HAS NOT SHOWN A STRONG LIKELIHOOD OF PREVAILING ON THE MERITS

#### A. The Complaint Fails to Allege Facts Sufficient to Establish that Plaintiff Has Standing

This Court need not reach the merits of Plaintiff's claims because, as a
threshold matter, Plaintiff has not alleged facts sufficient to establish that it has
associational standing.  In determining whether an organization has standing, the
inquiry is the "same . . . as in the case of an individual:  Has the plaintiff alleged
such a personal stake in the outcome of the controversy as to warrant his invocation
of federal-court jurisdiction?"  *Havens Realty Corp. v. Coleman,* 455 U.S. 363,
378-79 (1982) (internal quotation marks and citations omitted).  Organizations, like
individuals, must satisfy the "irreducible constitutional minimum of standing
consist[ing] of three elements: (1) injury in fact; (2) causation; and (3)
redressability."  *La Asociacion de Trabajadores de Lake Forest v. City of Lake
Forest,* 624 F.3d 1083, 1088 (9th Cir. 2010).  An organization can do so by alleging
that (1) it has at least one member who has suffered an injury in fact, *Summers v.
Earth Island Inst.*, 555 U.S. 488, 498 (2009), or (2) it has suffered a legally
redressable injury in its own right, *e.g.*, *Havens*, 455 U.S. at 378-79.

The few conclusory allegations related to standing in Plaintiff's complaint are
an attempt to meet the standing requirement under the first of these two categories.
Plaintiff alleges that "[o]ne or more of its members possesses standing to sue in its
own right" because many of its members "own and raise hogs and veal calves in
various States across the country and sell pork and veal to customers in California"
and "are regulated and harmed by Proposition 12's sales ban . . . ."  Compl. ¶ 9.

1    Plaintiff adds that "Proposition 12's regulation of the confinement of animals
2    outside of California is of vital concern to the Meat Institute's members," *id.* ¶ 10,
3    and that the claims asserted and relief sought in the complaint do not require the
4    participation of any of Plaintiff's individual members, *id.* ¶ 11.

5           Taken together, these are not "specific allegations establishing that at least one
6    identified member had suffered or would suffer harm." *See Summers*, 555 U.S. at
7    498.  Such broad assertions of apprehension about possible injury are not enough to
8    establish standing. *Associated Gen. Contractors of Am., San Diego Chapter v. Cal.*
9    *Dep't of Transp.*, 713 F.3d 1187, 1195 (9th Cir. 2013) (plaintiff organization's
10   general allegations in complaint asserting that its members would suffer harm were
11   insufficient to show standing); *Luke v. City of Los Angeles*, EDCV 17-00495 CJC
12   (SPx), 2017 WL 9486152, at *3 (C.D. Cal. July 27, 2017) (same); *FOAGLA, Inc. v.*
13   *7-Eleven, Inc.*, EDCV 14-1432 JGB (SPx), 2014 WL 12601505, at *3 (C.D. Cal.
14   Dec. 18, 2014) (same).  Indeed, absent a showing that all members of an
15   organization are affected by the challenged activity, the "requirement of naming the
16   affected members has never been dispensed with in light of statistical
17   probabilities." *Summers*, 555 U.S. at 498-99.  Plaintiff must allege, at a minimum,
18   facts that make it "relatively clear, rather than merely speculative, that one or more
19   members have been or will be adversely affected by a defendant's action." *Nat'l*
20   *Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).  Plaintiff has
21   not done so here.

22          **B.    Plaintiff's Dormant Commerce Clause Claims Are Not Likely to**
               **Succeed**
23

24          Even if it could establish standing, Plaintiff cannot show a likelihood of
25   success on the merits of its various dormant Commerce Clause claims.  The
26   Commerce Clause authorizes Congress to "regulate Commerce with foreign
27   Nations, and among the several States . . . ."  U.S. Const., art. I, § 8, cl. 3.  It
28   includes an implied limitation on the states' regulatory authority often referred to as

the negative or dormant Commerce Clause. *Healy v. Beer Inst.*, 491 U.S. 324, 326

n.1 (1989). This doctrine's central concern is "economic protectionism—that is,

regulatory measures designed to benefit in-state economic interests by burdening

out-of-state competitors." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38

(2008). At the same time, courts balance this check on protectionism against the

Framers' regard for "federalism favoring a degree of local autonomy." *Id.* at 338.

