THOMAS M. FISHER
SOLICITOR GENERAL
KIAN J. HUDSON
DEPUTY SOLICTOR GENERAL
JULIA C. PAYNE
DEPUTY ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
302 W. Washington Street, IGCS 5th Floor
Indianapolis, IN 46204-2770
Email: Tom.Fisher@atg.in.gov
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Appearing *pro hac vice*

EDWARD S. RENWICK, SBN 29325
Email: erenwick@hanmor.com
HANNA & MORTON LLP
444 S. Flower St., Suite 2530
Los Angeles, CA 90071
Telephone: (213) 628-7131
Facsimile: (213) 623-3379

*Attorneys for Amici Curiae*
*State of Indiana et al.*
(Additional Counsel Listed at End)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORTH AMERICAN MEAT INSTITUTE,<br><br>Plaintiff,<br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California, KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and SUSAN FANELLI, in her official capacity as Acting Director of the California Department of Public Health,<br><br>Defendants. | Case No. 2:19-cv-8569<br><br>**MOTION FOR LEAVE TO FILE AND AMICUS BRIEF OF INDIANA, ALABAMA, ARKANSAS, KANSAS, LOUISIANA, MISSOURI, OKLAHOMA, SOUTH CAROLINA, AND UTAH IN SUPPORT OF PLAINTIFF'S REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>The Honorable Christina A. Snyder<br>Date:           November 25, 2019<br>Location:    Courtroom 8D<br>Complaint filed: October 4, 2019 |

## MOTION FOR LEAVE TO FILE AMICUS BRIEF AND INTEREST OF AMICI

The States of Indiana, Alabama, Arkansas, Kansas, Louisiana, Missouri, Oklahoma, South Carolina, and Utah hereby move for leave to file an amicus brief in support of Plaintiff's request for declaratory and injunctive relief.

California's Proposition 12, enacted by voters in November 2018, contains two operative provisions. The first provision exercises California's authority over farming in the State by regulating the manner in which *California* farmers may confine (1) calves raised for veal, (2) breeding pigs, and (3) egg-laying hens. Cal. Health & Safety Code § 25990(a). The second provision, however, unconstitutionally purports to extend California's animal-confinement regulations to *every* farmer in the United States: It prohibits the sale of any veal, pork, or eggs produced from animals not raised in accordance with California's animal-confinement regulations, regardless of where those animals were raised. *Id.* § 25990(b).

Amici States file this brief to explain that the Constitution's Commerce Clause prohibits California's attempt to usurp other States' authority to adopt their own animal-husbandry policies. California's regulations are a substantial departure from current practices in most States, including Amici States, and the Commerce Clause does not permit California to upset those practices by setting a single animal-confinement policy for the entire country. Because Amici States have a sovereign interest in preserving their authority to set policy for their own farmers, they file this brief to explain why the court should grant Plaintiff's motion to preliminarily enjoin Proposition 12's sales ban.

Furthermore, some of the Amici States, including Indiana, operate farms that sell meat on the open market. Purdue University, a body corporate and politic and an arm of the State of Indiana, raises swine and sells them into the national supply chain, likely reaching California customers. As such, the State of Indiana is likely to be directly affected by Proposition 12.

## SUMMARY OF ARGUMENT

California's Proposition 12 treads on Congress' exclusive power to regulate interstate commerce and interferes with the Amici States' sovereign interests in regulating agriculture in their respective States in a manner they see fit. By prohibiting the sale of products derived from

CASE NO. 2:19-CV-8569

REQUEST FOR LEAVE TO FILE AND AMICUS BRIEF OF INDIANA, ALABAMA, ARKANSAS, KANSAS, LOUISIANA, MISSOURI, SOUTH CAROLINA, AND UTAH IN SUPPORT OF PLAINTIFF'S REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF – 2

animals not raised in accordance with California animal-confinement standards—including animals raised in other States—Proposition 12 has the practical effect of regulating extraterritorial commerce. Farm owners and operators located outside of California will be forced to either modify their farming operations to comply with California's animal-confinement regulations or exit California's market. This is precisely the type of interstate trade friction that the Commerce Clause was designed to prevent.

Furthermore, Proposition 12's sales ban is a substantial burden on interstate commerce that is excessive in relation to local benefits. The burden imposed by the sales ban will largely fall on out-of-state farm owners and operators, as California is not a significant producer of veal and pork compared to the rest of the United States. California has offered little evidence of a legitimate local interest protected by the sales ban that would outweigh the excessive and substantial burden on interstate commerce.

