XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
R. MATTHEW WISE
Deputy Attorney General
State Bar No. 238485
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-6046
  Fax: (916) 324-8835
  E-mail: Matthew.Wise@doj.ca.gov
*Attorneys for Defendants Attorney General Xavier*
*Becerra, Secretary Karen Ross, and Director Sonia*
*Angell*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NORTH AMERICAN MEAT INSTITUTE,**<br><br>Plaintiff,<br><br>**v.**<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of California; KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture; and SUSAN FANELLI, in her official capacity as Acting Director of the California Department of Public Health,**<br><br>Defendants. | 2:19-cv-08569 CAS (FFMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>Date: February 24, 2020<br>Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Christina A. Snyder<br>Trial Date: None set<br>Action Filed: October 4, 2019 |

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................... 1

Background ....................................................................................................... 2

    I.    Proposition 2 ..................................................................................... 2

    II.   Assembly Bill 1437 .......................................................................... 2

    III.  Proposition 12 ................................................................................... 3

    IV.  This Lawsuit ...................................................................................... 4

Legal Standard ................................................................................................. 5

Argument .......................................................................................................... 5

    I.    Proposition 12 Does Not Discriminate Against Out-of-State
           Veal and Pork Producers .................................................................. 7

    II.   Proposition 12 Does Not Regulate Extraterritorially ...................... 12

    III.  Proposition 12 Does Not Substantially Burden Interstate
           Commerce—and Even If It Did, Such Burden Would Not
           Clearly Exceed the Benefits to California ....................................... 16

    IV.  The Complaint Should Be Dismissed Without Leave to Amend ....... 17

Conclusion ..................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*
  903 F.3d 903 (9th Cir. 2018) ....................................................6, 11, 13, 15

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...........................................................................5

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
  729 F.3d 937 (9th Cir. 2013) ................................................................*passim*

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*
  459 U.S. 519 (1983) ...........................................................................5

*Baldwin v. G.A.F. Seelig, Inc.*
  294 U.S. at 519 (1935) .......................................................................12

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ...........................................................................5

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*
  476 U.S. 573 (1986) ....................................................................6, 12, 16

*Burlington N. R.R. Co. v. Dep't of Pub. Serv. Regulation*
  763 F.2d 1106 (9th Cir. 1985) ...............................................................16

*C & A Carbone, Inc. v. Town of Clarkstown*
  511 U.S. 383 (1994) ...................................................................10, 12, 13

*Carrico v. City & Cnty. of San Francisco*
  656 F.3d 1002 (9th Cir. 2011) ...............................................................17

*Chinatown Neighborhood Ass'n v. Harris*
  794 F.3d 1136 (9th. Cir. 2015) ........................................................13, 16, 17

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*
  508 U.S. 520 (1993) ...........................................................................17

*City of Los Angeles v. Cnty. of Kern*
  462 F. Supp. 2d 1105 (C.D. Cal. 2006) ......................................................8

**TABLE OF AUTHORITIES**
(continued)

Page

*Corrie v. Caterpillar*
    503 F.3d 974 (9th Cir. 2007) ................................................................... 5

*Daniels Sharpsmart, Inc. v. Smith*
    889 F.3d 608 (9th Cir. 2018) ................................................................. 15

*Dep't of Revenue of Ky. v. Davis*
    553 U.S. 328 (2008) .......................................................................... 5, 6

*Healy v. Beer Inst.*
    491 U.S. 324 (1989) ........................................................................ 5, 12

*Hunt v. Wash. State Apple Advert. Comm'n*
    432 U.S. 333 (1977) ...................................................................... 10, 11

*Int'l Franchise Ass'n, Inc. v. City of Seattle*
    803 F.3d 389 (9th Cir. 2015) ................................................................... 8

*Legato Vapors, LLC v. Cook*
    847 F.3d 825 (7th Cir. 2017) ................................................................. 14

*Minnesota v. Clover Leaf Creamery Co.*
    449 U.S. 456 (1981) ............................................................................ 10

*Missouri ex. rel. Koster v. Harris*
    847 F.3d 646 (9th Cir. 2017) .............................................................. 3, 9

*Missouri v. California*
    No. 22O148 (U.S. Jan. 7, 2019) .............................................................. 3

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
    567 F.3d 521 (9th Cir. 2009) .............................................................. 6, 12

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012) ......................................................*passim*

*NCAA v. Miller*
    10 F.3d 633 (9th Cir. 1993) ................................................................. 15

*Or. Waste Sys., Inc. v. Dep't of Envt'l Quality of State of Oregon*
    511 U.S. 93 (1994) .......................................................................... 7, 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Pac. Nw. Venison Producers v. Smitch*
20 F.3d 1008 (9th Cir. 1994) ................................................................. 9

*Paulson v. CNF, Inc.*
559 F.3d 1061 (9th Cir. 2009) .............................................................. 5

*Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*
768 F.3d 1037 (9th Cir. 2014) ............................................................... 9

*Pharm. Research & Mfrs. of Am. v. Walsh*
538 U.S. 644 (2003) ................................................................. 13, 14

