BRUCE A. WAGMAN (CSB No. 159987)
BWagman@rshc-law.com
Riley Safer Holmes & Cancila LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 275-8540
Facsimile: (415) 275-8551

PETER A. BRANDT (CSB No. 241287)
pbrandt@humanesociety.org
REBECCA CARY (CSB No. 268519)
rcary@humanesociety.org
The Humane Society of the United States
1255 23rd Street, NW, Suite 450
Washington, D.C. 20037
Telephone: (202) 452-1100
Facsimile: (202) 676-2357

*Attorneys for Defendant-Intervenors
The Humane Society of the United States,
Animal Legal Defense Fund, Animal Equality,
The Humane League, Farm Sanctuary,
Compassion in World Farming USA,
Compassion Over Killing*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH AMERICAN MEAT INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California, KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and SONIA ANGELL, in her official capacity as Acting Director of the California Department of Public Health,<br><br>Defendants, | Case No. 2:19-cv-08569-CAS (FFMx)<br><br>**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Christina A. Snyder<br>Date: February 24, 2020<br>Time: 10:00 a.m.<br>Location: Courtroom 8D |

| | |
|---|---|
| The Humane Society of the United States, Animval Legal Defendant Fund, Animval Equlaity, The Human League, Farm Sanctuary, Compassion in World Farming USA, Compassion Over Killing, | |
| | Defendant-Intervenors. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 24, 2020, at 10 a.m., or as soon thereafter as the matter may be heard before the Honorable Christina A. Snyder in courtroom 8D of the United States District Court for the Central District of California located at First Street Court House, 350 W. First Street, 8th Floor, Los Angeles, CA 90012, The Humane Society of the United States, the Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming USA, and Compassion Over Killing (collectively "Defendant-Intervenors") will move this Court pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for an order dismissing Plaintiff's complaint with prejudice. The grounds for this motion are that Plaintiff fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, records and papers filed in this action, such matters as the Court may judicially notice, and such further evidence or argument as may be presented at or before the hearing of this motion.

Dated:   November 27, 2019         RILEY SAFER HOLMES & CANCILA LLP


By: */s/ Bruce A. Wagman*
BRUCE A. WAGMAN (CSB #159987)
bwagman@rshc-law.com
Attorneys for Defendant-Intervenors

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In light of the Court's November 22, 2019 ruling on Plaintiff's motion for a preliminary injunction, this case is ripe for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as a matter of law. In order to ease the paperwork burden on the Court, this memorandum will not repeat arguments from the preliminary injunction briefing, and will instead focus on the key facts and legal issues relevant to dismissal under the standard of review applicable to motions for judgment on the pleadings.

As discussed in this Court's ruling, Proposition 12 "is intended to prevent animal cruelty by phasing out extreme methods of farm animal confinement." Dkt. # 66 at 4 (internal citation omitted). Proposition 12 "does not have a discriminatory purpose that would invalidate it per se" and "does not, in its contemplated application, impose 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" Dkt. # 66 at 13. Thus, it does not discriminate against out-of-state commerce. Proposition 12 simply evenhandedly "applies to in-state conduct—sales of meat products in California— not conduct that takes place wholly outside of California," and therefore does not regulate extraterritorially. *Id.* at 21-22. And there simply "is no serious argument that Proposition 12 imposes any substantial burden on interstate commerce." *Id.* at 25. Indeed, Proposition 12 is "directed to *how* meat products are produced, not *where*, and compliance with Proposition 12 does not require a farmer, packer, or processor to move its operations to California." *Id.* Therefore, even taking all of the allegations in the complaint as true, Plaintiff's claim fails as a matter of law.

## II. STATEMENT OF FACTS

A more complete background of the facts of this matter is provided in Intervenors' Memorandum of Points & Authorities In Opposition to Plaintiff's Motion for A Preliminary Injunction (Dkt. #25), and, therefore, only a few key facts

relevant to this motion are provided here.

### A. California's Prior Animal Welfare Legislation

In 2008 and 2010 California took the first steps toward excluding cruel products from its marketplace through the enactment of two laws—Proposition 2 and AB 1437, respectively. Proposition 2 had the primary purpose of "prevent[ing] animal cruelty by phasing our extreme methods of farm animal confinement." Cal. Health & Safety Code § 25990. Proposition 2 also generally required covered animals (including egg-laying hens, calves raised for veal, and pigs during pregnancy) in California to be able to lie down, stand up, fully extend their limbs and turn around freely. Cal. Health & Safety Code § 25991.

