# PRELIMINARY INJUNCTION APPEAL

Name __Sean A. Commons (SBN: 217603); SIDLEY AUSTIN LLP__

Address __555 West Fifth Street, Suite 4000__

City, State, Zip __Los Angeles, CA 90013__

Phone __(213) 896-6000__

Fax __(213) 896-6600__

E-Mail __scommons@sidley.com__

☐ FPD    ☐ Appointed    ☐ CJA    ☐ Pro Per    ☒ Retained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH AMERICAN MEAT INSTITUTE,<br><br>PLAINTIFF(S),<br><br>v.<br><br>XAVIER BECERRA, et al.<br><br>DEFENDANT(S). | CASE NUMBER:<br><br>2:19-cv-08569-CAS (FFMx)<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that _____ North American Meat Institute _____ hereby appeals to
_Name of Appellant_
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
  Denial of Mot. for Preliminary Injunction

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on _____ 11/22/19 _____. Entered on the docket in this action on __11/22/19 [ECF No. 43]__.

A copy of said judgment or order is attached hereto.

__12/3/2019__                          __/s/ Sean A. Commons__
Date                                              Signature
                                                   ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Not Present                                        Not Present

**Proceedings:**    (IN CHAMBERS) - PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF No. 15, filed on October 4, 2019)

PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE (ECF No. 25, filed on October 29, 2019)

## I.   INTRODUCTION

Plaintiff North American Meat Institute ("NAMI"), a national trade association of meat packers and processors, filed this action against California Attorney General Xavier Becerra, California Secretary of Food and Agriculture Karen Ross, and California Director of Public Health Sonia Angell (collectively "California" or "the State") on October 4, 2019 to challenge the constitutionality and prevent the enforcement of California Health & Safety Code § 25990(b), which California voters enacted as Proposition 12 on November 6, 2018 ("Proposition 12"). See ECF No. 1 ("Compl."). The complaint alleges that Proposition 12 violates the Commerce Clause of the United States Constitution by: (1) discriminating against out of state producers, distributors, and sellers of pork and veal; (2) impermissibly regulating extraterritorial activities beyond California's borders; and (3) substantially burdening interstate commerce in a manner that exceeds any legitimate local benefits. Compl. ¶¶ 44-90.

Along with its complaint, NAMI concurrently filed a motion for preliminary injunction and several supporting fact declarations from its members. See ECF No. 15 ("PI"). The State of California filed an opposition to the PI motion on October 28, 2019. See ECF No. 24 ("PI Opp."). The next day, several animal welfare organizations—the Humane Society of the United States, the Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming USA, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

Compassion Over Killing (collectively the "Intervenors" or the "Proposed Intervenors")—filed a motion to intervene as defendants pursuant to Federal Rule of Civil Procedure 24, as well as a brief in opposition to NAMI's PI motion. See ECF No. 25-1 ("MTI"), ECF No. 25-10 ("Int. PI Opp."). NAMI filed a reply in support of its preliminary injunction motion on November 4, 2019. See ECF No. 29 ("PI Reply").

In addition to these submissions, the California Egg Farmers Association filed an amicus brief in opposition to the motion for a preliminary injunction, see ECF No. 28 ("Egg Farmers Brief"), while the States of Indiana, Alabama, Arkansas, Kansas, Louisiana, Missouri, Oklahoma, South Carolina, and Utah jointly filed an amicus brief in support of the motion for a preliminary injunction, see ECF No. 40 ("States' Brief").

The Court held a hearing on November 18, 2019. Having carefully considered the parties' arguments, and the submissions of amici, the Court finds and concludes as follows.

## II.     RELEVANT BACKGROUND

The following facts are taken from the complaint, the declarations filed in support of NAMI's PI motion, the public record, and the submissions from the State and amici.

### A.     California Voters Enact Proposition 2 (2008)

In the November 2008 election, California voters passed Proposition 2, a ballot initiative intended to "prohibit the cruel confinement of farm animals." See Cal. Prop. 2 at § 2, as approved by voters (Gen. Elec. Nov. 4, 2008). The initiative passed with the support of 63.42% of California voters. See Cal. Sec'y State, Statement of Vote: 2008 General Election. Proposition 2 added §§ 25990-25994 to the California Health and Safety Code, and took effect on January 1, 2015. See Cal. Health & Safety Code §§ 25990-25994. The enacted provisions prohibit California farmers from tethering or confining pregnant pigs, veal calves, and egg-laying hens in a way that prevented them from lying down, standing up, fully extending their limbs, or turning around freely. Id. at §§ 25990, 25991(b).

### B.     California Enacts Assembly Bill 1437 (2010)

The California legislature subsequently enacted Assembly Bill 1437 ("AB 1437") in 2010. AB 1437 added §§ 25995-97 to the Health and Safety Code. These provisions prohibit selling eggs in California that are produced by hens confined under conditions that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

do not meet the confinement requirements of Proposition 2.  See Cal. Health & Safety Code §§ 25995-97.

The legislative history supporting the statute stated that the regulation intended to ensure that "all eggs sold for human consumption in California" would "conform to the animal care standards" established by Proposition 2 in order to "protect California consumer's [sic] health and welfare."  See Bill Analysis of AB 1437, Cal. Assembly Comm. on Agriculture (April 29, 2009).  Specifically, studies "cited by the author state[d] that egg-laying hens subjected to stress have a greater chance of carrying bacteria or viruses, thus having a greater chance of exposing consumers to food borne bacteria and viruses."  Id.  at 1, 2.  In addition to these consumer health and welfare concerns, the legislative history notes that "[s]ome supporters" advocating for AB 1437 also "stated that this bill will level the playing field for California egg producers to remain competitive with out-of-state egg producers."  Id. at 1; see also Bill Analysis of AB 1437, Cal. Assembly Comm. on Agriculture (May 13, 2009) (stating same).  In the enrolled version of the bill, the legislative findings state that it "is the intent of the Legislature to protect California consumers from the deleterious, health, safety, and welfare effects of the sale and consumption of eggs derived from egg-laying hens that are exposed to significant stress." Cal. Health & Safety Code § 25995.

A coalition of states challenged AB 1437's sales ban pursuant to the commerce clause of the United States Constitution, but their action was dismissed on jurisdictional grounds.  See Missouri ex rel. Koster v. Harris, 847 F.3d 646 (9th Cir. 2017).  The states then attempted to petition the Supreme Court pursuant to its original jurisdiction over disputes between states, see U.S. Const., Art. III, § 2, but were denied.  See Missouri v. California, No. 22-O-148 (filed U.S. Dec. 4, 2017).

**C.      California Enacts Proposition 12 (2018)**

In the November 2018 election, California voters passed Proposition 12 to amend §§ 25990-93 of the California Health and Safety Code by adding § 25993.1.  See Cal. Prop. 12 at § 1, as approved by voters (Gen. Elec. Nov. 6, 2018).  The initiative passed with 62.7% of the vote.  See Cal. Sec'y State, Statement of Vote: 2018 General Election.  As relevant here, Proposition 12 prohibits the sale in California of "whole veal meat" and "whole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner" as defined by Proposition 2.  Cal. Health & Safety

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

Code §§ 25990(b)(1), (b)(2).[1]  The prohibition deems that a sale occurs in California "where the buyer takes physical possession" of the meat at issue in California.  Id. at § 25991(o).  Any person who violates Proposition 12's sales prohibition is guilty of a misdemeanor punishable by a fine of up to $1,000 and up to 180 days imprisonment.  Id. at § 25993(b).

