UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Paul Zidlicky | R. Matthew Wise |
| Attorneys Present for Intervenors: | |
| Peter Brandt | |
| Rebecca Cary | |

**Proceedings:** DEFENDANTS' MOTION TO DISMISS (ECF No. 44, filed on November 27, 2019)

DEFENDANT-INTERVENORS' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 45, filed on November 27, 2019)

## I. INTRODUCTION

Plaintiff North American Meat Institute ("NAMI"), a national trade association of meat packers and processors, filed this action against California Attorney General Xavier Becerra, California Secretary of Food and Agriculture Karen Ross, and California Director of Public Health Sonia Angell (collectively "California" or "the State") on October 4, 2019 to challenge the constitutionality and prevent the enforcement of California Health & Safety Code § 25990(b), which California voters enacted as Proposition 12 on November 6, 2018 ("Proposition 12"). See ECF No. 1 ("Compl."). The complaint alleges that Proposition 12 violates the Commerce Clause of the United States Constitution by: (1) discriminating against out of state producers, distributors, and sellers of pork and veal; (2) impermissibly regulating extraterritorial activities beyond California's borders; and (3) substantially burdening interstate commerce in a manner that exceeds any legitimate local benefits. Compl. ¶¶ 44-90.

Along with its complaint, NAMI concurrently filed a motion for preliminary injunction and several supporting fact declarations from its members. See ECF No. 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

("PI"). The next day, several animal welfare organizations—the Humane Society of the United States, the Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming USA, and Compassion Over Killing (collectively the "Intervenors")—filed a motion to intervene as defendants pursuant to Federal Rule of Civil Procedure 24. On November 22, 2019, the Court granted the intervenors' motion to intervene and then denied NAMI's motion for a preliminary injunction. See ECF No. 43 ("PI Order").

The State and the intervenors filed the present motions to dismiss, and for judgment on the pleadings, on November 27, 2019. See ECF No. 44 ("State's MTD"), ECF No. 45 ("Int's Mot."). NAMI filed a consolidated opposition to both motions on January 14, 2020. See ECF No. 61 ("Opp."). The State and the intervenors filed replies on January 27, 2020. See ECF No. 62 ("Int's Reply"), ECF No. 63 ("State's Reply"). The Association of California Egg Farmers Filed also an amicus brief in support of the State and the intervenors on December 11, 2019. See ECF No. 58 ("Egg Farmers Br.").

The Court held a hearing on February 24, 2020. Having carefully considered the parties' arguments, and the submissions of amici, the Court finds and concludes as follows.

## II. RELEVANT ALLEGATIONS

NAMI alleges the following facts.

### A. California Voters Enact Proposition 2 (2008)

In the November 2008 election, California voters passed Proposition 2, a ballot initiative intended to "prohibit the cruel confinement of farm animals." See Cal. Prop. 2 at § 2, as approved by voters (Gen. Elec. Nov. 4, 2008). The initiative passed with the support of 63.42% of California voters. See Cal. Sec'y State, Statement of Vote: 2008 General Election. Proposition 2 added §§ 25990-25994 to the California Health and Safety Code, and took effect on January 1, 2015. See Cal. Health & Safety Code §§ 25990-25994. The enacted provisions prohibit California farmers from tethering or confining pregnant pigs, veal calves, and egg-laying hens in a way that prevents them from lying down, standing up, fully extending their limbs, or turning around freely. Id. at §§ 25990, 25991(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

### B. California Enacts Assembly Bill 1437 (2010)

The California legislature subsequently enacted Assembly Bill 1437 ("AB 1437") in 2010. AB 1437 added §§ 25995-97 to the Health and Safety Code. These provisions prohibit selling eggs in California that are produced by hens confined under conditions that do not meet the confinement requirements of Proposition 2. See Cal. Health & Safety Code §§ 25995-97.