The Supreme Court has adopted a two-tiered approach to determine whether a

law violates the dormant Commerce Clause. *Ass'n des Eleveurs de Canards et

d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (citing *Brown-

Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986)).

Courts first ask whether the law "regulates or discriminates against interstate

commerce, or [] its effect is to favor in-state economic interests . . . ." *Id.* (quoting

*Brown-Forman*, 476 U.S. at 579). If the law discriminates against out-of-state

entities, it is subject to a form of strict scrutiny. *Nat'l Ass'n of Optometrists &

Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 524 (9th Cir. 2009) (citing

*C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392 (1994)). Similarly,

a statute that directly regulates interstate commerce is usually struck down. *Brown-

Forman*, 476 U.S. at 579.

On the other hand, a nondiscriminatory law that does not regulate

extraterritorially "will be upheld unless the burden imposed on such commerce is

clearly excessive in relation to the putative local benefits." *Am. Fuel &

Petrochemical Mfrs. v. O'Keeffe*, 903 F.3d 903, 916 (9th Cir. 2018) (quoting *Pike v.

Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Before engaging in this balancing,

which derives from *Pike v. Bruce Church, Inc.*, courts must assess a "critical

requirement for proving a violation of the dormant Commerce Clause"—whether

there is a "*substantial burden* on *interstate commerce*." *Nat'l Ass'n of Optometrists

& Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (emphasis in original).

In the few dormant Commerce Clause cases invalidating nondiscriminatory statutes

1    that imposed other substantial burdens on interstate commerce, such burdens

2    generally arose from inconsistent regulation of activities that require a uniform

3    system of regulation.  *Id.* at 1148.  But where there is no substantial burden on

4    interstate commerce, *Pike* balancing does not apply.  *Id.* at 1156-57.

5        Plaintiff claims that Proposition 12's standards for veal and pork products that

6    are sold in California violate the dormant Commerce Clause by discriminating

7    against out-of-state veal and pork producers, regulating such producers

8    extraterritorially, and unduly burdening interstate commerce.  But Proposition 12 is

9    constitutional because it applies uniformly to all veal and pork sales in California—

10   and only to sales in California.  Plaintiff is unlikely to prevail on any of its claims.

11        **1.    Proposition 12 does not discriminate against out-of-state**
12               **veal and pork producers**

13   Proposition 12 does not discriminate against Plaintiff's members—or any out-

14   of-state veal and pork producers.  Discrimination under the dormant Commerce

15   Clause "means differential treatment of in-state and out-of-state economic interests

16   that benefits the former and burdens the latter."  *Or. Waste Sys., Inc. v. Dep't of*

17   *Envt'l Quality of State of Oregon*, 511 U.S. 93, 99 (1994).  A law is

18   unconstitutional if it "discriminates against out-of-state entities on its face, in its

19   purpose, or in its practical effect . . . unless it 'serves a legitimate local purpose, and

20   this purpose could not be served as well by available nondiscriminatory means.'"

21   *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013)

22   (quoting *Maine v. Taylor*, 477 U.S. 131, 138 (1986)).  Plaintiff essentially

23   concedes, as it must, that Proposition 12 is facially neutral.  Mot. 7.  The burden

24   thus lies with Plaintiff to "establish[] that [the] statute has a discriminatory purpose

25   or effect under the Commerce Clause."  *Id.* at 1097 (citing *Hughes v. Oklahoma*,

26   441 U.S. 322, 336 (1979).