Because the Proposition 12 sales ban regulates extraterritorial commerce and burdens interstate commerce in violation of the Commerce Clause, the court should grant Plaintiff's motion for injunctive and declaratory relief.

## ARGUMENT

Because the Commerce Clause vests Congress with the exclusive power to regulate *interstate* commerce, *La. Pub. Serv. Comm'n v. Tex. & N.O.R. Co.*, 284 U.S. 125, 130 (1931), it correspondingly limits the power of states "to erect barriers against interstate trade," *Maine v. Taylor*, 477 U.S. 131, 137 (1986). Indeed, the Framers' central concern in including the Commerce Clause in the Constitution was preventing the friction between States caused by the interstate trade barriers prevalent under the Articles of Confederation. *See Hughes v. Oklahoma*, 441 U.S. 322, 325 (1979). "The entire Constitution was 'framed upon the theory that the peoples of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 349 n.12 (1989) (quoting *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 523 (1935). The interstate trade barriers prohibited by the Commerce Clause include state regulations imposed on commerce occurring in *other* States; this prohibition on extraterritorial regulation "reflect[s] the Constitution's special concern

both with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce and with the autonomy of the individual States within their respective spheres." *Id.* at 335–36. And state laws that do not regulate extraterritorial commerce but have the effect of impeding interstate commerce are subject to a balancing test: Do the burdens imposed on interstate commerce by the statute "clearly outweigh the local benefits?" *Rosenblatt v. City of Santa Monica*, No. 17-55879, 2019 WL 4867397 at *10 (9th Cir. October 3, 2019). If so, the statute violates the Commerce Clause. *Id.*

## I. Proposition 12's sales ban attempts to regulate extraterritorial commerce by imposing California's requirements on commercial transactions that occur wholly outside California, including transactions within Amici States

In applying the Commerce Clause's prohibition on extraterritorial regulation, the Supreme Court has explained that a state legislature's power to enact laws is similar to a state court's jurisdiction to hear cases—"[i]n either case, any attempt directly to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 349 n.13 (1989) (internal quotation marks and citation omitted). The Ninth Circuit has specifically held that California cannot use a ban on in-state *sales* as a method to regulate upstream commercial practices (such as production) that California thinks are objectionable. *See Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (reasoning that the "mere fact that some nexus to a state exists will not justify regulation of wholly out-of-state transactions"); *see also Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 582-83 (1986) (holding that a state "may not project its legislation into [other states]" (internal quotation omitted)); *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1322 (9th Cir. 2015) (en banc) (holding that the Commerce Clause did not permit California to regulate the terms and conditions of out-of-state art sales merely on the ground that the seller resided in California). Furthermore, even a regulation that does not explicitly regulate interstate commerce may do so "nonetheless by its practical effect and design." *C&A Carbone v. Town of Clarkstown*, 511 U.S. 383, 394 (1994).

In *Carbone*, for example, the Court held that an ordinance requiring all local solid waste

to be processed at a local transfer station violated the Commerce Clause because it deprived out-of-state competitors of access to a market. *Id.* at 386. Though the ordinance did not regulate extraterritorially on its face, it did so in effect because it barred out-of-state businesses from the market. The town argued that it adopted the ordinance to minimize its own environmental footprint, but the Court held that the town's motivation did not permit it to "attach restrictions to exports or imports in order to control commerce in other States" and thereby "extend the town's police power beyond its jurisdictional bounds." *Id.* at 393.

The Commerce Clause thus precludes "the application of a state statute to commerce that takes places wholly outside of the State's borders, whether or not the commerce has effects within the State," and a "state law that has the practical effect of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause," *Healy*, 491 U.S. at 336, 332 (internal quotation marks and citations omitted). This prohibition on extraterritorial regulation applies "regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id*. at 336. Accordingly, determining whether a state regulation constitutes prohibited extraterritorial regulation requires considering not merely the bare text of the statute but also the law's "practical effect," including "the consequences of the statute itself" and how that statute may "interact with the legitimate regulatory regimes of other States." *Id.*

Here, by regulating the supply chain of pork and veal into California, the sales ban will inevitably have the effect of regulating transactions taking place entirely outside California. Indiana, for example, is the fifth largest pork producer in the United States. *State Rankings by Hogs and Pigs Inventory* (June 14, 2018) https://www.pork.org/facts/stats/structure-and-productivity/state-rankings-by-hogs-and-pigs-inventory/. And the agricultural supply chain leading from Indiana and other States to California typically requires multiple out-of-state transactions, such as farm procurement and production, sale to distributors, and slaughter and packing (followed by sale to California retailers and ultimate sale to consumers).