*Pike v. Bruce Church, Inc.*
397 U.S. 137 (1970) ........................................................ 6, 12, 16, 17

*Rocky Mountain Farmers Union v. Corey*
730 F.3d 1070 (9th Cir. 2013) ............................................. 7, 11, 13, 15

*Sam Francis Foundation v. Christies*
784 F.3d 1320 (9th Cir. 2015) (en banc) .................................... 14, 15

*United States v. Stevens*
559 U.S. 460 (2010) ............................................................... 17

*W. Lynn Creamery, Inc. v. Healy*
512 U.S. 186 (1994) ............................................................. 8, 9

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

Health & Safety Code
    § 25990 ........................................................................................2
    § 25990(a) ....................................................................................3
    § 25990(b)(1) ...............................................................................4
    § 25990(b)(2) ...............................................................................4
    §§ 25990 through 25993 ..............................................................3
    §§ 25990 through 25994 ..............................................................2
    § 25991(b) ....................................................................................2
    § 25991(e)(1) ..............................................................................11
    § 25992 ........................................................................................3
    § 25993(b) ....................................................................................4
    § 25993.1 .....................................................................................3
    § 25995 ........................................................................................8
    § 25995(a) ....................................................................................3
    §§ 25995 through 25997.1 ...........................................................2
    § 25996 ........................................................................................2

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Article I, § 8, cl. 3.........................................5

**COURT RULES**

Federal Rules of Civil Procedure, Rule 12(b)(6)......................................5

**OTHER AUTHORITIES**

Assembly Bill No. 376 (2011-2012) .........................................................1

Assembly Bill No. 1437 (2009-2010) ...................................................1, 2

California Statutes 2010, c. 51, § 1...........................................................2

Senate Bill No. 1520 (2003-2004)............................................................1

**INTRODUCTION**

Last fall, California voters approved Proposition 12 "to prevent animal cruelty by phasing out extreme methods of farm animal confinement." Prop. 12, § 2, as approved by voters, Gen. Elec. (Nov. 6, 2018). This initiative statute requires California farmers to house veal calves, breeding pigs, and egg-laying hens in confinement systems that comply with specific standards for freedom of movement, minimum floorspace, and cage-free design. It also prohibits the sale in California of meat from an animal that is not housed in compliance with these standards.[1]

Plaintiff North American Meat Institute, a trade association representing meat packers and processors, seeks to enjoin Defendants[2] from enforcing Proposition 12 on grounds that it violates the dormant Commerce Clause. But for the same reasons this Court concluded that Plaintiff's preliminary injunction motion "fails to raise any serious questions on the merits," ECF No. 43 at 8, the complaint fails to state a claim upon which relief may be granted. The Ninth Circuit has repeatedly held—consistent with Supreme Court precedent—that the uniform regulation of in-state sales is constitutional, even if such regulation has upstream effects. *See, e.g.*, *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013). Here, as this Court has already determined in the preliminary injunction context, Proposition 12 regulates evenhandedly, regardless of the origin of the product, and only applies to sales within California. ECF No. 43 at 25 (Proposition

---

[1] Proposition 12 is the latest in a series of California laws that have been enacted in recent years to prevent animal cruelty and promote food safety. *See, e.g.*, Proposition 2 (2008) (requiring California farmers to house veal calves, pregnant pigs, and egg-laying hens in confinement systems that comply with specific standards for freedom of movement); Assembly Bill No. 1437 (2009-2010) (prohibiting the sale in California of eggs produced by egg-laying hens that were not confined in compliance with Proposition 2's animal care standards); Senate Bill No. 1520 (2003-2004) (prohibiting the sale in California of foie gras produced by force feeding a bird); Assembly Bill No. 376 (2011-2012) (prohibiting the sale in California of shark fins obtained unlawfully).

[2] Defendants are California Attorney General Xavier Becerra, Department of Food and Agriculture Secretary Karen Ross, and Department of Public Health Director Sonia Angell. Susan Fanelli is no longer acting director of the California Department of Public Health.

12's standard for in-state sale of veal and pork "is directed to *how* meat products are produced, not *where*," and "applies evenly no matter where production takes place"). California has an established interest in preventing animal cruelty, and the law permits California to exercise its police powers over its own local markets. Plaintiff's complaint should be dismissed without leave to amend.

## BACKGROUND

### I.   PROPOSITION 2

In the November 2008 election, California voters enacted Proposition 2, the Prevention of Farm Animal Cruelty Act, "to prohibit the cruel confinement of farm animals in a manner that does not allow them to turn around freely, lie down, stand up, and fully extend their limbs." Prop. 2, § 2, as approved by voters, Gen. Elec. (Nov. 4, 2008). Proposition 2 added sections 25990 through 25994 to the California Health and Safety Code, effective January 1, 2015.[3] *Id.* § 5. These provisions prohibited California farmers from "tether[ing] or confin[ing]" pregnant pigs, calves raised for veal, or egg-laying hens "on a farm, for all or the majority of any day, in a manner that prevents such animal from: (a) Lying down, standing up, and fully extending his or her limbs; and (b) Turning around freely." §§ 25990, 25991(b).