Proposition 2 did not include any numeric space requirement for covered animals, nor did it include any sales restrictions; the 2008 ballot initiative prohibited producers in the state from tethering or confining covered animals in a way that prevented the animals from being able to engage in those behaviors described in Section 25991.

In 2010, California's Legislature passed AB 1437 to require that all eggs sold in the state come from Proposition 2-compliant conditions—wherever the eggs were produced. Cal. Health & Safety Code § 25996. As the Act's official findings explain, the Legislature passed AB 1437 "to protect California consumers from the deleterious health, safety, and welfare effects of the sale and consumption of eggs derived from egg-laying hens that are exposed to significant stress and may result in increased exposure to disease and pathogens including salmonella." *Id.* at § 25995(e).

Thus, prior to the 2018 passage of Proposition 12 and via combination of the 2008 ballot initiative and the 2010 legislative action, California required behavioral (not numeric minimum space requirement) standards for animals raised by in-state producers, and required that all eggs sold in the state—regardless of where they were produced—were sourced from hens raised in Proposition 2-compliant

conditions.

### B. Voters Upgrade California's Humane Legislative Framework

In November of 2018, California voters again took humane legislation into their own hands and enacted Proposition 12, which for the first time sets a higher bar than Proposition 2 for animal welfare for both in-state and out-of-state producers. Proposition 12 provides that "farm owner[s] or operator[s] *within the State of California*" not knowingly confine covered animals "in a cruel manner." Cal. Health & Safety Code§ 25990(a) (emphasis added). "Confined in a cruel manner" is defined to mean not only the same behavioral standards of Proposition 2 (*i.e.*, lying down, standing up, fully extending limbs, turning around freely), but also requires explicit amounts of usable floor space per animal: confinement with at least 43 square feet of usable floor space for calves raised for veal and at least 24 square feet of usable floorspace per pig after December 31, 2019 and December 31, 2021, respectively. *Id.* § 25991(e)(1)-(3).

Thus, prior to Proposition 12's enactment, California imposed no numeric space allotment per animal, and Proposition 12 added those standards to the existing behavior-based standards. After Proposition 12 goes into effect, in-state and out-of-state producers that wish to sell their products in California will have the same amount of time to make any changes necessary to production practices in order to comply with Proposition 12's new requirements. Proposition 12's sales provision—as relevant here—requires business owners and operators to not knowingly engage in the sale *within the state* of any "(1) Whole veal meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner," or "(2) Whole pork meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of immediate offspring of a covered animal who was confined in a cruel manner." *Id.* § 25990(b)(1)-(2). Like the production provision, "confined in a cruel manner" includes both the behavioral

standards established by Proposition 2 (which did not formerly apply to sales of pork or veal products) and numeric usable space requirements for covered animals described above.

The dates for implementation of Proposition 12's production and sales requirements apply to all covered products sold in California, regardless of where those products originate. Moreover, in-state and out-of-state businesses all have the same interval of time (from Proposition 12's passage to the effective dates for each type of covered product) to implement the Proposition 12 requirements if they wish to sell their products in the California market.

Proposition 12 directs the California Department of Food and Agriculture and the California Department of Public Health to "jointly promulgate rules and regulations for the implementation of [Proposition 12] by September 1, 2019" *Id.* § 25993. These regulations have not yet been promulgated. While the provision does not specify what these regulations must ultimately contain, it does not give the agencies the authority to change the even-handed effective dates of Proposition 12 that are explicitly stated in Section 25991(e)(1)-(3).

### III.    LEGAL STANDARD

"Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (internal citations and quotations omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.*

### IV.    ARGUMENT

As described in the Court's ruling on Plaintiff's motion for a preliminary injunction, Plaintiff has not raised a valid dormant Commerce Clause claim because Plaintiff "fail[ed] to raise any questions on the merits of its three commerce claims." Dkt. # 66 at 25. *See Pacific Northwest Venison Producers v. Smith*, 20

F.3d 1008, 1012 (9th Cir. 1994).  The test for whether a law runs afoul of the dormant Commerce Clause has two parts.  First, the court must determine if the law at issue "directly regulates or discriminates against interstate commerce" or if "its effect is to favor in-state economic interests over out-of-state interests." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 579 (1986); *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S. 93, 99 (1994) (discrimination "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter").