Proposition 12 thus operates in a manner similar to AB 1437, except that Proposition 12 applies the animal confinement standards established by Proposition 2 to the in-state sale of whole veal and whole pork products, whereas AB 1437 applies those standards to the in-state sale of hen eggs.

According to the ballot language, Proposition 12 is intended "to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." See Cal. Prop. 12 at § 1, as approved by voters (Gen. Elec. Nov. 6, 2018).  The State has yet to issue regulations

---

[1] "'Whole veal meat' means any uncooked cut of veal, including chop, ribs, riblet, loin, shank, leg, roast, brisket, steak, sirloin, or cutlet, that is comprised entirely of veal meat, except for seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives. Whole veal meat does not include combination food products, including soups, sandwiches, pizzas, hotdogs, or similar processed or prepared food products, that are comprised of more than veal meat, seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives."  Cal. Health & Safety Code §§ 25991(v).

Similarly, "whole pork meat" means "any uncooked cut of pork, including bacon, ham, chop, ribs, riblet, loin, shank, leg, roast, brisket, steak, sirloin, or cutlet, that is comprised entirely of pork meat, except for seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives. Whole pork meat does not include combination food products, including soups, sandwiches, pizzas, hotdogs, or similar processed or prepared food products, that are comprised of more than pork meat, seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives."  Id. at §§ 25991(u).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

implementing Proposition 12 despite the statutory deadline to do so by September 1, 2019. Id. at § 25993.

### D.   NAMI Files Suit Asserting Constitutional Violations

NAMI represents meat packers and processors who raise hogs and veal calves in states across the country, and who sell their pork and veal in California. See Gallimore Decl., ¶¶ 2-5.  NAMI also advocates for its members in connection with legislation and regulation affecting the meat industry. Id. ¶ 3.

NAMI filed this suit alleging that Proposition 12 violates the dormant Commerce Clause by discriminating against its members who produce pork and veal outside of California, impermissibly regulating its members' business activities beyond California's borders, and by substantially and unlawfully burdening its members' ability to engage in interstate commerce. Compl. ¶¶ 44-90. Because NAMI members sell a significant portion of their products into the California market, NAMI claims that, unless Proposition 12 is enjoined, its members will face a "Hobson's choice" between either (i) expending the tens of millions of dollars necessary to reconfigure their production processes to comply with the regulation (including, in some cases, dismantling and reconstructing brand new multimillion dollar facilities and securing the financing to do so), (ii) cutting production to meet Proposition 12's square footage requirements (forfeiting revenue), (iii) abandoning the California market (and forfeiting revenue), or (iv) risking the criminal penalties and fines set forth by § 25993(b).  See Bakke Decl. ¶ 11, Catelli Decl. ¶¶ 8-10, Friesen Decl. ¶¶ 9-10, Darrell Decl. ¶¶ 10-15, Neff Decl. ¶¶ 4-13, Rennells Decl. ¶¶ 9-16, Turner Decl. ¶¶ 8-17, Bollum Decl. ¶¶ 5-11.

## III.   LEGAL STANDARDS

### A.   Motion To Intervene

A party may intervene pursuant to Federal Rule of Civil Procedure 24 either as of right, or with permission of the Court.  "A party seeking to intervene as of right must meet four requirements: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." Arakaki v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003).  A party who satisfies each of these requirements must be permitted to intervene.  Id.

By contrast, "[a] motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." San Jose Mercury News, Inc v. U.S. Dist. Ct., 187 F.3d 1096, 1100 (9th Cir. 1999).  The Ninth Circuit has set forth three prerequisites that an applicant seeking permissive intervention under Rule 24(b) must establish: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." Id. (internal quotation omitted).

## B.    Preliminary Injunction

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  The Ninth Circuit summarized the Supreme Court's clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009).  Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010).  Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." Bernhardt v. Los Angeles Cty., 339 F.3d 920, 926 (9th Cir. 2003) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988)).

## IV.    DISCUSSION

Before the Court are proposed intervenors' motion to intervene, and NAMI's motion for a preliminary injunction.  The Court addresses these motions in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

## A.    Proposed Intervenors' Motion To Intervene

Intervenors propose to intervene in this action as of right, and permissively.  See MTI.  NAMI does not oppose the motion to intervene, subject to certain conditions regarding case management to which the intervenors have agreed.  See ECF No. 38.

The Court finds and concludes that intervenors have established the three elements necessary to intervene with the Court's permission pursuant to Rule 24(b): (1) intervenors' application—filed 25 days after the action commenced—is timely, and NAMI's consent indicates that intervenors' participation in the case will not cause prejudice to any opposing party; (2) there are independent grounds for jurisdiction because this is a federal question case and intervenors do not propose to raise any new claims, see Freedom from Religion Foundation, Inc. v. Geithner, 644 F.3d 836, 844 (9th Cir. 2011); and (3) the intervenors' represent that their defenses are based on the same legal arguments that the state has raised, such that there are questions of law and fact in common between their defense and the main action.  See San Jose Mercury News, Inc., 187 F.3d at 1100.

The intervenors' motion is accordingly **GRANTED**. The intervenors shall be permitted to intervene in this action pursuant to parties' stipulated conditions: (1) the intervenors will abide by the same deadlines applicable to the original defendants; (2) the intervenors will make joint filings (rather than separate, individual filings); and (3) the proposed intervenors will not seek discovery from NAMI or its members, and NAMI will not seek discovery from the proposed intervenors or their members, except that both NAMI and the intervenors may ask questions at depositions, if any.

## B.    NAMI's Motion For A Preliminary Injunction

NAMI moves for a preliminary injunction on all three of its asserted claims for relief pursuant to the Commerce Clause.  See PI at 7-23.  According to NAMI, unless the Court enjoins Proposition 12, its members will suffer irreparable harm in the form of constitutional injury, and noncompensable money damages.  Id. at 24-25.  California opposes on grounds that NAMI is unlikely to succeed on its claims because it lacks associational standing, see PI Opp. at 5-6, because the Ninth Circuit and the Supreme Court has rejected each of its substantive theories of relief, id. at 6-18, and because NAMI's members injuries would not, in any event, be irreparable, id. at 18-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  ‘O’

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

### 1.  The Merits Of NAMI's Constitutional Challenge

To prevail on its motion for a preliminary injunction, NAMI must at a minimum establish that there are "serious questions" on the merits of at least one of its claims for relief.  Cottrell, 622 F.3d at 1053.  A plaintiff seeking a preliminary injunction cannot establish serious questions or a likelihood of success on the merits unless it demonstrates that it has Article III standing.  See, e.g., Cedar Park Assembly of God of Kirkland, Washington v. Kreidler, --- F. Supp. 3d ----, No. 19-CV-5181 BHS, 2019 WL 3530875, at *8 (W.D. Wash. Aug. 2, 2019) ("Without standing, the Court cannot find Cedar Park is likely to succeed on the merits."); Barber v. U.S. Bank N.A., No. 16-CV-695-R, 2016 WL 9223805, at *1 (C.D. Cal. June 13, 2016) (concluding that "plaintiffs' first cause of action is therefore not likely to succeed on the merits, as plaintiffs do not currently have standing to bring the claim").