The legislative history supporting the statute stated that the regulation intended to ensure that "all eggs sold for human consumption in California" would "conform to the animal care standards" established by Proposition 2 in order to "protect California consumer's [sic] health and welfare." See Bill Analysis of AB 1437, Cal. Assembly Comm. on Agriculture (April 29, 2009). Specifically, studies "cited by the author state[d] that egg-laying hens subjected to stress have a greater chance of carrying bacteria or viruses, thus having a greater chance of exposing consumers to food borne bacteria and viruses." Id. at 1, 2. In addition to these consumer health and welfare concerns, the legislative history notes that "[s]ome supporters" advocating for AB 1437 also "stated that this bill will level the playing field for California egg producers to remain competitive with out-of-state egg producers." Id. at 1; see also Bill Analysis of AB 1437, Cal. Assembly Comm. on Agriculture (May 13, 2009) (stating same). In the enrolled version of the bill, the legislative findings state that it "is the intent of the Legislature to protect California consumers from the deleterious, health, safety, and welfare effects of the sale and consumption of eggs derived from egg-laying hens that are exposed to significant stress." Cal. Health & Safety Code § 25995.

A coalition of states challenged AB 1437's sales ban pursuant to the commerce clause of the United States Constitution, but their action was dismissed on jurisdictional grounds. See Missouri ex rel. Koster v. Harris, 847 F.3d 646 (9th Cir. 2017). The states then attempted to petition the Supreme Court pursuant to its original jurisdiction over disputes between states, see U.S. Const., Art. III, § 2, but were denied. See Missouri v. California, No. 22-O-148 (filed U.S. Dec. 4, 2017).

### C. California Enacts Proposition 12 (2018)

In the November 2018 election, California voters passed Proposition 12 to amend §§ 25990-93 of the California Health and Safety Code by adding § 25993.1. See Cal. Prop. 12 at § 1, as approved by voters (Gen. Elec. Nov. 6, 2018). The initiative passed with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

62.7% of the vote. See Cal. Sec'y State, Statement of Vote: 2018 General Election. As relevant here, Proposition 12 prohibits the sale in California of "whole veal meat" and "whole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner" as defined by Proposition 2. Cal. Health & Safety Code §§ 25990(b)(1), (b)(2).[1] The prohibition deems that a sale occurs in California "where the buyer takes physical possession" of the meat at issue in California. Id. at § 25991(o). Any person who violates Proposition 12's sales prohibition is guilty of a misdemeanor punishable by a fine of up to $1,000 and up to 180 days imprisonment. Id. at § 25993(b).

Proposition 12 thus operates in a manner similar to AB 1437, except that Proposition 12 applies the animal confinement standards established by Proposition 2 to the in-state sale of whole veal and whole pork products, whereas AB 1437 applies those standards to the in-state sale of hen eggs.

According to the ballot language, Proposition 12 is intended "to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and associated negative fiscal impacts on the State of California." See Cal. Prop. 12 at § 1, as approved by voters (Gen. Elec. Nov. 6, 2018). The State has yet to issue regulations

---

[1] "'Whole veal meat' means any uncooked cut of veal, including chop, ribs, riblet, loin, shank, leg, roast, brisket, steak, sirloin, or cutlet, that is comprised entirely of veal meat, except for seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives. Whole veal meat does not include combination food products, including soups, sandwiches, pizzas, hotdogs, or similar processed or prepared food products, that are comprised of more than veal meat, seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives." Cal. Health & Safety Code §§ 25991(v).

Similarly, "whole pork meat" means "any uncooked cut of pork, including bacon, ham, chop, ribs, riblet, loin, shank, leg, roast, brisket, steak, sirloin, or cutlet, that is comprised entirely of pork meat, except for seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives. Whole pork meat does not include combination food products, including soups, sandwiches, pizzas, hotdogs, or similar processed or prepared food products, that are comprised of more than pork meat, seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives." Id. at §§ 25991(u).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

implementing Proposition 12 despite the statutory deadline to do so by September 1, 2019. Id. at § 25993.

### D. NAMI Files Suit Asserting Constitutional Violations

NAMI represents meat packers and processors who raise hogs and veal calves in states across the country, and who sell their pork and veal in California. NAMI filed this suit alleging that Proposition 12 violates the dormant Commerce Clause by discriminating against its members who produce pork and veal outside of California, impermissibly regulating its members' business activities beyond California's borders, and by substantially and unlawfully burdening its members' ability to engage in interstate commerce. Compl. ¶¶ 44-90. Because NAMI members sell a significant portion of their products into the California market, NAMI claims that, unless Proposition 12 is enjoined, its members will face a "Hobson's choice" between either (i) expending the tens of millions of dollars necessary to reconfigure their production processes to comply with the regulation (including, in some cases, dismantling and reconstructing brand new multimillion dollar facilities and securing the financing to do so), (ii) cutting production to meet Proposition 12's square footage requirements (forfeiting revenue), (iii) abandoning the California market (and forfeiting revenue), or (iv) risking the criminal penalties and fines set forth by § 25993(b). See Compl. ¶¶ 50, 64, 75, 79-84.