27        Proposition 12's plain language establishes its nondiscriminatory intent.

28   Proposition 12 has two purposes:  "to prevent animal cruelty" and to protect "the

health and safety of California consumers" from "the risk of foodborne illness." Prop. 12, § 2, as approved by voters, Gen. Elec. (Nov. 6, 2018). These are unquestionably legitimate and nondiscriminatory purposes. Neither suggests any favoritism for in-state veal and pork producers over Plaintiff's members.

Yet Plaintiff's argues that Proposition 12 has a discriminatory purpose—specifically, that Proposition 12 "is the direct lineal descendant of AB 1437," Mot. 8, and that a decade-old legislative analysis suggests that AB 1437 was intended in part "to level the playing field so that in-state producers [of shelled eggs] [we]re not disadvantaged," *id*. (quoting Cal. Assem. Comm. on Agric., Analysis of AB 1437, at 1 (May 13, 2009)). But even if this argument had merit, AB 1437 only addressed the in-state sale of shelled eggs, not the in-state sale of veal or pork at issue here. Plaintiff's inference that AB 1437's legislative history provides binding authority to interpret Proposition 12 finds no support in the law.[4] Proposition 12 must be judged on its own merits.

Having relied entirely on AB 1437's legislative history, Plaintiff fails to cite anything in Proposition 12's "[statutory] language promoting local industry or seeking to level the playing field," *see* Mot. 8 (quoting *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 401), and thus cannot show that Proposition 12 has a discriminatory purpose. *Compare Int'l Franchise Ass'n*, 803 F.3d at 403 (upholding determination that city council was not motivated by intent to discriminate against out-of-state firms where "ordinance lack[ed] a stated discriminatory purpose"), *with W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 194 ("avowed purpose" of Massachusetts pricing order, which was "effectively imposed only on out-of-state products," was "to enable higher cost Massachusetts dairy farmers to compete with lower cost dairy farmers in other States"). The dormant

---

[4] In any event, AB 1437's dual purposes were similar to those of Proposition 12: to protect the welfare of egg-laying hens and to ensure public health and safety through the prevention of salmonella. § 25995.

9

Commerce Clause forbids laws that privilege in-state entities at the expense of out-of-state competitors, not laws that are neutral.  *E.g.*, *Or. Waste*, 511 U.S. at 99.

Nor does Proposition 12 have a discriminatory effect.  Plaintiff alleges that Proposition 12 erects "a protectionist trade barrier, blocking the flow of goods in interstate commerce unless out-of-state producers comply with California's regulations."  Mot. 8.  But treating out-of-state producers the same as in-state producers—as Proposition 12 does—is not discriminatory.  *Ass'n des Eleveurs*, 729 F.3d at 948 ("statute that 'treats all private companies exactly the same' does not discriminate against interstate commerce") (quoting *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007)); *Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*, 768 F.3d 1037, 1042 ("Even if one of the manufacturers represented by Plaintiffs were to close all of its production facilities, open a single production facility in Alameda County, and limit the sale of its products to intra-county commerce, the Ordinance would still apply to that manufacturer.")  This is true "even when only out-of-state businesses are burdened because there are no comparable in-state businesses."  *Ass'n des Eleveurs*, 729 F.3d at 948; *see also Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994) ("An import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items.").  In this sense, Proposition 12 is no different than the statute in *Association des Eleveurs* that prohibited "the sale of both intrastate and interstate products that are the result of force feeding a bird."  *Ass'n des Eleveurs*, 729 F.3d at 948 (concluding that statute was nondiscriminatory, and affirming district court's denial of motion for preliminary injunction); *see also Missouri ex rel. Koster*, 847 F.3d at 655.