What is more, sometimes these transactions are undertaken by States themselves. For example, Purdue University—an instrumentality of the State of Indiana—owns and operates farms through the Animal Sciences Research and Education Center (ASREC) that confine

animals, including swine and poultry, in conditions that do not comply with Proposition 12. Purdue then sells livestock to distributors (including Tyson Foods) who in turn sell to retail customers nationwide. *See generally* Brian Ford, *Swine Unit*, Purdue College of Agriculture https://ag.purdue.edu/ansc/ASREC/Pages/SwineUnit.aspx. Purdue's commercial transactions with those wholesalers occur wholly outside California, but may nonetheless be regulated by Proposition 12 unless the wholesalers choose to forego the California market altogether. That same model of interstate regulation will be replicated over and over as to private and public farms in Indiana and other states. Proposition 12 thus requires other States' farmers either to overhaul their manner of pork production to comply with California's regulations or lose access to the enormous California market.

Moreover, Proposition 12 threatens to interfere with "the legitimate regulatory regimes of other states," *Healy*, 491 U.S. at 336, and threatens to subject farmers across the country to conflicting requirements. The vast majority of States have chosen to permit farmers to raise calves, hogs, and hens in accordance with commercial standards and agricultural best practices rather than impose specific animal-confinement requirements. *See generally*, Elizabeth R. Rumley, The National Agricultural Law Center, *States' Farm Animal Confinement Statutes*, https://nationalaglawcenter.org/state-compilations/farm-animal-welfare/. It is easy to imagine farmers getting caught in the crossfire as other States attempt to impose regulations that differ from California's—a problem that will only get worse as other States attempt to impose their own extraterritorial regulations. This would constitute exactly the sort of trade war the Commerce Clause was designed to prevent.

Proposition 12's sales ban parallels the extraterritorial regulation invalidated in *Healy* and *Daniels Sharpsmart*. In *Healy*, Connecticut threatened to bar beer distributors from the State's beer market if they refused to comply with a state law requiring distributors to sell beer *outside* Connecticut at the same price they sold it *in* Connecticut. *See* 491 U.S. at 326–27. And in *Daniels Sharpsmart*, California attempted to require a medical-waste transport and disposal company to dispose of all biohazardous medical waste originating in California by incineration, even if the disposal occurred in another State, and even if the other State permitted an alternative method;

CASE NO. 2:19-CV-8569

REQUEST FOR LEAVE TO FILE AND AMICUS BRIEF OF INDIANA, ALABAMA, ARKANSAS, KANSAS, LOUISIANA, MISSOURI, SOUTH CAROLINA, AND UTAH IN SUPPORT OF PLAINTIFF'S REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF – 6

the company's only options were either to comply or exit the California market. *See* 889 F.3d at 612–13. Connecticut's pricing law, California's waste-disposal law, and Proposition 12 all violate the Commerce Clause because they have "the undeniable effect of controlling commercial activity occurring wholly outside the boundary of the state," and have the effect of creating "just the kind of competing and interlocking local economic regulation that the Commerce Clause was meant to preclude." *Healy,* 491 U.S. at 337. *See also Daniels Sharpsmart*, 889 F.3d at 616 (noting that California had "attempted to regulate waste treatment everywhere in the country" and that California could effectively require the company "run afoul of other states' regulation of medical waste disposal within their jurisdictions").

Proposition 12's sales ban will require farmers in other states to adjust their animal-husbandry practices as the price for maintaining access to California's market and will undermine other States' policies of nonregulation in this area. Proposition 12 accordingly violates the Commerce Clause and should be enjoined.

## II. California's imposition of policy choices on Amici States conducting transactions in and outside of California substantially and excessively burdens interstate commerce in violation of the Commerce Clause

Proposition 12's sales ban violates the Commerce Clause because it regulates extraterritorial commerce. But it also violates the Commerce Clause for a separate, independently sufficient reason: It substantially burdens interstate commerce in excess of any local benefits.

The Commerce Clause does not permit States to adopt a law that "imposes a burden on interstate commerce that is clearly excessive in relation to its local benefits. *Rocky Mt. Farmers Union v. Corey*, 730 F.3d 1070, 1078 (9th Cir. 2013) (internal quotation marks and citation omitted). And a law that impacts the flow of products across state borders and interferes with the "natural functioning of the interstate market" significantly burdens interstate commerce. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127 (1978); *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 805–06 (1976); *Nat'l Ass's of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1154 (9th Cir. 2012) (describing the test for whether a regulation burdens interstate commerce as turning on a "change in the flow of goods into the state, not on profits").