### II.   ASSEMBLY BILL 1437

In 2010, the California Legislature enacted Assembly Bill No. 1437 (AB 1437), adding sections 25995 through 25997.1 to the California Health and Safety Code. Cal. Stats. 2010, c. 51, § 1. Beginning on January 1, 2015, AB 1437 prohibited the sale in California of eggs produced by egg-laying hens that were not confined in compliance with Proposition 2's animal care standards. § 25996. Among the findings cited in support of this law is a Pew Commission on Industrial Farm Production report concluding that "food animals that are treated well and

---

[3] All statutory references are to the California Health and Safety Code, unless otherwise noted.

provided with at least minimum accommodation of their natural behaviors and physical needs are healthier and safer for human consumption." § 25995(a).  A challenge to AB 1437 brought by six states under the dormant Commerce Clause was dismissed for lack of standing.  *Missouri ex. rel. Koster v. Harris*, 847 F.3d 646, 650 (9th Cir. 2017).  A larger group of states unsuccessfully sought to initiate an original jurisdiction action against California in the Supreme Court.  *Missouri v. California*, No. 22O148 (U.S. Jan. 7, 2019).

### III.  PROPOSITION 12

In the November 2018 election, California voters enacted Proposition 12, the Farm Animal Confinement Initiative, "to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California."  Prop. 12, § 2, as approved by voters, Gen. Elec. (Nov. 6, 2018).  Proposition 12 amends sections 25990 through 25993 of the California Health and Safety Code and adds section 25993.1.  *Id.* §§ 3-7.

Proposition 12 prohibits "[a] farm owner or operator within the state" from confining a covered animal in a "cruel manner"—specifically, as relevant here, (1) confining a calf raised for veal, a breeding pig, or an egg-laying hen "in a manner that prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," (2) after December 31, 2019, confining a calf raised for veal with less than 43 square feet of usable floorspace, and (3) after December 31, 2021, confining a breeding pig with less than 24 square feet of usable floorspace.  §§ 25990(a); 25991(e)(1)-(3).[4]  Proposition 12 also prohibits the sale in California of "(1) Whole veal meat that the business owner or operator knows or

---

[4] Section 25992 includes exceptions to these confinement requirements for medical research, veterinary care, transportation, exhibitions, slaughter, periods before a breeding pig is expected to give birth or when a breeding pig is nursing, and temporary periods for animal husbandry.

should know is the meat of a covered animal who was confined in a cruel manner," and "(2) Whole pork meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of immediate offspring of a covered animal who was confined in a cruel manner." § 25990(b)(1), (b)(2). Proposition 12 maintains the same penalties as Proposition 2 and AB 1437; any person who violates these provisions is guilty of a misdemeanor, and upon conviction is subject to a fine not greater than $1,000, or imprisonment in the county jail for 180 days or less, or both. § 25993(b).

## IV. THIS LAWSUIT

On October 4, 2019, Plaintiff filed this lawsuit, as well as a preliminary injunction motion, challenging Proposition 12's standards for veal and pork products that are sold in California. Plaintiff brings three claims under the dormant Commerce Clause: that Proposition 12 (1) "discriminat[es] against out-of-state producers, distributers and sellers of pork and veal," Compl. ¶ 45, (2) "violates the constitutional prohibition against extraterritorial state regulation," *id.* ¶ 66, and (3) "impos[es] unreasonable burdens on interstate and foreign commerce that are clearly excessive when measured against any legitimate local benefits," *id.* ¶ 78. Plaintiff seeks a declaration "that Proposition 12's sales ban, as applied to veal and pork from outside California, violates the United States Constitution and is unenforceable," and a preliminary and permanent injunction enjoining Defendants from enforcing this prohibition. *Id.* at 14. On October 29, 2019, a number of animal welfare organizations—the Humane Society of the United States, the Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming USA, and Compassion Over Killing (collectively, Intervenors)—filed a motion to intervene as defendants. On November 22, 2019, the Court issued a final ruling granting the Intervenors' motion and denying Plaintiff's preliminary injunction motion.

**LEGAL STANDARD**

A motion to dismiss may be brought to challenge the sufficiency of the allegations in the complaint. Fed. R. Civ. P. 12(b)(6). The complaint must allege facts establishing "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In evaluating a 12(b)(6) motion, the court accepts the factual allegations as true, and construes them in the light most favorable to the plaintiff. *Corrie v. Caterpillar*, 503 F.3d 974, 977 (9th Cir. 2007). The court is not, however, required to assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Paulson v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). Likewise, a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that defendants have violated . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**ARGUMENT**

Plaintiff cannot state a viable claim that Proposition 12 violates the dormant Commerce Clause. The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const., art. I, § 8, cl. 3. It includes an implied limitation on the states' regulatory authority often referred to as the negative or dormant Commerce Clause. *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989). This doctrine's central concern is "economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008). At the same time, courts balance this check on

protectionism against the Framers' regard for "federalism favoring a degree of local autonomy." *Id.* at 338.