If the law regulates in-state and out-of-state activities equally, and only indirectly affects interstate commerce, the Court must then examine whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  Proposition 12 is entirely permissible under this standard.  Indeed, this Court has already found that Plaintiff failed to raise any serious questions on the merits of its dormant Commerce Clause claims.  Dkt. # 66.

Plaintiff has split its dormant Commerce Clause argument into three separate claims, all of which rely on a misreading of controlling law.  Whether Plaintiff has one Commerce Clause claim or three, though, it has not alleged what it must in order to move this case forward, nor could it, and thus its claims are ripe for dismissal.

### A. Proposition 12 Does Not Have a Discriminatory Purpose

There are no facts in existence with which Plaintiff could show a discriminatory purpose of Proposition 12.  As the Court noted in its ruling, there is no evidence "to justify an inference that the alleged 'bad intent' behind AB1437," a California law not at issue here upon which Plaintiff relies, "is the same 'bad intent' that motivated Proposition 12."  Dkt. # 66 at 11.  Rather, the Court concluded that "Proposition 12 does not have a discriminatory purpose that would invalidate it *per se*." *Id.* at 13.  Indeed, as the Court noted, it is obligated to "assume that the

objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces us to conclude that they could not have been a goal of the legislation." *Id.*, citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n.7 (1981) (internal citation and marks omitted). Because Plaintiff could not produce anything to show California voters did not have animal welfare goals in enacting Proposition 12, Plaintiff has not and could not show a discriminatory purpose.

### B. Proposition 12 Does Not Have a Discriminatory Effect

Plaintiff's claim as to differential treatment, which is really improperly focused on the irremediable cost to its individual members, fails as a matter of law. The Court already found that there is no impermissible discriminatory effect because "Proposition 12 does not, in its contemplated application, impose 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" Dkt. # 66 at 13, citing *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S. 93, 99 (1994). The Court noted that "Proposition 12 is nearly analogous to the in-state sales prohibition on food products derived from force-fed birds that the Ninth Circuit refused to enjoin" in *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F. 3d 937, 948-49 (9th Cir. 2013), *cert. denied*, 135 S. Ct 398. (2014). Dkt. # 66 at 13-14 (citing that court's determination that "the sales prohibition's economic impact does not depend on *where* the items were produced, but rather *how* they were produced" and noting that *"Eleveurs* is, in every material respect, on all fours with the instant challenge, and its holding directs the Court to the conclusion that Proposition 12 does not have a discriminatory effect that requires *per se* invalidation"). The Court also found that "what NAMI characterizes as a competitive advantage is ultimately just a preferred method of production," which is not a constitutional right and is not guaranteed by the Commerce Clause. Dkt. # 66, citing *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1151

(9th Cir. 2012; *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 123-27 (1978). Because costs of complying with Proposition 12 do not amount to a violation of the Commerce Clause, Plaintiff's discriminatory effect claim fails as a matter of law and the Court need go no further.

Although Plaintiff alleges that Proposition 12 somehow provided problematic "lead time" to in-state producers, this issue can also be decided as a matter of law, because it is simply does not amount to a violation of the Commerce Clause for the state's health, safety, and moral laws to evolve over time. As this Court noted, Plaintiff "cites no case law for the proposition that a statute can have a discriminatory effect if a prior statute, imposing the same regulatory obligations, gives in-state entities more time to comply." Dkt. # 66 at 19 n.9. In enacting Proposition 12, California built upon its long history of animal protection, most recently reflected in laws like Proposition 2, and the new law(the only law at issue in this case) requires a wholly new set of standards that are in addition to those established in 2008 by Proposition 2. The numeric/space standards of Proposition 12 create a new baseline—they guarantee a new minimum space standard never suggested or addressed by Proposition 2. So even if California producers are now fully compliant with Proposition 2, they will need to ensure that their confinement practices are compliant with the new Proposition 12 standards, and have the same amount of time to do it as out-of-state producers. Simply put, Proposition 12 is the first time that veal and pork producers—whether in-state or out-of-state—must refrain from cruelly confining animals in spaces smaller than the standards set forth in Proposition 12 in order to sell their products in the state. Plaintiff's claim that this creates a constitutional problem proves too much, because were Plaintiff correct, it would be a constitutional problem every time a state builds upon protections for its citizens it had previously enacted. For example, the state's 1971 law requiring adequate exercise area could be said to have given in-state producers lead-time when it comes to Proposition 12. Cal. Penal Code § 597t. And any

health and safety laws involving toxic chemicals or other harmful substances could constitute "lead time" over states with lesser standards.  Thus, to cry unconstitutional foul any time certain compliance obligations fall on in-state entities before additional obligations fall on out-of-state entities leads to absurd results.