As discussed below, the Court finds and concludes that NAMI has associational standing to bring its claims, but fails to raise any serious questions on the merits of those claims.

### a)  Associational Standing

At the outset, California contends that NAMI is unlikely to succeed on the merits of its claims because it lacks standing to sue.  To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  An organizational plaintiff may establish standing on a representational basis by demonstrating that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp., 713 F.3d 1187, 1194 (9th Cir. 2013).

The Court finds that the allegations in NAMI's complaint satisfy the test for representational standing.  As to the first element, NAMI alleges that its members "own and raise hogs and veal calves in various states across the country," that these members "sell pork and veal to customers in California," and that these members are "regulated and harmed by" Proposition 12.  Compl. ¶¶ 9-11.  The complaint details how, according to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

NAMI, compliance with Proposition 12 would injure its members by imposing considerable costs upon them, or else require them to forego revenues, and/or risk civil and criminal penalties. Id. ¶¶ 80-85. Accepting the truth of these factual allegations for the limited purpose of assessing the justiciability of NAMI's claims, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992), the Court concludes that NAMI has alleged enough at this juncture to establish that at least some of its members would have standing to sue in their own right.[2] Second, NAMI satisfies the second representational standing requirement with the allegation that its "purposes include . . . advocacy on behalf of its members in connection with legislation and regulation affecting the meat industry," and in particular the sale of pork and veal. Compl. ¶ 8. Taking the complaint's allegations as true, the protection of NAMI members' pork and veal production practices from Proposition 12 would encompass the type of regulatory interests that NAMI exists to support. And third, since NAMI "requested declaratory and injunctive relief, not money damages," its Commerce Clause claims do not "necessitate individual member participation." Freedom From Religion Found. v. Weber, 628 F. App'x 952, 953 (9th Cir. 2015) (citing Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 799 (9th Cir. 2001)).

Because NAMI has representational standing, it cannot be unlikely to succeed on the merits of its claims on that basis. The Court accordingly turns to address the merits of those claims.

---

[2] In addition, the Court finds that the sworn facts declared in the affidavits of seven NAMI members attached to the PI motion further support a conclusion that any one of these affiants would have standing to challenge the enforcement of Proposition 12 in their own right. See, e.g., Darrell Decl. ¶¶ 2, 10-15 (declaring that Smithfield Farms is a NAMI member that would be injured if required to comply with Proposition 12). For this reason, even if, as California appears to contend, NAMI were obligated to identify *which* of its members have independent standing to sue—a proposition the Ninth Circuit arguably rejected, see Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1041 (9th Cir. 2015) (holding that there is "no purpose to be served by requiring an organization to identify by name the member or members injured" in cases where the alleged injury to at least one member is clear and "the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury")—the Court finds that NAMI has put forward facts sufficient to meet even that standard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

**b)     Commerce Clause Claims**

The Constitution extends to Congress the power to "regulate Commerce . . . among the several states." U.S. Const., Art. I, § 8, cl. 3. "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) ("Optometrists II") (quoting South–Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 87 (1984)). "This limitation on the states to regulate commerce is 'known as the dormant Commerce Clause.'" Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 947 (9th Cir. 2013) (quoting Optometrists II, 682 F.3d at 1148). "The primary purpose of the dormant Commerce Clause is to prohibit 'statutes that discriminate against interstate commerce' by providing benefits to 'in-state economic interests' while 'burdening out-of-state competitors.'" Id. at 947 (quoting CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 87 (1987) and Dep't of Revenue v. Davis, 553 U.S. 328, 337 (2008)).

"The Supreme Court has adopted a 'two-tiered approach to analyzing state economic regulation under the Commerce Clause.'" Eleveurs, 729 F.3d at 948 (quoting Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578–79 (1986)). On the one hand, state regulations that (1) "discriminate against interstate commerce" or (2) "directly regulat[e] extra-territorial conduct" are generally "struck down . . . without further inquiry." Id. at 948-49 (quoting Brown-Forman); see also Dakota v. Wayfair, Inc., 138 S. Ct. 2080, 2091 (2018) (explaining that such laws "face a virtually per se rule of invalidity"). However, state regulations that (3) "regulate even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Wayfair, Inc., 138 S. Ct. at 2091 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137 (1970)); see also Energy & Env't Legal Inst. v. Epel, 793 F.3d 1169, 1171 (10th Cir. 2015) (Gorsuch, J.) (explaining that "dormant commerce clause cases are said to come in [these] three varieties").[3]

---

[3] The court in Epel compared the analytic framework applied to dormant Commerce Clause cases to the one applied to cases brought under the antitrust laws: "As there we find here a kind of 'rule of reason' balancing test providing the background rule of decision with more demanding 'per se' rules applied to discrete subsets of cases where, over time, the Court has developed confidence that the challenged conduct is almost always likely to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

NAMI claims that Proposition 12 is unconstitutional on all three grounds.

### (1)   Discrimination Against Out Of State Commerce Claim

Discrimination against out of state commerce "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or., 511 U.S. 93, 99 (1994). "The party challenging a regulation" on this basis "bears the burden of establishing that a challenged statute has a discriminatory purpose or effect under the Commerce Clause." Int'l Franchise Ass'n, Inc. v. City of Seattle, 803 F.3d 389, 400 (9th Cir. 2015) (internal citation and marks omitted). NAMI acknowledges that Proposition 12 is facially neutral, but contends that Proposition 12 nevertheless unconstitutionally discriminates against out of state commerce "because its purpose and effect are to protect California producers from out-of-state competitors with lower production costs." PI at 7.

### (a)   Discriminatory Purpose

NAMI first argues that Proposition 12 has a discriminatory purpose because it is the "lineal descendent of AB 1437." PI Reply at 6; PI at 8. That bill, as discussed above, was passsed in 2010 to enact an in-state sales ban, analogous to Proposition 12, on eggs laid by hens kept under conditions that violated the humane treatment requirements established by Proposition 2. See supra § II.B. According to the legislative history, AB 1437 received at least some support on grounds that it would operate to "level the playing field so that in-state producers are not disadvantaged." Id. NAMI's point is that because Proposition 12 operates in the same way on pork and veal sales as AB 1437 does with respect to egg sales, the Court should infer that Proposition 12 is animated by the same allegedly discriminatory purpose that appeared in AB 1437's legislative history. See PI at 8 (citing Int'l Franchise Ass'n, 803 F.3d at 402 for the proposition that "[c]ourts have considered legislative history to determine whether local action was motivated by a discriminatory purpose").