## III. LEGAL STANDARDS

### A. Motion To Dismiss

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

### B.     Motion for Judgment on the Pleadings

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). A motion for judgment on the pleadings "provides a vehicle for summary adjudication on the merits, after the pleadings are closed but before trial, which may save the parties needless and often considerable time and expense which otherwise would be incurred

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

during discovery and trial." Judge Virginia A. Phillips & Judge Karen L. Stevenson, Federal Civil Procedure Before Trial, § 9:316 (The Rutter Group 2019).

Although Rule 12(c) contains no mention of leave to amend, "courts generally have discretion in granting 12(c) motions with leave to amend, particularly in cases where the motion is based on a pleading technicality." In re Dynamic Random Access Memory Antitrust Litig., 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007). There is a strong policy in favor of allowing amendment, unless amendment would be futile, results from bad faith or undue delay, or will unfairly prejudice the opposing party. Id. (internal citation omitted).

## IV. DISCUSSION

NAMI claims that the Proposition 12 is unconstitutional. Since the analysis of NAMI's allegations pursuant to Rule 12(b)(6) and Rule 12(c) motions is "substantially identical," the Court considers them together. See Chavez, 683 F.3d at 1108.

The Constitution extends to Congress the power to "regulate Commerce . . . among the several states." U.S. Const., Art. I, § 8, cl. 3. "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) ("Optometrists II") (quoting South–Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 87 (1984)). "This limitation on the states to regulate commerce is 'known as the dormant Commerce Clause.'" Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 947 (9th Cir. 2013) (quoting Optometrists II, 682 F.3d at 1148). "The primary purpose of the dormant Commerce Clause is to prohibit 'statutes that discriminate against interstate commerce' by providing benefits to 'in-state economic interests' while 'burdening out-of-state competitors.'" Id. at 947 (quoting CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 87 (1987) and Dep't of Revenue v. Davis, 553 U.S. 328, 337 (2008)).

"The Supreme Court has adopted a 'two-tiered approach to analyzing state economic regulation under the Commerce Clause.'" Eleveurs, 729 F.3d at 948 (quoting Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578–79 (1986)). On the one hand, state regulations that (1) "discriminate against interstate commerce" or (2) "directly regulat[e] extra-territorial conduct" are generally "struck down . . . without further inquiry." Id. at 948-49 (quoting Brown-Forman); see also Dakota v. Wayfair, Inc., 138 S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

Ct. 2080, 2091 (2018) (explaining that such laws "face a virtually *per se* rule of invalidity"). However, state regulations that (3) "regulate even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Wayfair, Inc., 138 S. Ct. at 2091 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137 (1970)); see also Energy & Env't Legal Inst. v. Epel, 793 F.3d 1169, 1171 (10th Cir. 2015) (Gorsuch, J.) (explaining that "dormant commerce clause cases are said to come in [these] three varieties").

NAMI claims that Proposition 12 is unconstitutional on all three grounds.

### A.   Discrimination Against Out Of State Commerce Claim

Discrimination against out of state commerce "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or., 511 U.S. 93, 99 (1994). "The party challenging a regulation" on this basis "bears the burden of establishing that a challenged statute has a discriminatory purpose or effect under the Commerce Clause." Int'l Franchise Ass'n, Inc. v. City of Seattle, 803 F.3d 389, 400 (9th Cir. 2015) (internal citation and marks omitted). NAMI acknowledges that Proposition 12 is facially neutral, but alleges that Proposition 12 nevertheless unconstitutionally discriminates against out of state commerce "because its purpose and effect are to shield California producers from out-of-state competition." Compl. ¶ 5.

#### 1.   Discriminatory Purpose

NAMI alleges that Proposition 12 has a discriminatory purpose because it "seek[s] to level the playing field" by imposing "regulatory burdens on out-of-state producers so that in-state producers are not disadvantaged by competition from out-of-state producers who are not subject to Proposition 2's confinement requirements." Compl. ¶ 47. NAMI suggests that Proposition 12's discriminatory purpose is akin to the discriminatory purpose that, it claims, animated AB 1437. Id. ¶ 22 ("AB 1437's legislative history explained that 'the intent of this legislation [was] to level the playing field so that in-state producers [we]re not disadvantaged' by competition from out-of-state farmers").