Plaintiff likens this case to the Depression-era case *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935).  There, the Supreme Court struck down a New York law establishing price controls that applied not only to in-state milk purchases, but also

1   to out-of-state milk purchases, with the purpose of "keep[ing] the system

2   unimpaired by competition from afar." *Id.* at 519; *see also W. Lynn Creamery*, 512

3   U.S. at 194 (invalidating law that was "effectively a tax" imposed only on milk

4   produced out-of-state); *Carbone,* 511 U.S. at 387 (invalidating law that required a

5   recycler to dispose of non-recyclable waste at a particular municipal facility,

6   depriving out-of-state competitors "of access to a local market"). But Proposition

7   12 has no such protectionist purpose or effect. Unlike *Baldwin* and its progeny,

8   Proposition 12—like countless other product standards—applies evenhandedly to

9   all regulated products sold in-state, regardless of the origin of the product. *See*,

10  *e.g.*, *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471-72 (rejecting

11  argument that Minnesota statute was protectionist where it "prohibit[ed] all milk

12  retailers from selling their products in plastic, nonreturnable milk containers,

13  without regard to whether the milk, the containers, or the sellers [we]re from

14  outside the State").

15      Plaintiff also errs in suggesting that this case is similar to *Hunt v. Washington*

16  *State Apple Advertising Commission*, 432 U.S. 333 (1977), in which the Supreme

17  Court struck down a North Carolina law that required closed containers of apples

18  sold, offered for sale, or shipped into the state to bear the U.S. grade. *Id.* at 335.

19  Washington apple growers and dealers had challenged the law for prohibiting them

20  from marketing their apples under Washington's equal or superior grades, which

21  "ha[d] gained nationwide acceptance in the apple trade" as a result of the plaintiffs'

22  substantial investment. *Id.* at 351. The law had the discriminatory effect "of

23  stripping away from the Washington apple industry the competitive and economic

24  advantages *it ha[d] earned for itself* through its expensive inspection and grading

25  system." *Id.* (emphasis added). Proposition 12, in contrast, does not strip away any

26  advantages that Plaintiff has earned (nor has Plaintiff so alleged); it merely favors

27  one standard "over others with more harmful effects." *See Am. Fuel*, 903 F.3d at

28

1   915 (distinguishing *Hunt* because plaintiffs could not point to any advantage they

2   had earned); *Rocky Mountain*, 730 F.3d at 1092 (same).

3       Plaintiff asserts that Proposition 12 "potentially" discriminates against its

4   members in two other respects.  Mot. 10.  First, Plaintiff argues that one aspect of

5   Proposition 12—section 25991(e)(1)'s prohibition on "[c]onfining a covered animal

6   in a manner that prevents the animal from . . . turning around freely"—

7   disadvantages out-of-state producers because in-state producers were given six

8   years to come into compliance with this standard when it was first introduced in

9   Proposition 2.  Mot. 10-11.  Yet, as Plaintiff concedes, Proposition 12 merely

10  applied the same standards to all produce sales in California—nothing more.

11  Plaintiff fails to cite any authority to support the position that a law is

12  discriminatory if it does not provide out-of-state entities "lead time" to come into

13  compliance with requirements that apply equally to in-state entities.  Mot. 10.  The

14  Constitution does not require a state to give preferential treatment to out-of-state

15  entities that choose to sell their products within that state, or to exempt those

16  entities from the same neutral rules that apply to in-state sellers.

17      Second, Plaintiff argues that Proposition 12 may give California's "bob" veal

18  producers a competitive advantage over out-of-state milk-fed veal producers

19  because, Plaintiff speculates, Proposition 12's confinement restrictions may not

20  apply to calves culled from California dairy farms for slaughter.  Mot. 11.  But

21  Plaintiff has not established that bob veal producers and milk-fed veal producers are

22  similarly situated groups.  *Brown*, 567 F.3d at 527 ("competing in the same market

23  is not sufficient to conclude that entities are similarly situated").  Just as Proposition

24  12 makes no distinction between in-state or out-of-state producers that are raising

25  calves for veal, it treats all bob veal producers the same.  In short, Proposition 12

26  does not confer an advantage to in-state producers that is not equally available to

27  out-of-state producers.

28

1    Because Proposition 12 is not discriminatory, the Court need not determine

2    whether it survives strict scrutiny.  *See Brown*, 567 F.3d at 528.  At most,

3    Proposition 12, like other nondiscriminatory laws, would be subject to *Pike*

4    balancing—but only if, as further discussed below, *see* Argument I.B.3, the Court

5    first determines that it substantially burdens interstate commerce.  *Harris*, 682 F.3d

6    at 1156-57.