Notably, Massachusetts, Maine, Michigan, and Rhode Island are the only States that have enacted animal-confinement laws that satisfy California's current rules (which require farmers to refrain from "confining a covered animal in a manner that prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," Cal. Health and Safety Code § 25991(e)(1)). *See* Mass. Gen. Laws ch. S51A, §§ 1-5; Me. State. tit. 7, § 4020(2); Mich. Comp. Laws § 287.746(2); 4 R.I. Gen. Laws. § 4-1.1-3. Indeed, the rules Proposition 12's sales ban applies to farmers nationwide are set to change after December 31, 2019 for calf raised for veal ("less than 43 square feet of usable floorspace per calf) and after December 31, 2021 for breeding pigs (less than 24 square feet of usable floorspace per pig); few if any States currently impose such stringent requirements. *See* Cal. Health and Safety Code § 25991(e)(2)–(3); *compare to* Rumley, *supra* I.

The burden of Proposition 12's requirements will thus fall disproportionately on out-of-state producers. The effect of the sales ban will require farm owners and operators in all States to either overhaul their currently legitimate agricultural production methods or withdraw from California's market. Because California does not produce milk-fed veal, *see* ECF 15-3 at 5, and accounts for only a small portion of hog production in the United States (*see* USDA, National Agricultural Statistics Service, Livestock Slaughter at 44–45 (Apr. 2019) https://downloads.usda.library.cornell.edu/usda-esmis/files/r207tp32d/8336h934w/hq37vx004/lsslan19.pdf), mass withdrawal from California's market would inevitably change the flow of goods into the state and interfere with the natural functioning of the pork and veal market.

Furthermore, California has failed to provide evidence of a legitimate local interest, much less provided evidence that it has no other means to promote this interest or that this interest outweighs the burden on interstate commerce. Proposition 12 provides that its purpose is "to prevent animal cruelty" and reduce "the risk of foodborne illness." 2018 Cal. Legis. Serv. Prop. 12 (West). Of course, because California enacted the sales ban through a ballot proposition, no legislative judgments support the assertion that the sales ban is necessary to further either of these purposes. *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1167–68 (S.D. Cal. 2019). And in any case, California does not have a legitimate interest in preventing what it views as animal cruelty

occurring in *other* States, because determining whether a state law runs afoul of the Commerce Clause requires weighing the law's adverse effects on interstate commerce against its "putative *local* benefits." *See Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1014 (9th Cir. 1994) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)) (emphasis added). Nor can the interest in preventing foodborne illness support Proposition 12, as California has failed to provide any evidence of a link between preventing foodborne illness from pork and veal and its animal-confinement regulations. *See* ECF 15-2 at 3. After all, veal and pork produced in other States is "already subject to a comprehensive federal meat inspection program that is highly effective in preventing foodborne illness." ECF 15-2 at 3.

The interests purportedly served by Proposition 12 are thus illusory. Given the lack of evidence of a legitimate local interest that would outweigh the clearly significant burden on interstate commerce, this court should enjoin Proposition 12's sales ban.

## CONCLUSION

For the foregoing reasons, this court should grant the North American Meat Institute's motion for injunctive and declaratory relief.

Dated: November 4, 2019

/s Edward S. Renwick

THOMAS M. FISHER
SOLICITOR GENERAL
KIAN J. HUDSON
DEPUTY SOLICITOR GENERAL
JULIA C. PAYNE
DEPUTY ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
302 W. Washington Street, IGCS 5th Floor
Indianapolis, IN 46204-2770
Email: Tom.Fisher@atg.in.gov

EDWARD S. RENWICK, SBN 29325
erenwick@hanmor.com
HANNA & MORTON LLP
444 S. Flower St., Suite 2530
Los Angeles, CA 90071
Telephone: (213) 628-7131
Facsimile: (213) 623-3379

*Attorneys for Amici Curiae State of Indiana et al.*

## ADDITIONAL COUNSEL
*Counsel for Amici States*

| | |
|---|---|
| STEVE MARSHALL<br>Attorney General<br>State of Alabama | ERIC SCHMITT<br>Attorney General<br>State of Missouri |
| LESLIE RUTLEDGE<br>Attorney General<br>State of Arkansas | MIKE HUNTER<br>Attorney General<br>State of Oklahoma |
| DEREK SCHMIDT<br>Attorney General<br>State of Kansas | ALAN WILSON<br>Attorney General<br>State of South Carolina |
| JEFF LANDRY<br>Attorney General<br>State of Louisiana | SEAN D. REYES<br>Attorney General<br>State of Utah |