The Supreme Court has adopted a two-tiered approach to determine whether a law violates the dormant Commerce Clause. *Ass'n des Eleveurs*, 729 F.3d at 948 (citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986)).  Courts first ask whether the law "regulates or discriminates against interstate commerce, or [] its effect is to favor in-state economic interests . . . ." *Id.* (quoting *Brown-Forman*, 476 U.S. at 579).  If the law discriminates against out-of-state entities, it is subject to a form of strict scrutiny. *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 524 (9th Cir. 2009) (citing *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392 (1994)).  Similarly, a statute that directly regulates interstate commerce is usually struck down. *Brown-Forman*, 476 U.S. at 579.

On the other hand, a nondiscriminatory law that does not regulate extraterritorially "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*, 903 F.3d 903, 916 (9th Cir. 2018) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).  Before engaging in this balancing, which derives from *Pike v. Bruce Church, Inc.*, courts must assess a "critical requirement for proving a violation of the dormant Commerce Clause"—whether there is a "*substantial burden* on *interstate commerce*." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (emphasis in original). In the few dormant Commerce Clause cases invalidating nondiscriminatory statutes that imposed other substantial burdens on interstate commerce, such burdens generally arose from inconsistent regulation of activities that require a uniform system of regulation. *Id.* at 1148.  But where there is no substantial burden on interstate commerce, *Pike* balancing does not apply. *Id.* at 1156-57.

Plaintiff claims that Proposition 12's standards for veal and pork products that are sold in California violate the dormant Commerce Clause by discriminating against out-of-state veal and pork producers, regulating such producers extraterritorially, and unduly burdening interstate commerce.  But Proposition 12 is constitutional because it applies uniformly to all veal and pork sales in California— and only to sales in California.  Plaintiff has not stated a cognizable claim.

## I.   PROPOSITION 12 DOES NOT DISCRIMINATE AGAINST OUT-OF-STATE VEAL AND PORK PRODUCERS

Proposition 12 does not discriminate against Plaintiff's members—or any out-of-state veal and pork producers.  Discrimination under the dormant Commerce Clause "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  *Or. Waste Sys., Inc. v. Dep't of Envt'l Quality of State of Oregon*, 511 U.S. 93, 99 (1994).  A law is unconstitutional if it "discriminates against out-of-state entities on its face, in its purpose, or in its practical effect . . . unless it 'serves a legitimate local purpose, and this purpose could not be served as well by available nondiscriminatory means.'" *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting *Maine v. Taylor*, 477 U.S. 131, 138 (1986)).  Plaintiff essentially concedes, as it must, that Proposition 12 is facially neutral.  Compl. ¶ 46.  The burden thus lies with Plaintiff to "establish[] that [the] statute has a discriminatory purpose or effect under the Commerce Clause."  *Rocky Mountain*, 730 F.3d at 1097 (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979).

Proposition 12's plain language establishes its nondiscriminatory intent. Proposition 12 has two purposes:  "to prevent animal cruelty" and to protect "the health and safety of California consumers" from "the risk of foodborne illness." Prop. 12, § 2, as approved by voters, Gen. Elec. (Nov. 6, 2018).  These are unquestionably legitimate and nondiscriminatory purposes.  Neither suggests any favoritism for in-state veal and pork producers over Plaintiff's members.

Yet Plaintiff alleges that Proposition 12 has a discriminatory purpose because a decade-old legislative analysis suggests that AB 1437 was intended in part "to level the playing field so that in-state producers [of shelled eggs] [we]re not disadvantaged."  Compl. ¶ 22 (quoting Cal. Assem. Comm. on Agric., Analysis of AB 1437, at 1 (May 13, 2009)).  As this Court observed in denying Plaintiff's motion for preliminary injunction, this argument is unpersuasive because it ignores "the only rationale for [AB 1437] articulated in the enacted legislation," ECF No. 43 at 12—to protect the welfare of egg-laying hens and to ensure public health and safety through the prevention of salmonella.  § 25995.  Even if this argument had merit, AB 1437 only addressed the in-state sale of shelled eggs, not the in-state sale of veal or pork at issue here.  Plaintiff's inference that AB 1437's legislative history provides binding authority to interpret Proposition 12 finds no support in the law. Proposition 12 must be judged on its own merits.

Having relied entirely on AB 1437's legislative history, Plaintiff fails to cite anything in Proposition 12's "[statutory] language promoting local industry or seeking to level the playing field," *see Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 401 (9th Cir. 2015), and thus has not plausibly alleged that Proposition 12 has a discriminatory purpose.  *Compare Int'l Franchise Ass'n*, 803 F.3d at 403 (upholding determination that city council was not motivated by intent to discriminate against out-of-state firms where "ordinance lack[ed] a stated discriminatory purpose"), *with W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 194 (1994) ("avowed purpose" of Massachusetts pricing order, which was "effectively imposed only on out-of-state products," was "to enable higher cost Massachusetts dairy farmers to compete with lower cost dairy farmers in other States").  Plaintiff likewise fails to bring any allegations about "the nature of the initiative campaign" for Proposition 12 that suggest that "the intent of the drafters and voters in enacting it" was discriminatory.  *See City of Los Angeles v. Cnty. of Kern*, 462 F. Supp. 2d