Because the undisputed facts show that all producers who wish to sell in the state have to comply with the new standards of Proposition 12 at the same time, Plaintiff's allegation that there is a constitutional problem with some fabricated "lead time" injury fails as a matter of law.

### C. Proposition 12 Does Not Directly Regulate Extraterritorial Conduct

Plaintiff's extraterritoriality theory fails as a matter of law, because Proposition 12 simply does not regulate out-of-state activity.  As the Court noted in its prior ruling, "NAMI has not raised any serious questions on the merits of its extraterritoriality claim." Dkt. # 66 at 23.  Plaintiff "does not contend that Proposition 12 attempts to control the price of veal or pork, or link prices paid for veal or pork in California to those paid out of state." *Id.* at 20.  And the Supreme Court has "indicated that the extraterritoriality doctrine's application is essentially limited to cases involving the sorts of price-setting statutes that those cases addressed." *Id.* at 19, citing *Pharm. Research & Mfrs. Of Am. v. Walsh*, 538 U.S. 644, 669 (2003); *Chinatown Neighborhood Ass'n v. Harris*, 794 F. 3d 1136, 1146 (9th Cir. 2015) (noting that the extraterritoriality doctrine is "not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices").  The Court further noted that even if the extraterritoriality doctrine were applied to non-price regulations such as Proposition 12, its "in-state sales prohibition only applies to 'in-state conduct'—sales of meat products in California— not conduct that takes place 'wholly outside of California'" and that Proposition 12 is "accordingly a perfectly lawful exercise of California's 'state sovereignty protected by the Constitution.'" Dkt. # 66 at 21-22,

citing *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 952 (9th Cir. 2019) (internal citations omitted).

As with its other efforts to squeeze a Commerce Clause claim out of the fair application of a law to in-state conduct, Plaintiff fails to establish that the law regulates in an impermissible extraterritorial manner.

### D. **Proposition 12 Does Not Levy a Substantial Burden on Interstate Commerce**

Plaintiff's claim that there is a substantial burden on interstate commerce fails as a matter of law, because the impacts they are claiming are only on individual companies, and not on the market as a whole, as the Ninth Circuit requires. Under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), a plaintiff "must first show that the statute imposes a substantial burden before the court will determine whether the benefits of the challenge laws are illusory," or otherwise inadequate to justify the burden. *Eleveurs*, 729 F.3d at 951-52 (internal quotation omitted). As the Court noted in its ruling, however, "there is no serious argument that Proposition 12 imposes any substantial burden on interstate commerce, as that term is understood." Dkt. # 66 at 25. The Court very clearly found that "Proposition 12 does not present the potential for inconsistent regulation of activities that require a uniform system of regulation" and that the alleged burdens pled by Plaintiff "do not demonstrate that Proposition 12 will interfere with the flow of veal or pork products into California inasmuch as they demonstrate NAMI's disappointment that Proposition 12 'precludes a preferred, more profitable method of operating in a retail market.'" *Id.,* citing *Optometrists*, 682 F.3d at 1155. The Court further found that Proposition 12 does not impose barriers to conducting commerce across state lines similar to those in *Pike* because "it is directed to *how* meat products are produced, not *where*, and compliance with Proposition 12 does not require a farmer, packer, or processor to move its operations to California." Rather, Proposition 12 "applies evenly no matter where production takes place" and

Plaintiff's allegations as to a "substantial burden" are "ultimately a complaint about the cost of complying with Proposition 12's requirements." Dkt. # 66 at 25. This is insufficient under *Pike*, as the Court noted. *Id*., citing *S. Pac. Transp. Co. v. Pub. Utilities Comm'n of State of Cal.,* 647 F. Supp. 1220, 1227 (N.D. Cal. 1986), *aff'd*, 820 F. 2d 1111 (9th Cir. 1987).

Because Plaintiff can only at most point to impacts on individual producers, rather than the market as a whole, its claim that there is a substantial burden on interstate commerce fails as a matter of law.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's claim is ripe for dismissal as a matter of law and the Court should dismiss Plaintiff's complaint with prejudice.

Dated: November 27, 2019

RILEY SAFER HOLMES & CANCILA LLP

By: */s/ Bruce A. Wagman*
BRUCE A. WAGMAN (CSB #159987)
bwagman@rshc-law.com

Attorneys for Defendant-Intervenors