The Court is not convinced. The bill analyses cited by NAMI—as well as the additional published legislative history materials reviewed by the Court and cited in § II.B

---

prove problematic and a more laborious inquiry isn't worth the cost." Epel, 793 F.3d at 1172.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

above—fail to establish that discrimination against out of state commerce, or economic protectionism, drove passage of AB 1437. As the legislative history demonstrates, the bill author's and the committees' concerns also, if not primarily, involved animal welfare and preventing consumer health risks from food-borne bacteria thought to derive from the confinement of egg-laying hens in crowded, high-stress spaces. See § II.B (discussing the bill analyses). In fact, this is the only rationale for the legislation articulated in the enacted legislation. See Cal. Health & Safety Code § 25995 (explaining that the legislation was driven by legislative findings related to public health reports by the Pew Commission on Industrial Farm Production, the World Health Organization, and the Food and Agricultural Organization of the United Nations). The Court is obligated to "assume that the objectives articulated by the legislature are actual purposes of the statute, unless examination of the circumstances forces us to conclude that they could not have been *a goal* of the legislation." Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 463 n. 7 (1981) (internal citation and marks omitted) (emphasis added). The above-mentioned evidence more than supports a conclusion that legitimate public health interests were "a goal" that the legislature which passed AB 1437 had in mind.

But regardless of what may, or may not have, motivated passage of AB 1437, NAMI adduces no evidence—not even the threshold amount necessary to support a preliminary injunction, see Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981)—to justify an inference that the alleged "bad intent" behind AB 1437 (if any) is also the same "bad intent" that motivated Proposition 12. It makes no difference that Proposition 12 was enacted as an initiative, and not ordinary legislation. NAMI could have, but did not, put forward evidence from the initiative campaign or the California Voter's Information Guide (as it did in connection with its discussion of Proposition 2, see PI Reply at 4) that tended to show a discriminatory or protectionist intent. See Washington v. Seattle Sch. Dist. No. 1, 458 U.S. 457, 471 (1982) (reviewing evidence from initiative campaign to assess discriminatory intent in racial discrimination suit); City of Los Angeles v. Cty. of Kern, 462 F. Supp. 2d 1105, 1114 (C.D. Cal. 2006) ("Because Measure E was enacted as a ballot measure, the Court may look to the nature of the initiative campaign to determine the intent of the drafters and voters in enacting it."). In fact, campaign statements made to friendly in-state audiences are among some of the most fruitful sources of protectionist purpose evidence. E.g., City of Los Angeles, 462 F. Supp. 2d at 1114 (finding evidence from campaign "that Measure E was enacted in part because of—rather than despite—its impacts on articles of commerce flowing from Los Angeles and Los Angeles County" and concluding that this "constitutes evidence of a discriminatory intent"). But NAMI cites nothing to this effect.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

For these reasons, the Court concludes that Proposition 12 does not have a discriminatory purpose that would invalidate it *per se*.

### (b)    Discriminatory Effect

NAMI next argues that Proposition 12 nevertheless has a *per se* unconstitutional discriminatory effect since it "operates as a protectionist trade barrier" that "subject[s] out-of-state competitors to Proposition 12's confinement requirements if they want to compete in California." See PI at 8-14; PI Reply at 4-9.  The problem with this argument is that Proposition 12 does not, in its contemplated application, impose "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste, 511 U.S. at 99.  The in-state sales prohibition applies equally to animals raised and slaughtered in California as they do to animals raised and slaughtered in any other state.  See Cal. Health & Safety § 25990(b).  "An import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items." Pac. Nw. Venison Producers v. Smitch, 20 F.3d 1008, 1012 (9th Cir. 1994) (holding that a regulation prohibiting the import of "fallow deer and sika deer" into State of Washington was not discriminatory because it did not "result in the citizens of Washington receiving benefits that are denied to others").

In this respect, Proposition 12 is nearly analogous to the in-state sales prohibition on food products derived from force-fed birds that the Ninth Circuit refused to enjoin in Eleveurs.  The plaintiffs in that case advanced the same argument that NAMI asserts here; namely, that "[a] state statute is unconstitutional not just when it discriminates on its face or in its purpose but also where it has a discriminatory *effect*."  Appellant's Opening Br., Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 2012 WL 5915406 at *51-52 (9th Cir. filed Nov. 16, 2012) (emphasis original).[4]  There, as here, plaintiffs argued that

---

[4] NAMI's contention that Eleveurs "does not address whether a 'facially neutral' statute satisfies the Commerce Clause even if its practical effect or purpose is to burden and discriminate against out-of-state competitors" is accordingly incorrect.  See PI Reply at 6.  At oral argument, NAMI's counsel contended that the discrimination argument raised in the Eleveurs briefing, and rejected by the Ninth Circuit, is not controlling because that argument (based on the evidence available to the plaintiffs) principally addressed discrimination against out-of-state sellers of duck breasts, not duck livers, and the Ninth Circuit ultimately concluded that the sales prohibition did not apply to duck breasts.  See

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

the sales prohibition effectively discriminated against out of state producers by requiring them to "give up [a] competitive advantage" derived from using a certain method of production. Id. at *53-54. Compare PI Reply at 7 (contending that Proposition 12 "strips away from out-of-state competitors the competitive and economic advantages they have earned for themselves and which the Commerce Clause protects"). The Ninth Circuit rejected this argument. Finding that the sales prohibition's "economic impact does not depend on *where* the items were produced, but rather *how* they were produced," the court held that the prohibition "is not discriminatory" in its effect. Eleveurs, 729 F.3d at 948 (emphasis original).[5] Eleveurs is, in every material respect, on all fours with the instant challenge, and its holding directs the Court to conclude that Proposition 12 does not have a discriminatory effect that requires *per se* invalidation.

The Supreme Court's decision in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977) is fully consistent with this conclusion. That case involved a challenge to a North Carolina law that required containers of apples sold into the state to bear a United States Department of Agriculture ("USDA") quality grade, and

---

Eleveurs, 729 F.3d at 945 (holding that the statute "is limited to products that are produced by force feeding a bird for the purpose of enlarging the bird's liver beyond normal size" and "does not prohibit the sale of duck breasts, down jackets, or other non-liver products from force-fed birds"). The upshot, NAMI contends, is that any apparent holding on discrimination in Eleveurs should be disregarded as dicta. That is not correct. The Ninth Circuit *also* squarely considered whether the statute—narrowly construed only to apply to duck livers—discriminated against plaintiffs who were out-of-state *duck liver producers*. Id. at 948. And in this respect, as discussed above, the Ninth Circuit held that it did not discriminate.

[5] The Sixth Circuit reached the same conclusion in a similar case involving disclosures related to agricultural production methods. See Int'l Dairy Foods Ass'n v. Boggs, 622 F.3d 628, 649 (6th Cir. 2010) (holding that Ohio rule generally prohibiting milk processors and distributors from using product labels advertising the absence of the rbST hormone in milk production did not have a discriminatory effect because "the Rule burdens Ohio dairy farmers and processors who do not use rbST in their production of milk products to the same extent as it burdens out-of-state farmers and processors not using rbST," and, in fact, benefits "an out-of-state processor whose production includes the use of rbST . . . more than an Ohio processor who uses milk from cows not treated with rbST").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

not any other. Id. at 335. Prior to the enactment of the North Carolina law, the State of Washington had developed and popularized its own more rigorous and detailed apple grading system that record evidence demonstrated was "equal to or superior to the USDA grades in all corresponding categories," and which had, as a result, "gained nationwide acceptance in the apple trade." Id. at 351, 352. The evidence demonstrated that "Washington sellers would normally enjoy a distinct market advantage vis-a-vis local producers" where the more exacting Washington grades applied, since Washington apples tended to be of greater quality than those from North Carolina, and since the USDA grading system did not capture these differences in quality. Id. at 351-52. In light of this evidence, the Supreme Court struck down the North Carolina law, holding that it had a discriminatory effect *inter alia* because it "stripp[ed] away from the Washington apple industry the competitive and economic advantages it has earned for itself through its expensive inspection and grading system," and, consequently, "ha[d] a leveling effect which insidiously operates to the advantage of local apple producers." Id. at 351, 352.