In ruling on NAMI's motion for a preliminary injunction, the Court concluded that NAMI had failed to present evidence to support these allegations. See PI Order at 11-13 (citing *inter alia* Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 463 n. 7 (1981)). But the present motions concern what NAMI has pled, not what NAMI has proven. And

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

NAMI has pled facts that, if proven, would plausibly establish the constitutional violation it claims to have occurred. See City of Seattle, 803 F.3d at 400 (legislation proven to intentionally discriminate against out of state commerce would be unconstitutional pursuant to the dormant commerce clause). Specifically, NAMI alleges that Proposition 12 has the same discriminatory intent that the California State Legislature evinced in enacting AB 1437. Compl. ¶ 22. Assuming the truth of those allegations, that is enough "factual content" to "plausibly suggest[]" a claim for relief that survives a motion to dismiss. Moss, 572 F.3d at 969.

For these reasons, the Court concludes that NAMI has alleged facts sufficient to state a claim that Proposition 12 has a discriminatory purpose.

### 2. Discriminatory Effect

NAMI next claims that Proposition 12 has a *per se* unconstitutional discriminatory effect since it "operates as a protectionist trade barrier" that "block[s] the flow of goods in interstate commerce unless out-of-state producers comply with California's regulations." Compl. ¶ 49.

In denying the motion for a preliminary injunction, the Court concluded that "the problem with this argument is that Proposition 12 does not, in its contemplated application, impose 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" PI Order at 13 (quoting Oregon Waste, 511 U.S. at 99). For the reasons discussed in that order, the Court instead found that "[t]he in-state sales prohibition applies equally to animals raised and slaughtered in California as they do to animals raised and slaughtered in any other state" and was "not discriminatory" because Proposition 12 "simply effectuates a complete ban on commerce in certain items." Id. at 13-14 (quoting Pac. Nw. Venison Producers v. Smitch, 20 F.3d 1008, 1012 (9th Cir. 1994), which held that a regulation prohibiting the import of "fallow deer and sika deer" into State of Washington was not discriminatory because it did not "result in the citizens of Washington receiving benefits that are denied to others"). See generally PI Order 13-18 (comparing the facts in this case to Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 947 (9th Cir. 2013), and distinguishing Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977)).

The Court acknowledged the possibility, however, that NAMI *could* prove—and had alleged—an unconstitutional discriminatory effect based on two theories: (i) the potential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

difference in compliance "lead time" given to in-state producers relative to out-of-state producers, and (ii) the potential for exemptions for California-produced "bob" veal that would create in-state advantages. See PI Order at 16, 16 n. 7. At the time, the Court declined to issue a preliminary injunction on the basis of these allegations because they were "premature" in the absence of implementing regulations, and because NAMI had not come forward with any evidence to indicate that the State would in fact interpret or enforce Proposition 12 in this way. Id. at 16-18.

For the present purpose of satisfying the pleading requirements of Rule 8, however, the Court is required to accept the truth of these factual allegations. Iqbal, 556 U.S. at 679. In this posture, it is enough that NAMI has alleged facts related to these two theories that could, if true, plausibly establish "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." See Oregon Waste, 511 U.S. at 99 (holding that such explicit favoritism, if proven, violates the commerce clause). NAMI has therefore alleged facts sufficient to state a claim that Proposition 12 has a discriminatory effect.

The motions challenging the discrimination against out of state commerce claims are, accordingly, **DENIED**.

### B. Direct Regulation Of Extraterritorial Conduct Claim

In its second claim for relief, NAMI alleges that Proposition 12 "violates the constitutional prohibition on extraterritorial state regulation" by effectively "dictat[ing] farming practices in other States by conditioning the sale of imported pork and veal in California on adherence to California's confinement requirements." Compl. ¶¶ 65-76.