### 2.    Proposition 12 does not regulate extraterritorially

8    Proposition 12 is not an extraterritorial regulation.  A state law regulates

9    extraterritorially only where it directly controls "commerce occurring wholly

10   outside the boundaries of a State," either by its terms or in "practical effect."

11   *Healy*, 491 U.S. at 336.  The Supreme Court has rarely struck down a statute as

12   extraterritorial.  *Baldwin*, 294 U.S. at 519 (invalidating New York milk-pricing

13   statute that regulated prices paid for milk purchased in other states); *Healy*, 491

14   U.S. at 338 (invalidating Connecticut price-affirmation statute that regulated price

15   of beer sold in Massachusetts); *Brown-Forman*, 476 U.S. at 575-76, 582-83

16   (invalidating New York price-affirmation law that had effect of requiring distillers

17   to seek approval from state regulators for prices charged out-of-state).  Because

18   Proposition 12 regulates only in-state commerce, it does not exceed any

19   constitutional limits.[5]

20   Indeed, even when a state law "has significant extraterritorial effects, it passes

21   Commerce Clause muster when [] those effects result from the regulation of in-state

22   conduct." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th.

23   Cir. 2015).  Here, Proposition 12 is entirely indifferent to the sales of veal and pork

24   _____

25   [5] *Carbone* does not suggest otherwise.  The Supreme Court's observation that a state "may not attach restrictions to exports or imports in order to control commerce in other states," Mot. 1-2 (quoting *Carbone*, 511 U.S. at 393) addresses

26   economic protectionism, not extraterritoriality.  The ordinance in *Carbone* prohibited a recycler from disposing of non-recyclable waste anywhere other than

27   at a particular municipal facility.  *Carbone*, 511 U.S. at 387.  *Carbone* does not purport to forbid states from exercising their well-established authority to regulate

28   products sold in their own markets.

1    outside of California.  The Ninth Circuit has consistently rejected challenges, like
2    this one, to claims that a regulation of in-state sales impermissibly extends beyond
3    state borders.  *Ass'n des Eleveurs*, 729 F.3d at 949-951 (rejecting extraterritoriality
4    challenge in preliminary injunction motion to California law prohibiting the in-state
5    sale of certain products produced by force feeding a bird); *Chinatown*
6    *Neighborhood Ass'n*, 794 F.3d at 1145-46 (rejecting extraterritoriality challenge to
7    California law prohibiting the in-state sale of shark fins); *Rocky Mountain*, 730 F.3d
8    at 1101-04 (rejecting extraterritoriality challenge to California law setting carbon
9    intensity standard for in-state sale of fuel); *Am. Fuel*, 903 F.3d at 916-17 (rejecting
10   extraterritoriality challenge to Oregon law setting carbon intensity standard for in-
11   state sale of fuel).  That private producers in other states may have to alter their
12   production practices with respect to veal and pork they wish to sell in California
13   does not mean that Proposition 12 regulates extraterritorially.  *See Rocky Mountain*,
14   730 F.3d at 1103 (contrasting permissible regulations of in-state transactions that
15   produce out-of-state effects with impermissible regulations of wholly out-of-state
16   transactions) (citing *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669
17   (2003)).

18         In the face of this controlling precedent, Plaintiff suggests that Proposition 12
19   more closely resembles the laws struck down in a handful of cases from other
20   circuits.  Plaintiff relies most heavily on the Seventh Circuit case, *Legato Vapors,*
21   *LLC v. Cook*, 847 F.3d 825 (7th Cir. 2017), where the court invalidated an Indiana
22   law that banned the in-state sale of vaping products from out-of-state manufacturers
23   that did not comply with a laundry list of "detailed" operational requirements.  *Id.*
24   at 827.  Among the conditions that the law imposed were "astoundingly specific
25   provisions for the qualifications of the security firm that the manufacturer must
26   commit to hire for at least five years," directives mandating the use of "specific
27   cleansers in specific sinks" to wash equipment, and a ban on certain commercial
28   transactions between out-of-state entities.  *Id.* at 832-36.  These requirements