1   1105, 1114 (C.D. Cal. 2006) (citing *Washington v. Seattle Sch. Dist. No. 1*, 458

2   U.S. 457, 471 (1982)).

3       Nor does Proposition 12 have a discriminatory effect.  Plaintiff alleges that

4   Proposition 12 "operates as an impermissible protectionist trade barrier, blocking

5   the flow of goods in interstate commerce unless out-of-state producers comply with

6   California's regulations."  Compl. ¶ 49.  But treating out-of-state producers the

7   same as in-state producers—as Proposition 12 does—is not discriminatory.  *Ass'n*

8   *des Eleveurs*, 729 F.3d at 948 ("statute that 'treats all private companies exactly the

9   same' does not discriminate against interstate commerce") (quoting *United Haulers*

10  *Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342

11  (2007)); *Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*, 768 F.3d 1037,

12  1042 (9th Cir. 2014) ("Even if one of the manufacturers represented by Plaintiffs

13  were to close all of its production facilities, open a single production facility in

14  Alameda County, and limit the sale of its products to intra-county commerce, the

15  Ordinance would still apply to that manufacturer.")  This is true "even when only

16  out-of-state businesses are burdened because there are no comparable in-state

17  businesses."  *Ass'n des Eleveurs*, 729 F.3d at 948; *see also Pac. Nw. Venison*

18  *Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994) ("An import ban that

19  simply effectuates a complete ban on commerce in certain items is not

20  discriminatory, as long as the ban on commerce does not make distinctions based

21  on the origin of the items.").  In this sense, Proposition 12 is no different than the

22  statute in *Association des Eleveurs* that prohibited "the sale of both intrastate and

23  interstate products that are the result of force feeding a bird."  *Ass'n des Eleveurs*,

24  729 F.3d at 948 (concluding that statute was nondiscriminatory, and affirming

25  district court's denial of motion for preliminary injunction); *see also Missouri ex*

26  *rel. Koster*, 847 F.3d at 655 (citing *Ass'n des Eleveurs* in support of this principle).

27      To be sure, the Supreme Court has struck down discriminatory laws that have

28  attempted to insulate in-state commerce from out-of-state competition.  *See, e.g.*, *W.*

1    *Lynn Creamery*, 512 U.S. at 194 (invalidating law that was "effectively a tax"

2    imposed only on milk produced out-of-state); *Carbone,* 511 U.S. at 387

3    (invalidating law that required a recycler to dispose of non-recyclable waste at a

4    particular municipal facility, depriving out-of-state competitors "of access to a local

5    market"). But Proposition 12 has no such protectionist purpose or effect. Like

6    countless other product standards, Proposition 12 applies evenhandedly to all

7    regulated products sold in-state, regardless of the origin of the product. *See, e.g.*,

8    *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471-72 (1981) (rejecting

9    argument that Minnesota statute was protectionist where it "prohibit[ed] all milk

10   retailers from selling their products in plastic, nonreturnable milk containers,

11   without regard to whether the milk, the containers, or the sellers [we]re from

12   outside the State"). The dormant Commerce Clause forbids laws that privilege in-

13   state entities at the expense of out-of-state competitors, not laws that are neutral.

14   *E.g.*, *Or. Waste*, 511 U.S. at 99.

15       Plaintiff also suggests that Proposition 12 "neutralizes the cost advantage out-

16   of-state producers would have if they could sell their products in California without

17   complying with the confinement requirements that California imposes on its own

18   producers." Compl. ¶ 49. But Plaintiff does not allege that Proposition 12 "strip[s]

19   away" any "competitive and economic advantages *it has earned for itself*." *Hunt v.*

20   *Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 351 (1977) (emphasis added).

21   In *Hunt*, for example, the Supreme Court struck down a North Carolina law that

22   required closed containers of apples sold, offered for sale, or shipped into the state

23   to bear the U.S. grade. *Id.* at 335. Washington apple growers and dealers had

24   challenged the law for prohibiting them from marketing their apples under

25   Washington's equal or superior grades, which "ha[d] gained nationwide acceptance

26   in the apple trade" as a result of the plaintiffs' substantial investment. *Id.* at 351.

27   Plaintiff, in contrast, has not alleged that its producers employ anything other than a

28   "standard production method, available to any meat processor in any state that

allows it, to concentrate livestock in its facilities at certain densities." ECF No. 43 at 15. Whereas the North Carolina law had the discriminatory effect "of stripping away from the Washington apple industry the competitive and economic advantages *it ha[d] earned for itself* through its expensive inspection and grading system," *Hunt*, 432 U.S. at 351 (emphasis added), Proposition 12 merely favors one standard "over others with more harmful effects." *See Am. Fuel*, 903 F.3d at 915 (distinguishing *Hunt* because plaintiffs could not point to any advantage they had earned); *Rocky Mountain*, 730 F.3d at 1092 (same).