Here, in contrast to Hunt, the only "competitive advantage" that NAMI contends will be stripped away by Proposition 12 is a standard production method, available to any meat processor in any state that allows it, to concentrate livestock in its facilities at certain densities. See PI Reply at 7-8. The State of California just happens to have determined that these practices are inhumane and harmful. This is not a competitive advantage—like the higher quality products and creative marketing that, in Hunt, gave Washington apple growers an advantage over North Carolina apple growers—but a regulatory safe harbor for certain production methods that California, through its political process, has elected to eliminate from meat sold into its market. See Rocky Mountain Farmers Union v. Corey, 730 F.3d 1070, 1092 (9th Cir. 2013) ("Rocky Mountain I") (distinguishing Hunt and holding that while plaintiff's decision to locate its ethanol plant with "[a]ccess to cheap electricity is an advantage," the advantage "was not 'earned' in the sense meant by Hunt simply because" the regulatory alternative preferred by plaintiff "imposed the hidden costs of GHG emissions on others," rather than on the plaintiff, as the challenged regulation proposed to do); E. Kentucky Res. v. Fiscal Court of Magoffin Cty., Ky., 127 F.3d 532, 544 (6th Cir. 1997) ("The Commerce Clause is not a safety valve for those who are simply political process losers.").

At bottom, what NAMI characterizes as a competitive advantage is ultimately just a preferred method of production. But it is well-established that "the dormant Commerce Clause does not . . . guarantee Plaintiffs their preferred method of operation." Optometrists II, 682 F.3d at 1151 (citing Exxon Corp., 437 U.S. at 123-27). For example, in the first

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-CV-08569 CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

appeal of <u>Optometrists II</u>, the Ninth Circuit held that even where the challenged law "deprived" the plaintiff opticians "of one eyewear sales method" that "affords [them] a sales advantage," the Commerce Clause was not violated because the plaintiffs "were not precluded from operating in California" and only needed to comply with the law, and adopt one of the sales methods it permitted, as did every other seller. <u>See</u> <u>Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown</u>, 567 F.3d 521, 528 (9th Cir. 2009) ("<u>Optometrists I</u>").

Even to the extent NAMI members' current processing practices actually confer a cognizable competitive advantage that Proposition 12 threatens, the loss of that asserted advantage would not be discriminatory: the cost of retrofitting their facilities to comply with Proposition 12 "may be" a burden—and an understandably expensive one—"but it is an equal-opportunity" burden and "not a protectionist measure burdening only the operators of foreign facilities." <u>Maharg, Inc. v. Van Wert Solid Waste Mgmt. Dist.</u>, 249 F.3d 544, 553 (6th Cir. 2001) (holding that county surcharge did not have a discriminatory effect over objection that, per <u>Hunt</u>, surcharge eliminated plaintiff's competitive advantage).[6]

Nor is the Court persuaded by NAMI's remaining arguments that (i) Proposition 12 has a discriminatory effect because in-state producers had six years to comply with Proposition 2's animal confinement regulations, whereas out of state NAMI members *may*, in some respects, have less "lead time,"[7] or that (ii) Proposition 12 has a discriminatory

---

[6] NAMI's reliance on <u>Baldwin v. G.A.F. Seelig, Inc.</u>, 294 U.S. 511, 527 (1935) and <u>Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Board</u>, 298 F.3d 201, 213 (3d Cir. 2002), which applies <u>Baldwin</u>, is misplaced. <u>See</u> PI Reply at 8. As discussed further below, courts including the Supreme Court distinguish the application of the *per se* rule in those cases because they involve challenges to price-setting statutes. <u>See</u> *infra* § IV.B.2. Whether, for example, the law in <u>Cloverland-Green</u> is styled as an impermissible attempt to export a "minimum price floor" pursuant to <u>Baldwin</u>, or an impermissible attempt to strip away a competitive pricing advantage pursuant to <u>Hunt</u>, a material factor in both analyses is the price-setting nature of the challenged regulations— a factor not present here.

[7] The Court acknowledges that, in this respect, the present facts *could be* distinguishable from those raised in <u>Eleveurs</u>. In that case, the sales prohibition came into effect against in-state and out-of-state producers at the same time, so the "lead time"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

effect because regulators *may* construe the sales prohibition to exempt "bob" veal that is almost exclusively culled from California dairy farms. See PI at 10-11; PI Reply at 4-5, 8-9. These arguments are premature. As the parties acknowledge, California has yet to issue any regulations implementing Proposition 12. See PI at 5. Those regulations might, or they might not, have the "potential" discriminatory effects that NAMI contends they could. See PI at 10.[8] But at this juncture, the speculative possibility that state regulators may

---

allotted for compliance was not an issue in the discrimination analysis. By contrast, because aspects of Proposition 12 that apply pre-existing provisions of Proposition 2 to out-of-state producers *may* give those out-of-state producers less lead time for compliance than Proposition 2 gave in-state producers, plaintiffs *could* have an arguable basis to claim that Proposition 12 discriminates against out-of-state commerce. However, as discussed below, the Court concludes that this argument is premature prior to the release of the relevant implementing regulations.

[8] At oral argument, counsel for the State expressed that he "expects" the forthcoming regulations to implement compliance deadlines that comport with the dates set forth by Cal. Health & Safety Code § 25991(e). However, the compliance dates set forth by that provision only relate to *new* minimum square footage requirements that Proposition 12 established for the first time in 2018. Id. at § 25991(e)(2)-(3). Even assuming, therefore, that the effective dates set forth by the statute will be the dates that the pending implementing regulations apply—and counsel for the State could not confirm with certainty that they would be—California farmers, as well as out-of-state farmers, will have the *same* amount of "lead time" to comply with these *new* minimum square footage requirements.

Moreover, although Proposition 12 also requires out-of-state farmers and meat packers who sell into California to comply with Proposition 2's *pre-existing* prohibitions against confining a covered animal "in a manner that prevents such animal from lying down, standing up, fully extending his or her limbs," or "turning around freely"—standards that California farmers and meat packers had six years with which to comply when they were first enacted—Proposition 12 *is silent* as to when these requirements shall effectively apply to in-state sales by out-of-state farmers and meat packers. See Cal. Health & Safety Code § 25991(e)(1) (recodifying the standards set by Proposition 2 within the framework established by Proposition 12); see also Cal. Atty Gen., Initiative No. 17-0026 at 2-4 (received Aug. 29, 2017) (text of Proposition 12's amendments to Cal. Health & Safety Code §§ 25990-25993.1). The only compliance dates set forth by Proposition 12 relate to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

interpret and apply Proposition 12 in a manner that NAMI argues will impose discriminatory effects upon its out-of-state members does not raise any serious questions that justify a preliminary injunction.[9]

\*       \*       \*

For the reasons discussed above, the Court concludes that NAMI's discriminatory effect claim fails to raise any questions on the merits that would support the issuance of a preliminary injunction.