As the Court explained in the PI order, this is the doctrine applied by the Supreme Court in three cases involving state statutes that attempted to fix the prices for products sold out of state: Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511 (1935), Brown–Forman Distillers Corp. v. N.Y. State Liquor Authority, 476 U.S. 573 (1986), and Healy v. Beer Institute, 491 U.S. 324 (1989). In each of these cases, the Supreme Court struck down the pricing laws for attempting to regulate "commerce occurring *wholly outside* [their states'] boundaries." Healy, 491 U.S. at 336 (emphasis added).

The Court denied NAMI's motion for a preliminary injunction to the extent it was predicated on this claim for relief because NAMI's argument relied on an invalid legal theory. Even if the Supreme Court had not limited the extraterritoriality doctrine's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

application to cases involving price-setting statutes—and the Court found reason to conclude that it had, see PI Order at 19-20 (discussing Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 669 (2003) and ensuing decisions)—the Court found that Proposition 12's in-state sales prohibition only applies to "in-state conduct with allegedly significant out-of-state practical effects" and not to conduct that takes place "wholly outside" California. Sam Francis Foundation v. Christie's, Inc., 784 F.3d 1320 (9th Cir. 2015) (en banc) (holding that even if the extraterritoriality principle applied beyond the price-setting context, the principle only prohibits regulations of the latter type, and not the former); see generally PI Order at 21-23 (citing inter alia Rocky Mountain Farmers Union v. Corey, 913 F.3d 940, 952 (9th Cir. 2019) for the proposition that "regulations that have upstream effects on how sellers who sell to California buyers produce their goods" are not "necessarily extraterritorial," and that "subjecting both in and out-of-jurisdiction entities to the same regulatory scheme to make sure that out-of-jurisdiction entities are subject to consistent . . . standards is a traditional use of the State's police power" that does not violate the extraterritoriality principle).[2]

---

[2] NAMI's continued reliance on the Ninth Circuit's decision in Daniels Sharpsmart, Inc. v. Smith, 889 F.3d 608 (9th Cir. 2018) remains unavailing. That case concerned a dormant commerce clause challenge to certain applications of California's Medical Waste Management Act ("MWMA"). Id. at 612. The MWMA required medical waste generated in California to be incinerated. Id. Although the MWMA allowed producers of medical waste to dispose of that waste in other states, California regulators took the position that the MWMA still required that waste to be incinerated, even if the disposal took place out of state. Id. at 612-613. Applying the rule in Christie's that the Court relies upon here, the Ninth Circuit held that the application of the MWMA to restrict the plaintiff's out of state disposal methods to incineration violated the extraterritoriality principle because the conduct regulated by the challenged provision—the disposal of medical waste in other states—took place "wholly outside" California "after [it] . . . ha[d] been removed from the State." Id. at 615-16 (explaining that "[t]he transactions in delivering and paying for disposal took place within those [other] states" and there was "nothing to indicate that the transactions had any effect whatsoever in California"). The facts alleged here are different. The conduct regulated by the allegedly unconstitutional provision of Proposition 12 is the *sale* of certain meat products that take place *in* California, not anything that takes place outside, let alone "wholly outside," the state. See Cal. Health & Safety Code §§ 25990(b)(1), (b)(2), 25991(o).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

The same defects in NAMI's legal theory that led the Court to conclude that NAMI had failed raise any serious questions on the merits of its extraterritoriality claim—that Proposition 12 regulates in-state conduct, and not wholly extraterritorial conduct, e.g., Compl. ¶¶ 68-70 (acknowledging that the "sales ban" operates on sales that take place *within* California with allegedly significant practical effect on practices out of state)—also leads the Court to conclude that NAMI has failed to allege facts that would state such a claim in the first place. See Salazar, 646 F.3d at 1242 (proper to dismiss a claim for relief if "there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory"). The motions challenging the sufficiency of NAMI's allegations supporting the unconstitutional extraterritorial regulation claim for relief are accordingly **GRANTED**, and NAMI's second claim for relief is dismissed, without prejudice. If NAMI elects to file an amended extraterritorial regulation claim, any amended pleading will need to allege facts that demonstrate, consistent with the rule in Christie's, that Proposition 12 regulates conduct that takes place "wholly outside" California.