14

applied directly to out-of-state manufacturers if any of their products were sold in Indiana, *id.* at 830-32, creating an "obvious risk of inconsistent regulation" for manufacturers selling their products in multiple states, *id.* at 833. Proposition 12's narrow application to in-state sales stands in contrast to these Indiana regulations of "unprecedented" reach. *See id.* at 827. The dormant Commerce Clause does not preclude states from enacting laws setting standards for the sale of products within the state, such as Proposition 12, simply because those laws have effects outside the state. *See Walsh*, 538 U.S. at 669 (rejecting extraterritoriality challenge to Maine drug-rebate program, notwithstanding possible influence on terms of out-of-state sales between manufacturers and distributors and reduced ultimate benefit of those sales).

Plaintiff only briefly mentions a few Ninth Circuit cases to support its extraterritoriality argument. Plaintiff's reliance on *Sam Francis Foundation v. Christies*, 784 F.3d 1320 (9th Cir. 2015) (en banc), is misplaced. Mot. 18. There, the court invalidated the portion of a California law that required art sellers who reside in-state to pay artists royalties from the out-of-state resales of fine art. *Id.* at 1323. The court observed that the reason the law was unconstitutional was that it facially regulated transactions occurring entirely out-of-state:

> For example, if a California resident has a part-time apartment in New York, buys a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota artist—even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California. We easily conclude that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.

*Id.* The court specifically distinguished that type of regulation from laws, like Proposition 12, that regulate in-state conduct (namely, sales) and may have out-of-state effects. *See id.* at 1324 (discussing *Association des Eleveurs* and *Rocky Mountain*).

1    *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018), also cuts

2    against Plaintiff's extraterritoriality claim.  Mot. 16.  In *Daniels*, the court

3    determined that a California law that mandated the incineration of medical waste

4    generated in-state but disposed of out-of-state was likely an extraterritorial

5    regulation.  *Id.* at 615-16.  The court distinguished that case, which concerned "an

6    attempt to reach beyond the borders of California and control transactions that

7    occur wholly outside of the State" from cases, like this one, which address

8    permissible regulations of "products that are brought into or are otherwise within

9    the borders of the State."  *See id.* at 615.

10    And *NCAA v. Miller*, 10 F.3d 633 (9th Cir. 1993), is inapposite.  There, the

11    court invalidated a Nevada law that imposed state procedural standards on the

12    NCAA's disciplinary proceedings.  *Id.* at 638-40.  The court held that these

13    standards would, as a practical matter, impermissibly require the NCAA to apply

14    Nevada's rules in proceedings involving no Nevada nexus, because of the NCAA's

15    unique need for national uniformity in disciplinary proceedings.  *Id.* at 638-39.  But

16    here, Plaintiff has not alleged that its members are subject to a "nationally uniform

17    [] production method," or that Proposition 12 has "imposed [] the sole production

18    method that Plaintiff[] must follow."  *See Ass'n des Eleveurs*, 729 F.3d at 950

19    (distinguishing *Miller*).  Again, Proposition 12 is indifferent to veal and pork

20    products sold out-of-state.  It is not enough for Plaintiff to speculate that "other

21    States will follow California's lead," or to analogize this case to hypotheticals of

22    state overreach, *see* Mot. 19, because "the dormant Commerce Clause does not

23    guarantee that [] producers may compete on the terms they find most convenient."

24    *Rocky Mountain*, 730 F.3d at 1092; *see also Am. Fuel*, 903 F.3d at 915 (same);

25    *Harris*, 682 F.3d at 1151 ("dormant Commerce Clause does not . . . guarantee

26    Plaintiffs their preferred method of operation").  Plaintiff's extraterritoriality claim

27    cannot succeed.