Plaintiff asserts that Proposition 12 may discriminate against its members in two other respects. First, Plaintiff alleges that one aspect of Proposition 12—section 25991(e)(1)'s prohibition on "confinement that prevents an animal from 'turning around freely'"—disadvantages out-of-state producers who choose to sell their products in California because in-state producers were given six years to come into compliance with this standard when it was first introduced in Proposition 2. Compl. ¶ 52. Yet, as Plaintiff concedes, *id.* ¶ 49, Proposition 12 merely applies the same standards to all product sales in California—nothing more. Plaintiff fails to cite any authority to support the position that a law is discriminatory if it does not provide out-of-state entities "lead time" to come into compliance with requirements that apply equally to in-state entities. The Constitution does not require a state to give preferential treatment to out-of-state entities that choose to sell their products within that state, or to exempt those entities from the same neutral rules that apply to in-state sellers. In any event, Plaintiff has not plausibly alleged that its members have been or would be injured by implementing the turnaround standard without "lead time." *Id.* ¶ 52.

Second, Plaintiff alleges that Proposition 12 may give California's "bob" veal producers a competitive advantage over out-of-state milk-fed veal producers because, Plaintiff speculates, Proposition 12's confinement restrictions may not apply to calves culled from California dairy farms for slaughter. Compl. ¶ 53. But

Case 2:19-cv-08569-CAS-FFM   Document 44-1   Filed 11/27/19   Page 18 of 25   Page ID #:560

1   Plaintiff has not alleged, and thus cannot establish, that bob veal producers and
2   milk-fed veal producers are similarly situated groups.  *Brown*, 567 F.3d at 527
3   ("competing in the same market is not sufficient to conclude that entities are
4   similarly situated").  Just as Proposition 12 makes no distinction between in-state or
5   out-of-state producers that are raising calves for veal, it treats all bob veal producers
6   the same.  In short, Proposition 12 does not confer an advantage to in-state
7   producers that is not equally available to out-of-state producers.

8        Because Proposition 12 is not discriminatory, the Court need not determine
9   whether it survives strict scrutiny.  *See Brown*, 567 F.3d at 528.  At most,
10  Proposition 12, like other nondiscriminatory laws, would be subject to *Pike*
11  balancing—but only if, as further discussed below, *see* Argument III, the Court first
12  determines that it substantially burdens interstate commerce.  *Harris*, 682 F.3d at
13  1156-57.  Plaintiff's first claim should be dismissed.

14  **II.   PROPOSITION 12 DOES NOT REGULATE EXTRATERRITORIALLY**

15       Proposition 12 is not an extraterritorial regulation.  A state law regulates
16  extraterritorially only where it directly controls "commerce occurring wholly
17  outside the boundaries of a State," either by its terms or in "practical effect."
18  *Healy*, 491 U.S. at 336.  The Supreme Court has rarely struck down a statute as
19  extraterritorial.  *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 519 (1935)
20  (invalidating New York milk-pricing statute that regulated prices paid for milk
21  purchased in other states); *Healy*, 491 U.S. at 338 (invalidating Connecticut price-
22  affirmation statute that regulated price of beer sold in Massachusetts); *Brown-*
23  *Forman*, 476 U.S. at 575-76, 582-83 (invalidating New York price-affirmation law
24  that had effect of requiring distillers to seek approval from state regulators for
25  prices charged out-of-state).  Because Proposition 12 regulates only in-state
26  commerce, it does not exceed any constitutional limits.[5]

27       _____

28       [5] *Carbone* does not suggest otherwise.  The Supreme Court's observation that
a state "may not attach restrictions to exports or imports in order to control

12

Indeed, even when a state law "has significant extraterritorial effects, it passes Commerce Clause muster when [] those effects result from the regulation of in-state conduct." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th. Cir. 2015); *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003) (rejecting extraterritoriality challenge to Maine drug-rebate program that subjected certain out-of-state drug manufacturers to a "prior authorization" procedure, but did not "regulate the price of any out-of-state transaction, either by its express terms or by its inevitable effect"). Here, Proposition 12 is entirely indifferent to the sale of veal and pork outside of California. The Ninth Circuit has consistently rejected challenges, like this one, to claims that a regulation of in-state sales impermissibly extends beyond state borders. *Ass'n des Eleveurs*, 729 F.3d at 949-951 (rejecting extraterritoriality challenge in preliminary injunction motion to California law prohibiting the in-state sale of certain products produced by force feeding a bird); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1145-46 (rejecting extraterritoriality challenge to California law prohibiting the in-state sale of shark fins obtained unlawfully); *Rocky Mountain*, 730 F.3d at 1101-04 (rejecting extraterritoriality challenge to California law setting carbon intensity standard for in-state sale of fuel); *Am. Fuel*, 903 F.3d at 916-17 (rejecting extraterritoriality challenge to Oregon law setting carbon intensity standard for in-state sale of fuel). That private producers in other states may have to alter their production practices with respect to veal and pork they wish to sell in California does not mean that Proposition 12 regulates extraterritorially. *See Rocky Mountain*, 730 F.3d at 1103 (contrasting permissible regulations of in-state transactions that produce out-of-state effects with

commerce in other states," *Carbone*, 511 U.S. at 393, addresses economic protectionism, not extraterritoriality. ECF No. 43 at 22 n.11 ("[T]he Supreme Court struck down the law in *Carbone* on grounds that it had a *discriminatory purpose and effect*, not that it violated the extraterritoriality doctrine.) The ordinance in *Carbone* prohibited a recycler from disposing of non-recyclable waste anywhere other than at a particular municipal facility. *Id.* at 387. *Carbone* does not purport to forbid states from exercising their well-established authority to regulate products sold in their own markets.

impermissible regulations of wholly out-of-state transactions) (citing *Walsh*, 538 U.S. at 669).