---

the *new* requirements addressed above.  It is therefore premature, prior to the issuance of regulations implementing the application of these pre-existing prohibitions, to know whether or not out out-of-state farmers and meat packers will be granted less (or more) "lead time" to comply with the pre-existing prohibitions than the in-state farmers received after the passage of Proposition 2, and thus premature to determine whether a discrepancy in the lead time allotted, if any, amounts to discrimination in violation of the commerce clause.

[9] Prematurity aside, the Court is also less than sanguine about the merits of NAMI's "lead time" argument.  For one thing, NAMI cites no case law for the proposition that a statute can have a discriminatory effect if a prior statute, imposing the same regulatory obligations, gives in-state entities more time to comply.  Also, as intervenors' counsel raised at oral argument, some out-of-state producers began to comply with the pre-existing requirements imposed on California producers by Proposition 2 well-before voters enacted Proposition 12 to apply those requirements to out-of-state producers that sell into the California market.  See Ikizler Decl., ¶ 22 (reproducing 2014 statement from Tyson Foods "urg[ing]" its pork producing members to "allow sows of all sizes to stand, turn around, lie down and stretch their legs," mirroring the requirements established by Proposition 2 and incorporated into Proposition 12), ¶ 49 n. 62 (citing to United Egg Producers' statistics indicating that many out-of-state egg producers are already "currently compliant" with Proposition 12's requirements).  This is not surprising, given that Massachusetts and the European Union also enacted comparable animal confinement standards in the years between the passage of Proposition 2 and Proposition 12.  See id., ¶ 42-44 (discussing the timing and practical effects of the confinement laws in those jurisdictions).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-08569 CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

### (2)  Direct Regulation Of Extraterritorial Conduct Claim

NAMI next claims that Proposition 12 attempts to "impose confinement standards for farm animals located outside California" in violation of "the extraterritoriality doctrine." PI at 18. This is the doctrine applied by the Supreme Court in three cases involving state statutes that attempted to fix the prices for products sold out of state: Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511 (1935), Brown–Forman Distillers Corp. v. N.Y. State Liquor Authority, 476 U.S. 573 (1986), and Healy v. Beer Institute, 491 U.S. 324 (1989). In each of these cases, the Supreme Court struck down the pricing laws for attempting to regulate "commerce occurring wholly outside [their states'] boundaries." Healy, 491 U.S. at 336.

The Supreme Court has since indicated that the extraterritoriality doctrine's application is essentially limited to cases involving the sorts of price-setting statutes that those cases addressed. See Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 669 (2003). In Walsh, the Supreme Court considered a Maine law authorizing the state to negotiate with drug manufacturers to obtain rebates on prescription drugs for Medicaid recipients. Where the state could not obtain an agreement from a manufacturer, the law provided that the manufacturer's in-state Medicaid sales would become subject to a "prior authorization" procedure administered by the state. Id. at 649-50. The Supreme Court rejected the argument that the provision was *per se* invalid pursuant to the extraterritoriality doctrine, holding that "[t]he rule that was applied in Baldwin and Healy" was "not applicable" to the Maine statute because, "unlike [the] price control or price affirmation statutes" in those cases, "the Maine Act does not regulate the price of any out-of-state transaction, either by its express terms or by its inevitable effect," "does not insist that manufacturers sell their drugs to a wholesaler for a certain price," and does "not t[ie] the price of its in-state products to out-of-state prices." Id. at 669.

Following Walsh, the Ninth Circuit has held that the doctrine is "not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices." Chinatown Neighborhood Ass'n v. Harris, 794 F.3d 1136, 1146 (9th Cir. 2015) (quoting Eleveurs, 729 F.3d at 951); accord Epel, 793 F.3d at 1173-75 (Gorsuch, J.) (holding that "the Supreme Court has emphasized as we do that the Baldwin line of cases concerns only 'price control or price affirmation statutes' that involve 'tying the price of . . . in-state products to out-of-state prices,'" and rejecting application of doctrine to statute that "isn't a price control statute" and "doesn't link prices paid in Colorado with those paid out of state"); IMS Health Inc. v. Mills, 616 F.3d 7, 29-30 (1st

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

Cir. 2010) (holding that the doctrine only applied to price-setting laws, and refusing to apply the doctrine to a state law regulating the disclosure and transmission of patient identifying information for marketing purposes), <u>vacated on other grounds</u>, 131 S. Ct. 3091 (2011).[10]

NAMI does not contend that Proposition 12 attempts to control the price of veal or pork, or link prices paid for veal or pork in California to those paid out of state. There is therefore no question that, were the limitation recognized by <u>Walsh</u> and adopted by <u>Eleveurs</u> and <u>Chinatown Neighborhood</u> applied, the extraterritoriality doctrine would have no application to this case. Instead, NAMI argues that these cases misread <u>Walsh</u>, and that the Ninth Circuit's en banc decision in <u>Sam Francis Foundation v. Christie's, Inc.</u>, 784 F.3d 1320 (9th Cir. 2015) (en banc) supersedes the extraterritoriality holding in <u>Eleveurs</u>, and renders the portion of the panel decision addressing the scope of the doctrine in the subsequently-decided <u>Chinatown Neighborhood</u> case contrary to circuit precedent. <u>See</u> PI

---

[10] In addition to concluding that the Supreme Court has strictly limited the extraterritoriality doctrine, some judges and commentators have questioned the extraterritoriality doctrine's continued vitality. <u>See</u> <u>Am. Beverage Ass'n v. Snyder</u>, 735 F.3d 362, 381 (6th Cir. 2013) (Sutton, J., concurring) (observing that there is not "a single Supreme Court dormant Commerce Clause holding"—<u>Healy</u>, <u>Brown-Forman</u>, and <u>Baldwin</u> included—"that relied exclusively on the extraterritoriality doctrine to invalidate a state law," and concluding that, in light of the manifold changes in the way interstate commerce is actually conducted, the extraterritorial doctrine has become "a relic of the old world with no useful role to play in the new"); <u>Epel</u>, 793 F.3d at 1175 (Gorsuch, J.) (characterizing the extraterritoriality doctrine as the "the most dormant . . . in all of dormant commerce clause jurisprudence," expressing concerns that the doctrine "risks serious problems of overinclusion," and suggesting that the <u>Baldwin</u> line of cases might be better understood as "instantiations . . . of the antidiscrimination rule" rather than "a distinct line of dormant commerce clause jurisprudence"); <u>IMS Health</u>, 616 F.3d at 29 n.27 (same); <u>see also</u> Brannon P. Denning, <u>Extraterritoriality and the Dormant Commerce Clause: A Doctrinal Post–Mortem</u>, 73 La. L. Rev. 979, 998–99 (2013), and, Jack L. Goldsmith & Alan O. Sykes, <u>The Internet and the Dormant Commerce Clause</u>, 110 Yale L.J. 785, 806 & n. 90 (2001) (both discussed in <u>Epel</u> and <u>American Beverage</u>). Because the Supreme Court has not expressly overruled the doctrine, the Court analyzes its application here. <u>See</u> <u>State Oil Co. v. Khan</u>, 522 U.S. 3, 20 (1997) (stating that it is the Supreme Court's "prerogative alone to overrule one of its precedents").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|----------|---------------------------|------|-------------------|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

Reply at 12-13 (also citing Daniels Sharpsmart, Inc. v. Smith, 889 F.3d 608 (9th Cir. 2018), a panel decision applying the extraterritoriality doctrine following Christie's, for the proposition that the extraterritoriality doctrine continues to apply in cases not involving price-setting statutes).