### C. Substantial Burden On Interstate Commerce Claim

In its third claim for relief, NAMI alleges that Proposition 12 is unconstitutional pursuant to Pike v. Bruce Church, Inc., 397 U.S. 137 (1970) because "the burden [it] impose[s] on [interstate] commerce is clearly excessive in relation to the putative local benefits." Id. at 142; see Compl. ¶¶ 77-90. "[U]nder Pike, a plaintiff must first show that the statute imposes a substantial burden before the court will 'determine whether the

---

NAMI's contention that the ruling in Daniels Sharpsmart actually announces a principle that implies a broader principle applicable to these facts—specifically, (i) that Daniels Sharpsmart stands for the proposition that a state may not regulate products once they move "downstream" into other states, and that (ii) this principle should be construed to imply a further principle that a state also may not regulate the manufacture of products "upstream" that are sold into California—obscures the straightforward application of Christie's that controlled the disposition of Daniels Sharpsmart, and defies the Ninth Circuit's express holding in Rocky Mountain II that "regulations that have upstream effects on how sellers who sell to California buyers produce their goods" are not "necessarily extraterritorial." Rocky Mountain II, 913 F.3d at 952 (reaffirming prior holding that such regulations survived scrutiny under the dormant commerce clause).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

benefits of the challenged laws are illusory,'" or otherwise inadequate, to justify the burden. Eleveurs, 729 F.3d at 951–52 (quoting Optometrists II, 682 F.3d at 1155).

As the Court explained in its order denying NAMI's motion for a preliminary injunction, see PI Order at 23, "most statutes that impose a substantial burden on interstate commerce do so because they are discriminatory" or attempt to directly regulate wholly extraterritorial conduct, as discussed above. Eleveurs, 729 F.3d at 952 (citing Optometrists II, 682 F.3d at 1150); see Smitch, 20 F.3d at 1015 (stating that the Supreme Court has focused on "certain types of impacts," including "impacts on commerce beyond the borders of the defendant state, and impacts that fall more heavily on out-of-state interests"); accord Opp. at 23 (acknowledging that the application of Pike may turn upon "whether [a] law has significant exterritorial effects or imposes burdens that fall primarily on out-of-state interests"). "[L]ess typically," but in addition to these two situations, courts have also found that non-discriminatory, non-extraterritorial statutes may still "impose significant burdens on interstate commerce" when they cause the "'inconsistent regulation of activities that are inherently national or require a uniform system of regulation.'" Id. (quoting Optometrists II, 682 F.3d at 1148).

The Court refused to preliminarily enjoin Proposition 12 pursuant to Pike because it concluded that NAMI failed to establish that the law fell into any of these prohibited categories of substantially burdensome regulation. See PI Order at 23-25.

For purposes of the pending motions, however, the Court has already concluded that NAMI adequately pled facts that could state a claim for discrimination in violation of the commerce clause. See supra § IV.A. These allegations regarding discrimination, if proven, would also establish a "substantial burden" pursuant to Pike. See Eleveurs, 729 F.3d at 951–52 (citing Optometrists II, 682 F.3d at 1150). NAMI accordingly satisfies the threshold element of a Pike claim for relief. See id. In addition, NAMI alleges facts that, if proven, would plausibly establish the absence of any legitimate local interest justifying the burden. See Compl. ¶¶ 85-88. Specifically, NAMI alleges that California has no legitimate local interest in farming conditions in other states, and that there is no scientific data connecting Proposition 12's confinement standards to the prevention of foodborne illness within California. Id. ¶¶ 86-87. These allegations may or may not be true, but for the purposes of the pending motions, the Court is required to accept them on their face. Iqbal, 556 U.S. at 679. Doing so, the Court finds that NAMI has also adequately pled facts that plausibly suggest the absence of any benefits that would justify Proposition 12's alleged burden on interstate commerce.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-CV-08569-CAS (FFMx) | Date | February 24, 2020 |
|---|---|---|---|
| Title | N. AMERICAN MEAT INSTITUTE V. BECERRA, ET AL. | | |

NAMI accordingly pleads sufficient facts to state a claim for relief pursuant to Pike. The motions challenging the sufficiency of NAMI's allegations in support of that claim are accordingly **DENIED.**

## V.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the motions to dismiss, and for judgment on the pleadings, as to the second claim for relief, without prejudice. NAMI shall have 14 days to file an amended pleading, if any, to cure the defects identified above. The Court further **DENIES** the motions to dismiss, and for judgment on the pleadings, as to the first and third claims for relief.

IT IS SO ORDERED.

00:22
CMJ