28

1

2

**3.    Proposition 12 does not substantially burden interstate commerce—and even if it did, such burden would not clearly exceed the benefits to California**

3    Because Proposition 12 "regulates evenhandedly" and "has only indirect

4    effects on interstate commerce," it must be sustained so long as the state interest

5    underlying the law is legitimate and the putative local benefits of the law are not

6    "clearly exceed[ed] by any burden on interstate commerce."  *See Brown-Forman*,

7    476 U.S. at 579 (citing *Pike*, 397 U.S. at 142).  Under *Pike*, Plaintiff "must first

8    show that the statute imposes a substantial burden before the court will 'determine

9    whether the benefits of the challenged laws are illusory.'"  *Ass'n des Eleveurs*, 729

10   F.3d at 951-52 (quoting *Harris*, 682 F.3d at 1155).  The Ninth Circuit has identified

11   two ways of demonstrating that a law imposes a substantial burden—by showing

12   either that the law is discriminatory, or that it creates "inconsistent regulation of

13   activities that are inherently national or require a uniform system of regulation,"

14   such as transportation or professional sports leagues.  *Id.* at 952 (quoting *Harris*,

15   682 F.3d at 1148); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146-47.  Neither

16   of those circumstances applies here.  *Ante* Argument I.B.1, I.B.2.

17   Plaintiff has alleged that Proposition 12's standards for the in-state sale of

18   meat impose a substantial burden because they "present[] out-of-state veal and pork

19   producers with a Hobson's choice:  either comply with California's confinement

20   requirements by making costly alterations to facilities and/or slashing output, or be

21   excluded from the California market."  Mot. 21.  But "the Commerce Clause does

22   not protect 'the particular structure or methods of operation in a retail market.'"

23   *Harris*, 682 F.3d at 1151 (quoting *Exxon Corp. v. Governor of Md.*. 437 U.S. 117,

24   127 (1978)).  Interstate commerce is not significantly burdened "merely because a

25   non-discriminatory regulation precludes a preferred, more profitable method" of

26   doing business.  *Id.* at 1154; *see also Ass'n des Eleveurs*, 729 F.3d at 952.  Where,

27   as here, the law "does not regulate activities that inherently require a uniform

28   system of regulation and does not otherwise impair the free flow of materials and

products across state borders, there is not a significant burden on interstate commerce." *See Harris*, 682 F.3d at 1154-55.

Even if *Pike* balancing were applied, Plaintiff has not shown—and cannot show—that Proposition 12's incidental burdens on interstate commerce would clearly outweigh its considerable benefits. Plaintiff minimizes Proposition 12's primary benefit—the significant interest, long recognized by the courts, in preventing animal cruelty. *United States v. Stevens*, 559 U.S. 460, 469 (2010) ("[T]he prohibition of animal cruelty itself has a long history in American law, starting with the early settlement of the Colonies"); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 538 (1993); *Ass'n des Eleveurs*, 729 F.3d at 952; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147. Proposition 12 advances this interest by "discourag[ing] the consumption of products produced" from animals confined in a cruel manner and "prevent[ing] complicity in a practice that [the State] deem[s] cruel to animals." *See Ass'n des Eleveurs*, 729 F.3d at 952. None of the burdens Plaintiff has identified clearly exceeds Proposition 12's tangible benefits.[6]

## II. PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM WITHOUT A PRELIMINARY INJUNCTION

A plaintiff seeking preliminary relief must show "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. The mere "possibility" of harm is not enough, because injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* The threat of harm must also be immediate. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiff has not met this burden here.

---

[6] Plaintiff disputes whether Proposition 12's other main benefit—protecting food safety—applies to veal and pork products. It is unnecessary for the Court to resolve this issue because the prevention of animal cruelty is unquestionably a recognized benefit that applies here.

1    Plaintiff argues, first, that the alleged violation of the dormant Commerce

2    Clause is itself irreparable harm.  Mot. 23.  Even if Plaintiff had shown a

3    constitutional violation here—and it has not—courts have generally reserved

4    findings of irreparable harm in this context to violations of fundamental

5    constitutional rights, such as free speech.  *See*, *e.g.*, *Klein v. City of San Clemente*,

6    584 F.3d 1196, 1208 (9th Cir. 2014) (harm is "particularly irreparable" where

7    plaintiff seeks to engage in time-sensitive political speech).