The notable Ninth Circuit decisions striking down extraterritorial laws are distinguishable.[6]  In *Sam Francis Foundation v. Christies*, 784 F.3d 1320 (9th Cir. 2015) (en banc), the court invalidated the portion of a California law that required art sellers who reside in-state to pay artists royalties from the out-of-state resales of fine art.  *Id.* at 1323.  The court observed that the reason the law was unconstitutional was that it facially regulated transactions occurring entirely out-of-state:

> For example, if a California resident has a part-time apartment in New York, buys a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota artist—even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California. We easily conclude that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.

*Id.*  The court specifically distinguished that type of regulation from laws, like Proposition 12, that regulate in-state conduct (namely, sales) and may have out-of-

_____

[6] So too are recent decisions from other circuits.  Take *Legato Vapors, LLC v. Cook*, 847 F.3d 825 (7th Cir. 2017), where the court invalidated an Indiana law that banned the in-state sale of vaping products from out-of-state manufacturers that did not comply with a laundry list of "detailed" operational requirements.  *Id.* at 827.  Among the conditions that the law imposed were "astoundingly specific provisions for the qualifications of the security firm that the manufacturer must commit to hire for at least five years," directives mandating the use of "specific cleansers in specific sinks" to wash equipment, and even a ban on certain commercial transactions *between out-of-state entities*.  *Id.* at 832-36.  These requirements applied directly to out-of-state manufacturers if any of their products were sold in Indiana, *id.* at 830-32, creating an "obvious risk of inconsistent regulation" for manufacturers selling their products in multiple states, *id.* at 833.  Proposition 12's narrow application to in-state sales stands in contrast to these Indiana regulations of "unprecedented" reach.  *See id.* at 827.  The dormant Commerce Clause does not preclude states from enacting laws setting standards for the sale of products within the state simply because those laws have effects outside the state.  *See Walsh*, 538 U.S. at 669.  To the extent that *Legato* suggests that the extraterritoriality doctrine "prohibits states from regulating production *methods*, rather than the products themselves, that is not the law of this circuit."  ECF No. 43 at 23 n.11.

1   state effects.  *See id.* at 1324 (discussing *Association des Eleveurs* and *Rocky*
2   *Mountain*).

3       *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018), also cuts
4   against Plaintiff's extraterritoriality claim.  In *Daniels*, the court determined that a
5   California law that mandated the incineration of medical waste generated in-state
6   but disposed of out-of-state was likely an extraterritorial regulation.  *Id.* at 615-16.
7   The court distinguished that case, which concerned "an attempt to reach beyond the
8   borders of California and control transactions that occur wholly outside of the
9   State" from cases, like this one, which address permissible regulations of "products
10  that are brought into or are otherwise within the borders of the State."  *See id.* at
11  615.

12      And *NCAA v. Miller*, 10 F.3d 633 (9th Cir. 1993), is inapposite.  There, the
13  court invalidated a Nevada law that imposed state procedural standards on the
14  NCAA's disciplinary proceedings.  *Id.* at 638-40.  The court held that these
15  standards would, as a practical matter, impermissibly require the NCAA to apply
16  Nevada's rules in proceedings involving no Nevada nexus, because of the NCAA's
17  unique need for national uniformity in disciplinary proceedings.  *Id.* at 638-39.  But
18  here, Plaintiff has not alleged that its members are subject to a "nationally uniform
19  [] production method," or that Proposition 12 has "imposed [] the sole production
20  method that Plaintiff[] must follow."  *See Ass'n des Eleveurs*, 729 F.3d at 950
21  (distinguishing *Miller*).  Again, Proposition 12 is indifferent to veal and pork
22  products sold out-of-state.  It is not enough for Plaintiff to predict dire
23  consequences if other states enact similar laws, *see* Compl. ¶ 71, because "the
24  dormant Commerce Clause does not guarantee that [] producers may compete on
25  the terms they find most convenient."  *Rocky Mountain*, 730 F.3d at 1092; *see also*
26  *Am. Fuel*, 903 F.3d at 915 (same); *Harris*, 682 F.3d at 1151 ("dormant Commerce
27  Clause does not . . . guarantee Plaintiffs their preferred method of operation").
28  Plaintiff's second claim should be dismissed.