Christie's concerned a California law that required "the payment of royalties to the artist after a sale of" that artist's "fine art whenever 'the seller resides in California or the sale takes place in California.'" Christie's, 784 F.3d at 1323. The en banc panel held that the first clause violated the dormant Commerce Clause, as it applied to out of state sales, because "[t]hose sales have no necessary connection with the state other than the residency of the seller." Id. The Court quoted Healy for the proposition that the "Commerce Clause precludes the application of a state statute to commerce that takes place *wholly outside* of the State's borders, whether or not the commerce has effects within the State." Id. (internal quotation marks omitted) (emphasis added). Although the opinion distinguished Eleveurs on its facts—explaining that that case "concerned state laws that regulated in-state conduct with allegedly significant out-of-state practical effects" rather than "regulation of wholly out of state conduct," id. at 1324—it did not address, let alone reject, the legal proposition stated in Eleveurs, and applied in Walsh, that the extraterritoriality doctrine had been, or is, limited in its application to price-setting laws.

Whether or not Christie's implicitly revived the extraterritoriality doctrine's application to non-price regulations—a proposition the Court hesitates to accept given the en banc panel's silence, the Supreme Court's holding in Walsh, and the persuasive opinions in Epel and American Beverage, discussed above—NAMI arguably has, at the very least, raised an argument that the doctrine *could* apply to Proposition 12. See e.g., Publius v. Boyer-Vine, 237 F. Supp. 3d 997, 1023–24 (E.D. Cal. 2017) (concluding that Christie's "make[s] clear that [the] extraterritoriality doctrine applies beyond statutes that regulate out-of-state prices").

But the next step is to ask whether there is any serious contention that Proposition 12 violates the extraterritoriality rule as applied in Christie's. And on this question, there can be no dispute: Christie's holds that a state regulation violates the extraterritoriality doctrine only if it regulates conduct that takes place "wholly outside" a state's jurisdiction, and not if it regulates "in-state conduct with allegedly significant out-of-state practical effects." Christie's, 784 F.3d at 1323-24. Pursuant to this rule, and like the statutes upheld in the cases that Christie's distinguishes, Proposition 12's in-state sales prohibition only applies to "in-state conduct"—sales of meat products in California—not conduct that takes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

place "wholly outside" California.  Id.  It is accordingly a perfectly lawful exercise of California's "state sovereignty protected by the Constitution."  Rocky Mountain Farmers Union v. Corey, 913 F.3d 940, 952 (9th Cir. 2019) ("Rocky Mountain II") (citing Christie's and holding that "regulations that have upstream effects on how sellers who sell to California buyers produce their goods" are not "necessarily extraterritorial," and that "subjecting both in and out-of-jurisdiction entities to the same regulatory scheme to make sure that out-of-jurisdiction entities are subject to consistent . . . standards is a traditional use of the State's police power" that does not violate the extraterritoriality principle); see also Chinatown Neighborhood Ass'n, 794 F.3d at 1145 (holding that laws like Proposition 12 consistently "pass[] Commerce Clause muster"—"even when" the law in question "has significant extraterritorial effects"—because "those effects result from" the legitimate "regulation of in-state conduct); Publius, 237 F. Supp. 3d at 1023 (concluding that because "Walsh, [Eleveurs], and [Rocky Mountain] all concerned state laws that regulated in-state conduct which were found not to directly regulate extraterritorial behavior," the extraterritoriality doctrine "was inapplicable" in those cases).[11]

---

[11] C & A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. 383, (1994), discussed in NAMI's briefing and at oral argument, does not suggest otherwise.  Carbone involved a challenge to the defendant's "flow control" ordinance that required all municipal waste to be processed by a facility located within the town's boundaries. However, the Supreme Court struck down the law in Carbone on grounds that it had a *discriminatory purpose and effect*, not that it violated the extraterritoriality doctrine.  Id. at 386-87, 391-92 (holding that "flow control ordinance discriminates" since its "avowed purpose" was to   "retain the processing fees" over local wastewater, and since the ordinance's effect was to "allow[] only the favored operator to process waste that is within the limits of the town").  The language in the Carbone opinion that NAMI relies upon— that "States and localities may not attach restrictions to exports or imports in order to control commerce in other States" since doing so "would extend the town's police power beyond its jurisdictional bounds," id. at 393 (citing Baldwin, 294 U.S. at 511)—is dicta summarizing the rule set forth by Baldwin.  Even if that principle were not restricted by the Supreme Court's subsequent decision in Walsh, the applicable version of the Baldwin (and Healy) rule is the one stated in Christie's, applied in Rocky Mountain II, and analyzed above: a state regulation violates the extraterritoriality doctrine if it regulates conduct that takes place "wholly outside" a state's jurisdiction, but not if it regulates "in-state conduct with allegedly significant out-of-state practical effects."  Christie's, 784 F.3d at 1323-24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

The Court accordingly concludes that NAMI has not raised any serious questions on the merits of its extraterritoriality claim.

### (3)    Substantial Burden On Interstate Commerce Claim

NAMI claims that even if Proposition 12 is not discriminatory or an impermissible direct regulation of extraterritorial conduct, it should still be struck down pursuant to Pike v. Bruce Church, Inc., 397 U.S. 137 (1970) because "the burden [it] impose[s] on [interstate] commerce is clearly excessive in relation to the putative local benefits." Id. at 142. "[U]nder Pike, a plaintiff must first show that the statute imposes a substantial burden before the court will 'determine whether the benefits of the challenged laws are illusory,'" or otherwise inadequate, to justify the burden. Eleveurs, 729 F.3d at 951–52 (quoting Optometrists II, 682 F.3d at 1155).