8    Plaintiff also suggests that, because Eleventh Amendment immunity prevents

9    them from recovering monetary losses, its members will suffer irreparable harm.

10   Mot. 23.  To support this proposition, Plaintiff cites *California Pharmacists*

11   *Association v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), *vacated on other*

12   *grounds by Douglas v. Independent Living Center of Southern California, Inc.*, 556

13   U.S. 606 (2012)).  Following that case, the Ninth Circuit determined that to show

14   irreparable harm, the plaintiffs could show, either as Medicaid beneficiaries, that

15   enforcement of a proposed rule may deny them needed medical care, or, as

16   Medicaid providers, that they will lose "considerable revenue."  *Cal. Pharmacists*

17   *Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1113-14 (9th Cir. 2010), *vacated on other*

18   *grounds by Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 556 U.S. 606 (2012).  The

19   district court based its irreparable harm finding on the fact that Medicaid

20   beneficiaries were at risk of losing access to services, and did not address what

21   would constitute a "considerable" revenue loss.  *See id.* at 1112-13.  Here, Plaintiff

22   intimates that some of its members may need to upgrade their facilities and that

23   others may have to leave the California market, but offers few specifics to support

24   anything more than the mere "possibility" of harm.  *See Winter*, 555 U.S. at 22.

25   Finally, Plaintiff asserts that Proposition 12 will cause its members to suffer

26   "loss of control over business reputation and damage to customer goodwill."

27   Mot. 23.  Yet Plaintiff's claims are entirely speculative, "grounded in platitudes

28   rather than evidence."  *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736

19

F.3d 1239, 1250 (9th Cir. 2013); *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) (lower court's finding that plaintiff would lose goodwill and "untold" customers is speculative injury, not irreparable injury).  Nor is the harm that Plaintiff alleges truly imminent.  *See*, *e.g.*, Mot. 24 (arguing that pork suppliers must begin preparing for Proposition 12's floorspace requirements for breeding pigs, which do not take effect until 2022).  Without more, Plaintiff's naked allegations are insufficient to show irreparable harm.

## III.  THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR DENYING A PRELIMINARY INJUNCTION

The balance of equities and the public interest also militate against issuing an injunction.  These factors merge when the government is the party opposing the injunction.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, an injunction would inflict irreparable harm upon Defendants by preventing enforcement of an initiative statute enacted by the will of the people.  *Cf. Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers) (enjoining statute enacted by representatives of the people constitutes irreparable harm).[7]  The public interest likewise favors preserving the State's duly enacted laws.  *Ante* Argument I.B.3.  Conversely, Plaintiff only asserts a vague concern for "compliance with the Constitution"—untethered to any actual showing of a violation, *ante* Argument I.B—and alleges highly speculative harm to the economic wellbeing of its members.  Mot. 25.  On balance, Plaintiff has not established that the equities and public interest favor an injunction.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's motion for preliminary injunction.

---

[7] Enjoining the provisions of Proposition 12 that are currently in effect would also upend the status quo, contrary to the purpose of an injunction. *See Chalk v. U.S. Dist. Court Cent. Dist. Cal.*, 840 F.2d 701, 704 (9th Cir. 1988).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  October 28, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


*/s/  R. Matthew Wise*
R. MATTHEW WISE
Deputy Attorney General
*Attorneys for Defendants Attorney General Xavier Becerra, Secretary Karen Ross, and Director Sonia Angell*

SA2019105411
14195982.docx

# CERTIFICATE OF SERVICE

Case Name:   **North American Meat Institute**          No.   **2:19-cv-08569 CAS (FFMx)**
             **v. Becerra, et al**

I hereby certify that on <u>October 28, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>October 28, 2019</u>, at Sacramento, California.

|  |  |
|---|---|
| Tracie L. Campbell | */s/  Tracie Campbell* |
| Declarant | Signature |

SA2019105411
14226983.docx