15

### III. PROPOSITION 12 DOES NOT SUBSTANTIALLY BURDEN INTERSTATE COMMERCE—AND EVEN IF IT DID, SUCH BURDEN WOULD NOT CLEARLY EXCEED THE BENEFITS TO CALIFORNIA

Because Proposition 12 "regulates evenhandedly" and "has only indirect effects on interstate commerce," it must be sustained so long as the state interest underlying the law is legitimate and the putative local benefits of the law are not "clearly exceed[ed] by any burden on interstate commerce." *See Brown-Forman*, 476 U.S. at 579 (citing *Pike*, 397 U.S. at 142). Under *Pike*, Plaintiff "must first show that the statute imposes a substantial burden before the court will 'determine whether the benefits of the challenged laws are illusory.'" *Ass'n des Eleveurs*, 729 F.3d at 951-52 (quoting *Harris*, 682 F.3d at 1155). The Ninth Circuit has identified two ways of demonstrating that a law imposes a substantial burden—by showing either that the law is discriminatory, or that it creates "inconsistent regulation of activities that are inherently national or require a uniform system of regulation," such as transportation or professional sports leagues. *Id.* at 952 (quoting *Harris*, 682 F.3d at 1148); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146-47. Neither of those circumstances applies here. *Ante* Argument I, II.

Plaintiff has alleged that Proposition 12's standards for the in-state sale of meat impose a substantial burden because they "present[] out-of-state veal and pork producers with a Hobson's choice: either comply with Proposition 12's confinement requirements by making costly alterations to their facilities or slashing output, or be forced from the California market." Compl. ¶ 84. But "the Commerce Clause does not protect 'the particular structure or methods of operation in a retail market.'" *Harris*, 682 F.3d at 1151 (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127 (1978)). Interstate commerce is not significantly burdened "merely because a non-discriminatory regulation precludes a preferred, more profitable method" of doing business. *Id.* at 1154; *see also Ass'n des Eleveurs*, 729 F.3d at 952; *Burlington N. R.R. Co. v. Dep't of Pub. Serv. Regulation*, 763 F.2d 1106, 1114 (9th Cir. 1985) ("a loss to the company does not, without more, suggest

1   that the [] statute impedes substantially the free flow of commerce from state to

2   state") (quotation marks omitted).  Where, as here, the law "does not regulate

3   activities that inherently require a uniform system of regulation and does not

4   otherwise impair the free flow of materials and products across state borders, there

5   is not a significant burden on interstate commerce."  *See Harris*, 682 F.3d at 1154-

6   55.

7       Even if *Pike* balancing were applied, Plaintiff has not sufficiently alleged that

8   Proposition 12's incidental burdens on interstate commerce would clearly outweigh

9   its considerable benefits.  Plaintiff's complaint minimizes Proposition 12's primary

10  benefit, Compl. ¶ 86—the significant interest, long recognized by the courts, in

11  preventing animal cruelty.  *United States v. Stevens*, 559 U.S. 460, 469 (2010)

12  ("[T]he prohibition of animal cruelty itself has a long history in American law,

13  starting with the early settlement of the Colonies"); *Church of the Lukumi Babalu*

14  *Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 538 (1993); *Ass'n des Eleveurs*, 729

15  F.3d at 952; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147.  Proposition 12

16  advances this interest by "discourag[ing] the consumption of products produced"

17  from animals confined in a cruel manner and "prevent[ing] complicity in a practice

18  that [the State] deem[s] cruel to animals."  *See Ass'n des Eleveurs*, 729 F.3d at 952.

19  None of the burdens Plaintiff has identified clearly exceeds Proposition 12's

20  tangible benefits.[7]

21  **IV.  THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND**

22      Leave to amend "is properly denied . . . if amendment would be futile.

23  *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

24  Because the complaint fails to state a viable claim—and consistent with this Court's

25  determination that Plaintiff "fails to raise any questions on the merits of its three

26  _____

27      [7] Plaintiff disputes whether Proposition 12's other main benefit—protecting food safety—applies to veal and pork products.  Compl. ¶ 87.  It is unnecessary for the Court to resolve this issue because the prevention of animal cruelty is

28  unquestionably a recognized benefit that applies here.

commerce clause claims that would support the issuance of a preliminary injunction," ECF No. 43 at 25—amendment would be futile, and the complaint should be dismissed without leave to amend.

### CONCLUSION

Defendants respectfully request that the Court grant their motion to dismiss Plaintiff's complaint in its entirety and dismiss Plaintiff's complaint without leave to amend.

Dated:  November 27, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ R. Matthew Wise*

R. MATTHEW WISE
Deputy Attorney General
*Attorneys for Defendants Attorney General Xavier Becerra, Secretary Karen Ross, and Director Sonia Angell*

SA2019105411
14248121.docx

# CERTIFICATE OF SERVICE

Case Name:  **North American Meat Institute v. Becerra, et al**    No.    **2:19-cv-08569 CAS (FFMx)**

I hereby certify that on <u>November 27, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>November 27, 2019</u>, at Sacramento, California.

| Tracie L. Campbell | */s/ Tracie Campbell* |
| :---: | :---: |
| Declarant | Signature |

SA2019105411
14289199.docx