"[M]ost statutes that impose a substantial burden on interstate commerce do so because they are discriminatory" or purport to regulate extraterritorially, as discussed above. Id. at 952 (citing Optometrists II, 682 F.3d at 1150); see Smith, 20 F.3d at 1015 (stating that the Supreme Court has focused on "certain types of impacts," including "impacts on commerce beyond the borders of the defendant state, and impacts that fall more heavily on out-of-state interests"). "[L]ess typically," courts have found that non-discriminatory, non-extraterritorial statutes may still "impose significant burdens on interstate commerce" when they cause the "'inconsistent regulation of activities that are inherently national or require a uniform system of regulation.'" Id. (quoting Optometrists II, 682 F.3d at 1148). The need for uniformity generally arises in challenges to laws affecting "interstate transportation"—such as cases that cause "disruption of travel and shipping," Smith, 20 F.3d at 1015—as well as cases involving sports leagues. See Eleveurs, 729 F.3d at 952 (observing that "examples of 'courts finding uniformity

---

Also, to the extent the Seventh Circuit's decision in Legato Vapors, LLC v. Cook, 847 F.3d 825 (7th Cir. 2017) suggests that the extraterritoriality principle nevertheless prohibits states from regulating production *methods*, rather than the products themselves, that is not the law of this circuit, and inconsistent with the Ninth Circuit's precedents in the low carbon fuel standard cases. See, e.g., Rocky Mountain II, 913 F.3d at 952 (reaffirming prior holding that "regulations that have upstream effects on how sellers who sell to California buyers *produce* their goods" survived scrutiny under the dormant commerce clause) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

necessary' fall into the categories of 'transportation' or 'professional sports leagues'") (citing Valley Bank of Nevada v. Plus Sys., Inc., 914 F.2d 1186, 1192 (9th Cir. 1990)). The Ninth Circuit has held that "a regulation [which] does not regulate activities that inherently require a uniform system of regulation and does not otherwise impair the free flow of materials and products across state borders . . . is not a significant burden on interstate commerce." Optometrists II, 682 F.3d at 1154–55.

At the outset, the Court finds—and NAMI appears to acknowledge—that Proposition 12 does not present the potential for the inconsistent regulation of activities that require a uniform system of regulation. Id. at 15 (ceding the argument, but contending that "interference with uniform operations" is "not the only way[]" to demonstrate a substantial burden). Instead—and setting aside the discrimination and extraterritoriality arguments already addressed and rejected above—NAMI contends and submits affidavits to the effect that Proposition 12 will substantially burden interstate commerce because it "will likely drive many farmers, packers, and processors from the California market" and "force those who remain to bear increased costs" to comply with California's animal confinement standards. See PI Reply at 16-17.[12] But, as discussed above in connection with NAMI's discriminatory effects argument, these anticipated effects do not demonstrate that Proposition 12 will interfere with the flow of veal or pork products into California inasmuch as they demonstrate NAMI's disappointment that Proposition 12 "precludes a preferred, more profitable method of operating in a retail market." Optometrists II, 682 F.3d at 1154. As with the optometrists and opticians who challenged the regulation upheld in Optometrists I and Optometrists II, "any" farmer, packer, or processor "remains free to import [their products] originating anywhere into California and sell it there." Optometrists II, 682 F.3d at 1155 (holding that the challenged regulation did not substantially burden interstate commerce pursuant to Pike as a result).

This conclusion is consistent with the Supreme Court's decision in Pike itself, which held that an order by an Arizona state agricultural official requiring a cantaloupe farmer to package his harvested cantaloupes within the state, and not across the border in California, violated the dormant commerce clause. See Pike, 397 U.S. at 145. NAMI cites to the facts in Pike for the proposition that a state rule may substantially burden interstate commerce if it has "the practical effect . . . to compel [a] company to build packing facilities . . . that

---

[12] NAMI's counsel relied exclusively on these affidavits at oral argument to contend that Proposition 12 imposes a "substantial burden" on interstate commerce.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

would take many months to construct and would cost approximately $200,000." Id. at 140. Compare Bakke Decl. ¶ 11, Catelli Decl. ¶¶ 8-10, Friesen Decl. ¶¶ 9-10, Darrell Decl. ¶¶ 10-15, Neff Decl. ¶¶ 4-13, Rennells Decl. ¶¶ 9-16, Turner Decl. ¶¶ 8-17, Bollum Decl. ¶¶ 5-11 (attesting that compliance with Proposition 12 would require NAMI members to expend millions of dollars over many months, or years, to construct or redesign their facilities). Although the proposition NAMI cites is a correct factual statement of the burden imposed by the Arizona order at issue, the reason that order interfered with interstate commerce is that it effectively required cantaloupe producers to consolidate every stage of cantaloupe production within Arizona as a condition upon doing business across state lines. See Pike, 397 U.S. at 145 (explaining that "the Court has viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere").

Proposition 12 imposes no similar barrier to conducting commerce across state lines: it is directed to *how* meat products are produced, not *where*, and compliance with Proposition 12 does not require a farmer, packer, or processor to move its operations to California. To the contrary, the regulation applies evenly no matter where production takes place. The gravamen of NAMI's "substantial burden" argument is therefore ultimately a complaint about the cost of complying with Proposition 12's requirements. However, "[d]emonstrating that state regulations impose substantial costs on interstate operations is not sufficient to establish a burden calling for balancing under Pike." S. Pac. Transp. Co. v. Pub. Utilities Comm'n of State of Cal., 647 F. Supp. 1220, 1227 (N.D. Cal. 1986), aff'd, 820 F.2d 1111 (9th Cir. 1987) (citing Bibb v. Navajo Freight Lines, 359 U.S. 520, 526 (1959) and Burlington Northern Railroad Co. v. Department of Public Service, 763 F.2d 1106, 1114 (9th Cir. 1985) ("The claims by Burlington Northern that operation of the Browning station results in a loss to the company does not, without more, suggest that the Montana statute impedes substantially the free flow of commerce from state to state.")).

Because there is no serious argument that Proposition 12 imposes any substantial burden on interstate commerce, as that term is understood, the Court concludes that NAMI has not raised a serious question as to its Pike claim.

\*       \*       \*

For the reasons discussed in this section, the Court concludes that NAMI fails to raise any questions on the merits of its three commerce clause claims that would support the issuance of a preliminary injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | November 22, 2019 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

### 2. Remaining Preliminary Injunction Factors

The Court recognizes that complying with Proposition 12 could impose potentially significant costs upon at least some NAMI members. See, e.g., Bakke Decl. ¶ 11, Catelli Decl. ¶¶ 8-10, Friesen Decl. ¶¶ 9-10, Darrell Decl. ¶¶ 10-15, Neff Decl. ¶¶ 4-13, Rennells Decl. ¶¶ 9-16, Turner Decl. ¶¶ 8-17, Bollum Decl. ¶¶ 5-11. Since the Eleventh Amendment may prevent the recovery of these costs, the Ninth Circuit has held that these potentially noncompensable money damages can constitute irreparable injury. See California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 852 (9th Cir. 2009), vacated on other grounds, 565 U.S. 606 (2012) (holding that money damages are irreparable where a plaintiff can "obtain no remedy in damages against the state because of the Eleventh Amendment"); accord Video Gaming Techs., Inc. v. Bureau of Gambling Control, 356 F. App'x 89, 93 (9th Cir. 2009) (holding that "monetary injuries may be irreparable if Eleventh Amendment sovereign immunity will bar a party from ever recovering those damages in federal court").

However, in light of the Court's conclusion that there are no serious questions regarding the merits of NAMI's constitutional challenge, the Court declines to address NAMI's arguments on the remaining irreparable harm and balance of hardships factors. See Global Horizons, Inc. v. United States DOL, 510 F.3d 1054, 1058 (9th Cir. 2007) ("Once a court determines a complete lack of probability on the success or serious questions going to the merits, its analysis may end, and no further findings are necessary.").

NAMI's motion for a preliminary injunction is **DENIED.**

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** intervenors' motion to intervene in this action, and **DENIES** plaintiff's motion for preliminary injunction.

IT IS SO ORDERED.

00:00
CMJ